**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **OFFSHORE SPECIALTY** | § | **Case No. 17-35623** |
| **FABRICATORS, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF DEBTOR'S PROPERTY, (II) SCHEDULING BIDDING DEADLINE, AUCTION DATE AND SALE HEARING DATE, (III) APPROVING FORM AND NOTICE THEREOF AND (IV) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES; AND (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I) AUTHORIZING THE DEBTOR TO SELL ITS PROPERTY, (II) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (III) <u>GRANTING RELATED RELIEF</u>**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTIO, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPOINSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEAING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned counsel, hereby moves pursuant to §§ 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for (A) Entry of an

Order (i) Approving Bidding Procedures in Connection with the Sale of the Debtor's Property, (ii) Scheduling Bidding Deadline, Auction Date, and Sale Hearing Date, (iii) Approving Form and Notice Thereof; and (iv) Approving Assumption and Assignment Procedures; and (B) Entry of an Order After the Sale Hearing (i) Authorizing the Debtor to Sell its Property; (ii) Authorizing the Debtor to Assume and Assign Certain Executory Contracts and Unexpired Leases; and (iii) Granting Related Relief (the "Motion").  In support of this Motion, the Debtor respectfully represents as follows:

## I.        JURISDICTION AND VENUE

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The Statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b), 363(f), 365, 503 and 507, and Bankruptcy Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014.

## II. PRELIMINARY STATEMENT

3.        The Debtor filed this chapter 11 case in order to achieve one of two objectives: (i) locate working capital financing that would allow Debtor to reorganize the company, pay its maritime lien creditors in full, and provide a meaningful distribution to unsecured creditors; or (ii) proceed with an orderly sale process for both of the derrick barges DB Swing Thompson and DB William Kallop (the "Barges" or "Property") and maximize the values by seeking a stalking horse bidder, and complying with tight deadlines for submission of competing bids and an auction of the Barges prior to December 31, 2017.

4.      With the assistance of its professionals, the Debtor is at this time evaluating and pursuing both goals.  Each objective represents a good-faith effort to achieve the best value for the Debtor's estate and its creditors.

5.      The Debtor's time in chapter 11 cannot be long.  The Debtor is constrained by the amount of DIP Financing it has obtained.  Moreover, if a reorganization model is to be pursued, a lender or equity group needs to be located quickly. Otherwise, the Debtor will simply run out of money and not have an ability to implement either scenario.

6.      The Debtor just recently obtained DIP Financing, which it will seek approval of on Tuesday October 24, 2017.

7.      **THE DEBTOR HAS NOT MADE A FINAL DECSION WHETHER TO SEEK TO REORGANIZE OR TO PROCEED WITH AN ORDERLY SALE OF THE BARGES.**

8.      Nevertheless, as fiduciaries and recognizing the need to plan early for a bid process, the Debtor is filing this Motion.  The Debtor anticipates that by the time of a hearing on this Motion, the Debtor will have finalized the various deadlines in the Motion or will advise the Court and the creditors that it is proceeding with a reorganization plan.

9.      The Debtor believes that such bidding process in the Bankruptcy Court will result in better and higher returns to all creditors and equity holders than what the Debtor could achieve at a marshal's sale on the court house steps in New Orleans.

### III. COMPANY BACKGROUND

10.      The Debtor is a Louisiana limited liability company with offices in Houston, Texas and Houma, Louisiana.  All of the executive officers of the Debtor are located in Houston, Texas and maintain an office at 20445 State Highway 249, Suite 280, Houston, TX 77070.  In

Houma, Louisiana, the Debtor has four (4) employees and leases land from Offshore Express, LLC ("OE") on which it maintains a yard for the Barges.

11.    OSF's primary business is to generate revenues through the use of the Barges. The Barges are used to install and decommission offshore platforms in the Gulf of Mexico. The Barges are outfitted with large cranes that are used to lift and move platforms. The Barges have some of the largest and most powerful floating cranes operating the Gulf of Mexico.

12.    The Debtor generates revenue by operating the Barges for offshore oil and gas companies at negotiated daily rates or for lump-sum qualified turnkey amounts.

13.    Given the Barges' size and configuration, they are operated only during the spring and summer months. During the off-season, the Debtor maintains and repairs the Barges and submits bids for the next year's work. OSF is now in the off-season. OSF is now receiving Requests for Quotes (RFQs) for the 2018 season.

14.    All of the Debtor's membership interests are owned by Offshore Domestic Group, LLC ("ODG"). ODG is owned by Offshore Exploration and Production, LLC ("OE&P"), which is a holding company. OE&P is owned by William M. Kallop.

15.    The Debtor's nine (9) employees include Tambrey ("Tammy") T. Naron, the CEO, Bill Billman, the COO, Dan Black, VP of Operations and Marketing, and David Weinhoffer, the CRO, who reside and work out of OSF's Houston office.

16.    Like other companies serving the offshore oil and gas industry, the Debtor's business has faced significant challenges in the last two years.

17.    In 2016, OSF, then headed by Steve Williams, suffered a serious financial set back. OSF had a large receivable from Montco Oilfield Contractors, LLC ("MOC") in the approximate amount of $10,000,000. MOC filed chapter 11 and OSF became Montco's second

largest unsecured creditor. Mr. Williams also terminated many of OSF's contracts and made those contracts available to close allies of his in Louisiana.

18.     OSF then faced a liquidity crisis due to these events.  OSF by Mr. Williams, OSF then could not pay the other parties whom OSF relied on in the performance of various decommissioning jobs.  As a result, some vendors of OSF began asserting liens and filing maritime liens against the Barges.

19.     On or about March 15, 2017, Alliance Special Venture Funds, LLC ("Alliance") commenced an action in the Eastern District of Louisiana (the "District Court") to arrest the Barges and collect amounts owed to them.  Case No. 17-2179 (E.D. La.).  The CEO of Alliance is Steve Williams.  At this time, the Debtor believes maritime liens of approximately $8,000,000 have been asserted against the Barges.

20.     The District Court conducted its first auction of the Barges on August 21, 2017 at 10:00 a.m. in the lobby of the United States Courthouse in New Orleans.  No bids were received. Afterward, Crosby filed a motion asking that the minimum bid be lowered to $8,000.

21.     The District Court then scheduled a second marshal's auction for October 2, 2017 at 10:00 a.m. in New Orleans, Louisiana and, at Crosby's suggestion, set an $8,000 minimum bid on each Barge (the "Auction").

22.     On October 1, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

23.     Since the Petition Date, the Debtor has continued to operate and manage its business in the ordinary course pursuant to Bankruptcy Code §§ 1107 & 1108.

24.     As of the date hereof, an official committee of unsecured creditors has not been appointed in this case.

## IV.     RELIEF REQUESTED

25.     By this Motion, the Debtor seeks entry of an order (the "Bid Procedures Order") (i) approving bidding procedures (the "Bidding Procedures") in connection with the sale of the Barges, (ii) scheduling the bidding deadline, auction date, and sale hearing date, (iii) approving form and notice thereof, and (iv) approving assumption and assignment procedures.  The Debtor submits that the Bidding Procedures will permit interested parties reasonable opportunities, consistent with the Debtor's financial constraints, to evaluate whether to propose a bid for the Debtor's property.  This process should maximize values to best achieve the highest returns to creditors and equity holders of OSF.

26.     In addition, the Debtor seeks, at the conclusion of the Sale Hearing (as defined below), entry of an order (a) authorizing the sale of Barges to the winning bidder (the "Prevailing Bidder"), (b) authorizing the assumption and assignment to the extent necessary, of certain executory contacts and unexpired leases, and (c) granting certain related relief (the "Sale Order").

### A.     Approval of Bidding Procedures

27.     The Bidding Procedures are designed to maximize value for the Debtor's estate and ensure that a marketing and sales process is undertaken by the Debtor in accordance with the timeline required by the exigencies of this chapter 11 case (the "Chapter 11 Case"). The Bidding Procedures are summarized as follows:

- Property to be Sold: The Debtor shall offer for sale (the "Sale") the Debtor's two derrick barges, DB William Kallop and DB Swing Thompson (such assets collectively referred to herein as the "Acquired Property"). All of the Debtor's right, title, and interest in and to the Acquired Property, or any portion thereof to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against

(collectively, the "Claims and Interests"), with such Claims and Interests to attach to the net proceeds of the sale of such Acquired Property, except, with respect to the Proposed Purchaser (if there is a stalking-horse bidder), to the extent otherwise set forth in the Debtor's proposed asset-purchase agreement with the Proposed Purchaser (the "Proposed APA") or, with respect to a Prevailing Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Prevailing Bidder.

- Participation Requirements: Any Potential Bidder that wishes to participate in the bidding for the Acquired Property must become a "Qualified Bidder."  As a prerequisite to becoming a Qualified Bidder, a Potential Bidder must:

  (a) provide an executed confidentiality agreement in form and substance reasonably acceptable to the Debtor[1];

  (b) provide current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Acquired Property, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Debtor and its financial advisors, in consultation with the DIP Lender, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a purchase of the Acquired Property;

  (c) provide a preliminary (non-binding) written proposal (as further detailed below); and

  (d) be deemed by the Debtor, after consultation with their legal counsel, financial advisors and the DIP Lender, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction selected as the Prevailing Bidder (defined below).

The Debtor reserves the right at any time (i) to require any Potential Bidder previously determined to be a Qualified Bidder to provide additional evidence of its ability to consummate a transaction based upon a Qualified Bid in order to remain a Qualified Bidder, and (ii) to exclude any such Potential Bidder from participating further in the Auction process as a result of its inability to satisfy such further requirements to remain a Qualified Bidder. The Debtor shall provide the DIP Lender with written notice of the names of any Potential Bidders that have been deemed Qualified Bidders and authorize the DIP Lender to communicate directly with any Potential Bidders or Qualified Bidders.

---

[1] For the avoidance of doubt, parties who executed a confidentiality agreement with the Debtor pre-petition shall not be required to execute a new confidentiality agreement provided that the pre-petition confidentiality agreement is in form and substance acceptable to the Debtor.

- <u>Due Diligence</u>: The Debtor may in its reasonable business judgment, and subject to competitive and other business concerns, afford each Potential Bidder such due diligence access to the Acquired Property as the Debtor deems appropriate, after consultation with its counsel and financial advisors.  Due diligence access may include management presentations as may be scheduled by the Debtor, access to electronic data rooms, onsite inspections, and other matters which a Potential Bidder may reasonably request and as to which the Debtor, in its reasonable business judgment, may agree.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  The Debtor may, in the exercise of its reasonable business judgment, extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline (as defined below) until the Auction; provided, however, that (i) the Prevailing Bidder and Back-Up Bidder shall be permitted to continue to conduct due diligence until closing of the sale; (ii) the Qualified Bid submitted by any such Qualified Bidder (including the Prevailing Bidder and Back-Up Bidder) shall not be subject to any due diligence contingencies as provided below; and (iii) following the Auction, no Qualified Bidder (including the Prevailing Bidder and Back-Up Bidder) may reduce or alter the purchase price consideration incorporated into their bid for the Acquired Property. The Debtor may, in its reasonable business judgment, coordinate diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. The Debtor anticipates that they will post substantially all written due diligence provided to any Potential Bidder to the Debtor's electronic data room. Neither the Debtor nor any of its affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Acquired Property to any person. The Debtor makes no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Proposed APA or the definitive purchase agreement with any Prevailing Bidder.

- Each Qualified Bidder shall be deemed to acknowledge and shall represent in any definitive agreement, that it has had an opportunity to inspect and examine the Barges and to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent review, investigation, and/or inspection of any documents in submitting its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor's businesses or the completeness of any information provided in connection with the Bidding Process.

- A Potential Bidder's preliminary (non-binding) written proposal must include the following items in order to be considered a "<u>Qualified Bid</u>":

    1. states such Bidder offers to purchase the Acquired Property upon the terms and conditions substantially as set forth in the Proposed APA or

pursuant to an alternative structure or terms that the Debtor, in consultation with the DIP Lender, determine are no less favorable or more burdensome to the Debtor's estate than the terms and conditions of the Proposed APA;

2.      identifies the cash consideration to be paid for the Acquired Property, or the amount of any credit bid as allowed hereunder;

3.      identifies any liabilities to be assumed in connection with such proposed acquisition of the Acquired Property;

4.      states such Qualified Bidder is prepared to enter into a legally binding purchase and sale agreement or similar agreement for the acquisition of the Acquired Property on terms and conditions no less favorable or more burdensome to the Debtor estate than the terms and conditions contained in the Proposed APA (as determined by the Debtor in its reasonable business judgment in consultation with the DIP Lender);

5.      is accompanied by a clean and duly executed purchase and sale agreement or similar agreement (the "Modified APA") based on the Proposed APA, together with a marked Modified APA reflecting any variations from the Proposed APA to be executed attached to the order approving Bide Procedures as Exhibit "A";

6.      states such Qualified Bidder's offer is not subject to any due diligence or financing conditions, board or other approval (excluding customary regulatory approval that would follow the execution of definitive documentation for such a transaction) and is irrevocable[2] until the closing of the Sale if such Qualified Bidder is the Prevailing Bidder (as defined below) and that such Qualified Bidder agrees to serve as a Back-Up Bidder (as defined below);

7.      contains such financial and other information to allow the Debtor, in consultation with the DIP Lender, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Modified APA, including, without limitation, such financial and other information which provides the basis for adequate assurance of future performance under contracts and leases to be assumed pursuant to section 365 the Bankruptcy Code in a form requested by the Debtor to allow the Debtor to serve such information on counter-parties to any contracts or leases to be assumed or assumed and

---

[2] The Back-up Bidder (as defined below) shall be required to keep its bid open and irrevocable until 5:00 p.m. (prevailing Central time) on the date which is the earlier of (i) thirty (30) days after the Sale Hearing (the "Outside Back-Up Date") or (ii) the closing of the Sale transaction with the Prevailing Bidder; provided, however, that under no circumstances shall the Proposed Purchaser be required, without its consent, to keep its bid open and irrevocable for a period longer than that prescribed herein.

assigned in connection with the proposed sale that have requested, in writing, such information;

8.     identifies with particularity each and every executory contract and unexpired lease, the assumption and, as applicable, assignment of which is a condition to closing;

9.     does not request or entitle such Qualified Bidder to any break-up fee, topping fee, expense reimbursement or similar type of payment (and by submitting a Qualified Bid, a Qualified Bidder shall be deemed to have waived its right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code in any way related to the submission of its bid or these bidding procedures);

10.     fully discloses the identity of each entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation;

11.     (i) does not contain any financing contingencies of any kind; (ii) does not contain any due diligence contingencies of any kind; and (iii) contains evidence that the Qualified Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to consummate the Sale, which evidence is reasonably satisfactory to the Debtor, in consultation with the DIP Lender;

12.     includes evidence of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and performance of the Modified APA;

13.     provides a purchase deposit equal to or greater than the deposit set forth in the Proposed APA, which deposit must be deposited with Diamond McCarthy LLP on or before the Bid Deadline; and

14.     is irrevocable until the earlier of (x) thirty (30) days after the date of the Sale Hearing (as defined below) and (y) the closing date of the transaction with the Prevailing Bidder or the Back-Up Bidder.

The Debtor shall make a determination, in consultation with the DIP Lender, regarding whether a bid is a Qualified Bid, based upon various factors including, without limitation, the net consideration provided by such proposal, the timing of any consideration to be received and the likelihood and timing of consummating such transaction, and shall notify bidders whether their bids have been determined to be qualified by no later than 12:00 p.m. (prevailing Central time) on the third (3rd) calendar day following the Bid Deadline.

- <u>Bar Deadline</u>: A Qualified Bidder that desires to make a bid shall deliver a written or electronic copy of its bid so as to be received by a date no later than November [●], 2017, (the "<u>Bid Deadline</u>"); provided that all Qualified Bid requirements must be completed prior to the Bid Deadline.  Within 24 hours of receipt of a bid, the Debtor shall provide a copy of such bid to counsel to the DIP Lender and counsel for the Committee of Unsecured Creditors (the "<u>Committee</u>"), if any, provided, however, that information that was redacted from the Proposed APA and/or its exhibits before the Proposed APA was provided to a Potential Bidder shall also be redacted from the proposed bid.  The Debtor shall provide copies of all Qualified Bids to all Qualified Bidders by no later than one (1) day before the day of the Auction.

- <u>Aggregate Bids</u>: The Debtor may, in consultation with the DIP Lender, aggregate separate bids from unaffiliated persons to create one "Bid" from a "Qualified Bidder"; provided, however, that all bidders shall remain subject to the provisions of Bankruptcy Code § 363(n) regarding collusive bidding.

- <u>Evaluation of Qualified Bids</u>: Prior to the Auction, the Debtor shall determine, in its reasonable judgment after consultation with the Debtor's financial and legal advisors and the DIP Lender, which Qualified Bid should serve as the baseline bid at the commencement of the Auction, based on their analysis of which of the Qualified Bids is likely to result in the highest and best value to the Debtor's estate.

- <u>No Qualified Bids</u>: If no timely Qualified Bids are submitted by the Bid Deadline, the Debtor shall not hold an Auction.

- <u>Auction</u>: In the event that the Debtor timely receives one or more Qualified Bids, the Debtor shall, on a date to be determined by the Debtor, in consultation with the Proposed Purchaser and the DIP Lender, conduct an Auction no later than the date that is not later than November [●], 2017 (the "<u>Auction Date</u>").  The Auction will be subject to the following rule:

  (a) only Qualified Bidders who have made a Qualified Bid shall be entitled to participate in or make any subsequent bids at the Auction;

  (b) each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

  (c) the Qualified Bidders shall appear in person at the Auction or through a duly authorized representative with a valid and enforceable power of attorney or other written proof evidencing their ability to bind such parties which documents shall be delivered to the Debtor prior to or at the Auction;

(d) bidding shall commence at the amount and terms of the highest and best Qualified Bid as determined set forth herein;

(e) each Qualified Bidder may then submit successive bids in increments of at least $100,000 higher than the amount of the highest and best Qualified Bid or the previous bid, as applicable; *provided that* the Debtor shall retain the right to modify the bid increment requirements at the Auction, in consultation with the DIP Lender, without any additional or prior notice;

(f) each Qualified Bidder may make one or more credit bids of some or all of their claims to the full extent permitted by Bankruptcy Code § 363(k), subject to the limitations set forth herein or in the Bid Procedures Order;

(g) the Auction will be conducted openly and the Qualified Bidders will be informed of the terms of the highest and best previous bid;

(h) all Qualified Bidders shall have the right to submit additional bids and make additional modifications to the Proposed APA or Modified APA at the Auction, *provided that* any such modifications to the Proposed APA or Modified APA on an aggregate basis and viewed in whole, shall not be less favorable or more burdensome to the Debtor's estate, as determined by the Debtor (in consultation with the DIP Lender), than the terms of the highest and best Qualified Bid at that time;

(i) the Auction shall continue until there is only one offer that the Debtor determines, in consultation with the DIP Lender and subject to Bankruptcy Court approval, is the highest or best from among the Qualified Bids submitted at the Auction (the "Prevailing Bid"). In making this decision, the Debtor (in consultation with the DIP Lender) shall consider, without limitation, the amount of the Purchase Price or other amounts to be paid to Seller, the form of consideration being offered, the likelihood of the bidder's ability to close a transaction and the timing thereof, the number, type and nature of any changes to the APA requested by each bidder, and the net benefit to the Debtor's estate. The bidder submitting such Prevailing Bid shall become the "Prevailing Bidder" and shall have such rights and responsibilities of the purchaser, as set forth in the Proposed APA or Modified APA; and

(j) the Debtor, in consultation with the DIP Lender, may adopt such other rules for the Auction (including procedural rules and rules that may depart from those set forth herein) that they reasonably determine will result in the highest or otherwise best value for the Debtor's estate and that are not inconsistent with any Bankruptcy Court order, *provided that* any changed or additional rules of the Auction are not materially

inconsistent with the Bidding Procedures, do not favor one Qualified Bidder over another, and are communicated to all participants at or prior to the Auction.

- <u>Sale Hearing</u>: The Prevailing Bid will be subject to approval by the Bankruptcy Court. The hearing to approve the Prevailing Bid (the "<u>Sale Hearing</u>") shall take place no later than two (2) calendar days following the conclusion of the Auction. At such time, the Debtor will seek the entry of an order of the Bankruptcy Court approving and authorizing the Sale to the Prevailing Bidder on the terms and conditions of the Prevailing Bid. The Prevailing Bidder shall appear at the Sale Hearing personally or through a duly authorized representative who will be prepared to testify in support of the Prevailing Bid and the Prevailing Bidder's ability to close in a timely manner and provide adequate assurance of its future performance under any and all contracts and leases to be assumed and/or assigned as part of the proposed Sale.

- <u>Return of Deposits</u>: Except as provided herein, all deposits shall be returned to each bidder not selected by the Debtor as the Prevailing Bidder no later than five (5) business days following the substantial consummation of the sale to the Prevailing Bidder, except for the Back-Up Bidder (as defined below) whose deposit will be returned by no later than the fifth (5th) business day after the earlier to occur of: (a) the closing of the sale transaction with the Prevailing Bidder or (b) the Outside Back-Up Date (as defined below). Notwithstanding the foregoing, the deposit of the Proposed Purchaser shall be disbursed in accordance with the terms of the Proposed APA.

- <u>Failure to Consummate Purchase</u>:  If an Auction is conducted, the party with the next highest and best Qualified Bid (other than the Proposed Purchaser), as determined by the Debtor in the exercise of its business  judgment,  and  in consultation with the DIP Lender, at the Auction shall serve as a back-up bidder (the "<u>Back-up Bidder</u>") and keep such bid open and irrevocable until 5:00 p.m. (prevailing Central time) on the date which is the earlier of (i) thirty (30) days after the date of the Sale Hearing (the "<u>Outside Back-up Date</u>") or (ii) the closing of the Sale transaction with the Prevailing Bidder. Following the Sale Hearing, if the Prevailing Bidder fails to consummate an approved Sale because of (a) the failure of a condition precedent beyond the control of either the Debtor or the Prevailing Bidder or (b) a breach or failure to perform on the part of such Prevailing Bidder, the Back-up Bidder will be deemed to be the new prevailing bidder, and the Debtor will be authorized to consummate the Sale with the Back-up Bidder without further order of the Bankruptcy Court, provided, however, that if the Proposed Purchaser is the Back-up Bidder, the Debtor shall be required to consummate the Sale to the Back-up Bidder should the Prevailing Bidder fail to consummate the approved Sale.  In the case of (b) above, the defaulting Prevailing Bidder's deposit shall be forfeited to the Debtor, and the Debtor specifically reserves the right to seek all available damages from the defaulting Prevailing Bidder.

- <u>Reservation of Rights</u>: The Debtor reserve its rights, in the exercise of its fiduciary obligations, and in consultation with the DIP Lender, to modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Property, including, without limitation, extending the deadlines set forth in the Auction procedures, modifying bidding increments, adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice, withdrawing from the Auction the Acquired Property at any time prior to or during the Auction or canceling the Auction, all of which shall be based on an exercise of the Debtor's business judgment in consultation with the DIP Lender.

  If there is a stalking horse bidder, notwithstanding the forgoing and subject in all respects to the Proposed APA and the Debtor's fiduciary duties, (a) the Debtor may not impair or modify the Proposed Purchaser's rights and obligations under the Proposed APA or (b) in the event the Debtor (i) elects to withdraw from the Auction the Acquired Property, (ii) cancels the Auction, and/or (iii) rejects all Qualified Bids, the Debtor shall, subject to the initial provision of this paragraph, nonetheless be obligated to request at the Sale Hearing that the Bankruptcy Court approve the Proposed APA with the Proposed Purchaser.

**B.      Approval of Notice Procedures**

28.      If the Debtor decides to proceed down the auction path, the Debtor will proceed to the Auction and Sale Hearing as expeditiously as the Court's calendar will allow, while providing the requisite notice of the proposed sale as required under Bankruptcy Rule 2002.

29.      Not later than three (3) business days after entry of the Bid Procedures Order, the Debtor will serve a copy of the Notice of Auction and Sale Hearing (the "<u>Sale Notice</u>"), as well as a copy of this Motion and the Bid Procedures Order, by first-class mail postage prepaid upon (i) the Debtor's secured prepetition, if any, and post-petition lenders and secured maritime lien creditors, (ii) the United States Trustee for the Southern District of Texas; (iii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (iv) the counterparties to each of the Assumed and Assigned Contracts (as defined below); (v) all other parties known to the Debtor who has asserted or may assert liens, claims or interests

in or against any of the Acquired Property; (vi) the Debtor's twenty (20) largest unsecured creditors; (vii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (viii) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property.

30.     In addition, on or before five (5) business days after the entry of the Bid Procedures Order, the Debtor shall publish a notice of the Auction and Sale Hearing (the "Publication Notice") in the national edition of Houston Chronicle and Times Picayune.

## C.     Approval of Procedures for Assumption and Assignment of Executory Contracts and Unexpired Leases

31.     To facilitate and effect the Sale, to the extent necessary, the Debtor may be required to assume certain executory contracts and unexpired leases (collectively, the "Assumed and Assigned Contracts").   No later than seven (7) calendar days following the entry of the Bid Procedures Order, the Debtor shall cause notice to be provided to any counterparties to executory contracts and unexpired leases that may be Assumed and Assigned Contracts pursuant to the Proposed APA (the "Cure Notice").  The Cure Notice shall provide the counterparties to such Assumed and Assigned Contracts notice of the amount that the Debtor believes must be cured upon assumption and assignment as required under Bankruptcy Code § 365 (the "Cure Amount").  Any objections to the assumption and assignment of any executory contract or unexpired lease identified in the Cure Notice, including, but not limited to, objections relating to adequate assurance of future performance, asserted conditions to assumption and/or assignment, or objections to the Cure Amounts set forth in the Cure Notice, must be in writing and filed with the Court within fourteen (14) calendar days of the date on which the Cure Notice is served.

32.     In the event that any Qualified Bid requires the assumption and assignment of any Assumed and Assigned Contract not identified in the Cure Notice, the Debtor, within three (3) business days following the receipt of such Qualified Bid, shall cause notice to be provided to any counterparties to the additional Assumed and Assigned Contract specified in such Qualified Bid (the "Supplemental Cure Notice"), and the Supplemental Cure Notice shall provide the counterparties to the additional Assumed and Assigned Contract notice of the amount that the Debtor believes must be cured upon assumption and assignment as required under Bankruptcy Code § 365 (such amount also referred to herein as a "Cure Amount").  Any objections to the assumption and assignment of such additional Assumed and Assigned Contracts, including, but not limited to, objections related to adequate assurance of future performance, asserted conditions to assumption and/or assignment, or objections to the cure amounts set forth in the Supplemental Cure Notice, must be in writing and filed with the Court not later than three (3) business days prior to the Sale Hearing (the "Objection Deadline").

33.     If no timely objection to the assumption and assignment of a particular executory contract or unexpired lease is received, then the Cure Amount set forth in the Cure Notice (or Supplemental Cure Notice, if applicable) will be binding upon the non-debtor party or parties to the Assumed and Assigned Contract for all purposes in this chapter 11 case and otherwise.  All such counterparties to the Assumed and Assigned Contracts will (a) be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to the Assumed and Assigned Contracts, (b) be deemed to have consented to the assumption and assignment, and (c) be forever barred and estopped from asserting or claiming against the Debtor or the Prevailing Bidder that any additional amounts are due or other defaults exist, that conditions to assumption and/or assignment must be satisfied under such Assumed and

Assigned Contracts or that there is any objection or defense to the assumption and assignment of such Assumed and Assigned Contracts.

34.     If a non-debtor counterparty to an Assumed and Assigned Contract files an objection to assumption or assignment, whether based on Cure Amount, adequate assurance of future performance, or any other alleged cause or claim, then, to the extent the relevant parties are not able to consensually resolve the dispute prior to the Sale Hearing, such dispute shall be heard and resolved at the Sale Hearing.

## V.     ARGUMENTS AND AUTHORITIES

**A.     The Bidding Procedures Are Fair and Are Designed To Maximize the Value Received for the Acquired Property Given the Financial Exigencies Facing the Debtor.**

35.     The Bidding Procedures proposed herein are designed to maximize the value received for the Acquired Property by facilitating a competitive bidding process in which all Potential Bidders are encouraged to participate and submit competing bids, taking into account the financial exigencies facing the Debtor.

36.     The Bidding Procedures and service and publication of the Sale Notice provide Potential Bidders with the twenty-one day notice envisioned by Rule 2002 of the Bankruptcy Rules, which provides sufficient notice and opportunity to acquire the information necessary to submit a timely and informed bid. The liquidity crisis facing the Debtor precludes a more extended process, and the Debtor believes that the period between the Petition Date and the deadline for submission of bids provides a reasonable means for maximizing the return from sale of the Acquired Property within the financial constraints faced.

37.     At the same time, the Bidding Procedures provide the Debtor with the opportunity to consider all competing offers and to select the highest or best offer for the completion of the Sale. If there is a stalking horse bidder, entering into the Proposed APA with

the Proposed Purchaser will ensure fair value by setting a minimum purchase price and exposing such bid to testing by the marketplace.  Accordingly, the Debtor and all parties-in-interest can be assured that, taking into account the financial condition of the Debtor, the consideration paid for the Acquired Property will be fair, reasonable, and in the best interests of the Debtor's estate and creditors, and there are sound business reasons to approve the Bidding Procedures.

**B.** **The Debtor Has Exercised Sound Business Judgment and Provided Adequate Notice and Opportunity to Object With Respect to Assumed and Assigned Contracts**

38.      Bankruptcy Code § 365(a) provides that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract or unexpired lease is whether the debtor's reasonable business judgment supports assumption or rejection.  *Mirant Corp. v. Potomac Electric Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 524-25 & n.5 (5th 2004); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *In re Gucci*, 193 B.R. 411 (S.D.N.Y. 1996); *In re Pisces Energy, LLC*, No. 09-36591H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009).  Under the business judgment test, a court should approve a debtor's proposed assumption if such assumption will benefit the estate.  *In re Pisces Energy*, 2009 WL 7227880, at *6; *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 53-54 (Bankr. Del. 2001); *see also In re Chi-Feng, Huang*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *In re Gunter Hotel Assocs.*, 96 B.R. 696, 698 (Bankr. W.D. Tex. 1988); *In re Food City, Inc.*, 94 B.R. 91, 93-94 (Bankr. W.D. Tex. 1988).

39.      Moreover, a debtor's decision to assume an executory contract or unexpired lease should be accepted "except upon a finding of bad faith or gross abuse of [the debtor's] business

discretion." *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc., (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1047 (4th Cir. 1985); *see also In re Pisces Energy*, 2009 WL 7227880, at *6 (citing *In re Richmond Metal Finishers* for the same statement). "More exacting scrutiny would slow the administration of the Debtor's' estates and increase its cost, interfere with the Bankruptcy Court's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing*., 762 F.2d at 1311; *see also In re Asarco LLC*, 441 B.R. 813, 828 (S.D. Tex. 2010) (noting Debtor's invocation of same Richmond Leasing quotation in motion which bankruptcy court granted and the district court confirmed).

40.     Two conditions are imposed upon a debtor's ability to assume and assign an executory contract. *First*, in order to assume an agreement, pursuant to Bankruptcy Code § 365(b)(1), a debtor must "cure, or provide adequate assurance that the debtor will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in possession may elect to assign such contract. Bankruptcy Code § 365(f) specifically provides that contract provisions seeking to prohibit or limit assignment are unenforceable. *See* 11 U.S.C. § 365(f)(1); *see also, e.g., In re Amidee Capital Group, Inc.*, No. 10-20041, 2010 WL 5141276, at *5 (Bankr. S.D. Tex. Oct. 7, 2010) (treating such prohibitions or limitations as null and void under § 365(f)); *In re Office Prods. of Am., Inc.*, 140 B.R. 407 (Bankr. W.D. Tex. 1992) (provisions that work as a restriction on assignment of leases should be struck down); *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("[t]he code generally favors free assignability as a means to maximize the value of the debtor's estate").

41.     Pursuant to Bankruptcy Code § 365(a), assignment is conditioned on "adequate assurance of future performance [being] provided." 11 U.S.C. § 365(f)(2).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *In re PRK Enters., Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999) (internal quotations omitted); *see also Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Accord In re PRK Enters., Inc.*, 235 B.R. at 603 ("The financial evidence presented by [assignee] demonstrates the likelihood that it has the financial capacity to perform its future obligations under the lease agreements and that its principal officers are serious in their commitment to rehabilitate this corporation."); *In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

42.     Here, the Debtor anticipates that the Qualified Bidders are all entities with financial resources adequate to perform under the respective executory contracts and unexpired leases.  Additionally, the Debtor respectfully submit that the proposed cure procedures for the identification and payment of Cure Amounts (the "Cure Procedures") are appropriate and reasonably tailored to provide non-Debtor counter-parties to potential assumed and assigned contracts with adequate notice of the proposed assumption and assignment of their applicable

contracts, as well as the proposed Cure Amounts related thereto, if any.  Such non-Debtor parties to the potential assumed or assumed and assigned contracts are given an opportunity to object to the proposed assumption and assignment and, in the event an objection is not resolved, this Court will adjudicate the dispute, including issues pertaining to adequate assurance of future performance. Accordingly, the Debtor submits that implementation of the proposed Cure Procedures is appropriate in these cases.

## C. The Sale of the Acquired Property Is Authorized Under Bankruptcy Code Section 363(b)

43.     At the conclusion of the Sale Hearing, the Debtor requests that the Court approve the sale of the Acquired Property to the Prevailing Bidder.  The Debtor submits that the sale of the Acquired Property to the Prevailing Bidder is in the best interest of the Debtor's estate and its creditors.

44.     Bankruptcy Code § 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1070 (2d Cir. 1983), which decision has been adopted in this circuit. *Institutional Creditors of Continental Air Lines Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, at 1226 (5th Cir. 1986); *see also In re Asarco*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at * (Bankr. S.D. Tex. March 21, 2014); *In re St. Marie Clinic PA*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*,

29

No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Industries, Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

45.     The business judgment rule shields a debtor's management from judicial "second-guessing." *In re Genco Shipping & Trading, Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").  Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Filene's Basement*, LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. April 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction.").

46.     Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under § 363(b)(1). When applying the business judgment standard, courts show great deference to a debtor's business decisions.  *See In re Asarco*, 441 B.R. 813, 828 (describing the business judgment standard as "deferential"); *In re Trans World Airlines*, 2001 Bankr. LEXIS 267 at *45-50 (Bankr. D. Del. 2001) (describing business judgment rule as a "very deferential standard"); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687 at *8-9 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must

be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

47.     Here, the fairness and reasonableness of the consideration to be paid for the Acquired Property by the Proposed Purchaser, as may be declared at the Sale Hearing, will be conclusively demonstrated by the exposure of the Acquired Assets to the marketplace.  The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer and sale of the Acquired Property for the benefit of the Debtor's estate and its creditors. The Debtor has insufficient liquidity to continue operations absent a substantial funding commitment, and the Debtor's decision to proceed with the sale process is consistent with sound business judgment.   Under the circumstances, the Bidding Procedures and Auction process represent the best way to achieve substantial consideration for the Debtor's businesses, and will offer the best resolution to the Debtor's current financial situation in the manner that will maximize value to the Debtor's estate and its creditors.

### D. The Sale of The Acquired Property Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f)

48.     The Debtor respectfully submits that it is appropriate to sell the Acquired Property free and clear of all liens, claims, encumbrances and other interests, pursuant to Bankruptcy Code § 363(f), with all such interests attaching to the net sale proceeds of the Acquired Property to the extent applicable.  Section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

- applicable nonbankruptcy law permits sale of such property free and clear of such interests;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  This provision is supplemented by Bankruptcy Code § 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).

49.     Because Bankruptcy Code § 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired Property free and clear of the interests.  *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12 (Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code § 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of § 363(f) is met).

50.     Here, the Debtor believes that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Property pursuant to a Sale Order. Specifically, the Debtor notes that admiralty law allows for the free and clear sale of the Barges. Also, the proceeds from the Sale will likely exceed the approximately $8,000,000 in maritime liens asserted against the Barges.

### E. A Prevailing Bidder Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).

51.     Pursuant to Bankruptcy Code § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

52.     Here, if the Debtor secures a stalking horse bidder, the sale will take place wherein the Proposed APA will have been negotiated at arm's length by sophisticated parties, each represented by their own counsel and financial advisors, and following significant due diligence. Accordingly, the Debtor requests that the Sale Order include a provision that the Prevailing Bidder for the Assets, is a "good faith" purchaser within the meaning of Bankruptcy Code § 363(m). The Debtor believes that providing the Prevailing Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Assets and closing of the same will occur promptly.

## VI.   NOTICE

53.     Notice of this Motion has been given to (i) the DIP Lender and secured maritime lien creditors, (ii) the United States Trustee for the Southern District of Texas; (iii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (iv) the counterparties to each of the Assumed and Assigned Contracts; (v) all other parties known to the Debtor who has asserted or may assert liens, claims or interests in or against any of the Acquired Property; (vi) the Debtor's twenty (20) largest unsecured creditors; (vii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (viii) all other

29

entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property.

## VII.     <u>NO PRIOR REQUEST</u>

54.     No previous motion for the relief requested herein has been made to this or any other court.

Wherefore, the Debtor respectfully requests that the Court approve the Bid Procedures Order, substantially in the form attached hereto, (ii), and grant such other and further relief as the Court deems just and proper.

Dated: October 23, 2017                    Respectfully submitted,

DIAMOND McCARTHY LLP

<u>/s/ Kyung S. Lee</u>
Kyung S. Lee
TBA No. 12128400
klee@diamondmccarthy.com
Charles M. Rubio
TBA No. 24083768
crubio@diamondmccarthy.com
Two Houston Center
909 Fannin, 37th Floor
Houston, TX 77010
Telephone: (713) 333-5100
Facsimile: (713) 333-5199

*Proposed Counsel for Offshore Specialty Fabricators, LLC, Debtor and Debtor-in-Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 23, 2017, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<u>/s/ Kyung S. Lee</u>

Kyung S. Lee

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **OFFSHORE SPECIALTY** | § | **Case No. 17-35623** |
| **FABRICATORS, LLC,** | § | |
| | § | **(Chapter 11)** |
| **DEBTOR.** | § | |

**ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE
SALE OF DEBTOR'S PROPERTY, (II) SCHEDULING BIDDING DEADLINE,
AUCTION DATE AND SALE HEARING DATE, (III) APPROVING FORM AND
NOTICE THEREOF AND (IV) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES; AND (B) ENTRY OF AN ORDER AFTER THE SALE HEARING (I)
AUTHORIZING THE DEBTOR TO SELL ITS PROPERTY, (II) AUTHORIZING THE
DEBTOR TO ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[3] of Offshore Specialty Fabricators, LLC (the "Debtor")

seeking entry of an order authorizing and approving, among other things, (a) the sale procedures

for the sale of the Barges (the "Acquired Property") (in the form attached hereto as **Exhibit** [●],

the "Sale Procedures"); and (b) the bid protections for the Stalking Horse Bidder and the terms of

that certain [Asset Purchase Agreement] dated as of [●], 2017 (the "Stalking Horse Purchase

Agreement") between the Debtor and [●] (or its assignee, jointly the "Stalking Horse Bidder");

and the Court having reviewed the Motion and having determined that the relief requested in the

Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest,

and after due deliberation thereon, and good and sufficient cause appearing therefor, including

for the reasons stated on the record at the hearing seeking approval of the Sale Procedures,

---

[3] Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the
Motion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the Motion, as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

SIGNED on _____.

_____
United States Bankruptcy Judge