


ENTERED
12/28/2017

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **OFFSHORE SPECIALTY FABRICATORS, LLC; fka OFFSHORE SPECIALTY FABRICATORES, INC.** | § | **CASE NO: 17-35623** |
| **Debtor(s)** | § | |
| | § | **CHAPTER 11** |

**MEMORANDUM OPINION**

Alliance Special Ventures Fund, LLC ("Alliance") filed a proof of claim asserting secured maritime liens against Offshore Specialty Fabricators LLC's ("OSF") vessels the "Swing Thompson" and "William Kallop." OSF objected to the claim, arguing that Alliance's liens were invalid because Alliance was involved in a joint venture with OSF when the liens were incurred. For bidding estimation purposes, Alliance's lien is allowed in part and denied in part.

**Background**

OSF was engaged in the decommissioning and demolition of oil and gas wells and platforms in the Gulf of Mexico. (ECF No. 243 at 1). OSF entered into a Management Services Agreement with Alliance Heavy Lift, LLC ("Heavy Lift") on May 23, 2016, that gave Heavy Lift's management team responsibility for OSF's day to day operations. (ECF No. 256 at 3).

On March 15, 2017, Alliance, initiated proceedings in the Eastern District of Louisiana to seize OSF's vessels. (ECF No. 203 at 2). After the vessels' arrest, numerous creditors claimed to hold liens against the vessels. (ECF No. 203 at 2). The district court ordered that the vessels be auctioned on October 2, 2017, and the proceeds distributed to the vessels' creditors. (ECF No. 203 at 2). However, OSF filed for bankruptcy in this Court on October 1, 2017, which halted the auction. (*See* ECF No. 1).

In connection with the bankruptcy proceeding, Alliance filed Proof of Claim 49 which asserted a claim of $320,507.77 with a secured maritime lien of $270,293.78. (Claim No. 49-1 at 2). Part of this claim consists of $157,317.78 that originally belonged to Rouse Enterprises, LLC but was later assigned to Alliance. (ECF No. 243 at 3; Claim No. 49-1 at 4). Rouse provided the vessels with necessaries in the form of "groceries, supplies and other victuals" but later sold and assigned the receivables from this debt to Alliance on March 3, 2017. (ECF No. 243 at 3). $54,340.00 Of the claim is attributable to unpaid invoices OSF owed Alliance Offshore for chartering two vessels to transport personnel and supplies onto the "William Kallop" and "Swing Thompson." (ECF No. 243 at 3; Claim No. 49-1 at 4). The claim was assigned to Alliance on March 7, 2017. (ECF No. 243 at 4). The remainder of the claim consists of pre-filing court costs related to the vessels' seizure ($6,400.00) and *custodia legis* expenses ($52,236.00). (Claim No. 49-1 at 5).

In its Omnibus Claim Objection, OSF does not object to the pre-filing court costs or *custodia legis* expenses. (ECF No. 203 at 22). OSF argues that Alliance is not entitled to a maritime lien on these claims because Alliance's principals and owners were engaged in a joint venture with OSF when the debts in question were incurred. (ECF No. 203 at 20–22). Alliance claims that no joint venture exists based on corporate form and as the rightful assignees of the claims, Alliance may assert them. (ECF No. 243 at 4–9).

On December 15, 2017, the Court held a hearing to estimate claims for the purpose of credit bidding at the upcoming auction of the vessels. (*See* December 15, 2017 hearing). The Court requested additional briefing from the parties regarding the joint venture issue and took the matter under advisement on December 19, 2017.

**Jurisdiction**

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (K), and (O).

**Analysis**

Maritime liens are strictly construed and are not extended by "construction, analogy or inference." *Comar Marine Corp. v. Raider Marine Logistics, LLC*, 792 F.3d 564, 569–70 (5th Cir. 2015) (quoting *Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co*., 254 U.S. 1, 12, (1920)). Valid maritime liens are either defined by statute or fall within classes of maritime liens that have been historically recognized. *Comar*, 792 F.3d at 570; *see, e.g.*, 46 U.S.C. § 31342(a)(1) (providing a maritime lien to those who provide a vessel with necessaries).

However, not all lien claimants are entitled to the special privileges maritime liens receive. *See Comar*, 792 F.3d at 569. Joint venturers are not entitled to maritime liens because they are in a unique position to know a vessel's finances and obligations before extending credit. *See Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208–09 (5th Cir. 1978). Thus, they are not entitled to the protections given to creditors who extend credit without knowledge of a ship's financial health. *Id*.

The Fifth Circuit has identified several characteristics that determine whether a joint venture exists: (i) the parties' intentions, (ii) joint control or the joint right of control, (iii) joint proprietary interests in the subject matter of the venture, and (iv) sharing in losses as well as profits. *Id*. at 1208. No single characteristic is determinative and whether a joint venture exists varies with context. *Id*.

*Management Services Agreement*

The starting point for determining whether a joint venture exists in this case is the Management Services Agreement. The Agreement, entered into between OSF and Alliance Heavy Lift "grants full and unconditional authority to [Heavy Lift] . . . to independently and in [Heavy Lift's] sole discretion, manage the business operations of [OSF]." (ECF No. 203–1 at 108). In exchange for its management expertise, Heavy Lift was to be compensated with "5% of the proceeds for the chartering out, and other charges attributable to the derrick barges." (ECF No. 203–1 at 108–09). These contract provisions fail to indicate the existence of a joint venture. While they vest control and decision making of the organization in Heavy Lift's sole discretion, Heavy Lift was compensated with 5% of gross proceeds in return. Heavy Lift received none of the profits generated by these activities; merely a 5% fee. Heavy Lift was not subject to potential losses. There was not joint control over OSF's operations since the Agreement gave Heavy Lift sole management control over personnel, assets, financing, and marketing. (ECF No. 203-1 at 108). Accordingly this arrangement fails to satisfy two of the factors the Fifth Circuit outlined in *Comar*: joint control and sharing in losses and profits. 792 F.3d at 569.

The contract also stated that Heavy Lift is an independent contractor, provided Heavy Lift with reimbursement of expenses, contemplated potential early termination of the agreement, and agreed that OSF would indemnify Heavy Lift from any liability which occurred through the performance of the Agreement. (ECF No. 203-1 at 109). These provisions also tend to separate OSF and Heavy Lift and indicate that the parties intended Heavy Lift to be a service provider to OSF rather than an equally vested partner.

*Stranger to the Vessel*

Although the Master Service Agreement does not indicate a joint venture exists between OSF and Alliance, other equitable considerations may also preclude a maritime lien. The goal of maritime liens is to provide vessels with access to credit and creditors an assurance of repayment. *Mullane v. Chambers*, 438 F.3d 132, 138 (1st Cir. 2006). However a prerequisite for maritime liens is that the creditor is a stranger to a vessel because "those who share the responsibility for incurring the debts of the vessel ought not be reimbursed out of that vessel's proceeds to the detriment of other lienholders." *Hinson v. MV Chimera*, 661 F. Supp.2d 614, 619 (E.D. La. 2009).

In *Beech v. FV Wishbone*, three individuals sought to assert maritime liens against a sport fishing vessel owned by a limited liability company. 113 F. Supp.3d 1203, 1207 (S.D. Ala. 2015). The court held that all three individuals were joint venturers and not entitled to maritime liens. One was married to the person who had dominion over the vessel, providing her with "access to . . . the person who was acting to control the Vessel's affairs during the interval in which she was furnishing necessaries to the Vessel." *Id*. at 1214. A second individual provided capital investments but expected to share in the vessel's profits in return, attended business meetings, and proposed advertising plans. *Id*. at 1215. The individuals were not strangers to the vessel and had no need for the protection of maritime liens given their familiarity with the vessel's finances. *Id*. at 1214–15.

OSF asserts that a joint venture exists with Alliance, relying on the presence of common management in Heavy Lift and the Alliance entities to demonstrate that Alliance is not a stranger to the vessels. (ECF No. 256 at 5). OSF alleges that Alliance leveraged the position of insiders to incur the indebtedness owed and that Alliance "should not be entitled to be paid to the

detriment of the legitimate creditors." (ECF No. 256 at 6). OSF's argument has merit. The Agreement named Stephen Williams and Eric Trosclair to positions within OSF equivalent to CEO and Contracts Manager. (ECF No. 203-1 at 113). However, Williams and Trosclair concurrently occupied prominent positions within the Alliance entities—Williams as the President of Alliance Maritime Holdings, LLC and founder of Alliance SVF while Trosclair served as the manager of Alliance SVF. (ECF No. 256 at 5). This arrangement closely parallels the individuals who claimed maritime liens in *FV Wishbone*. 113 F. Supp.3d at 1214–16. Through their positions in OSF, Williams and Trosclair simultaneously had complete access to the OSF vessels' financial information and control over the Alliance entities. Thus, extending the privileges of a maritime lien while they assumed none of the risk of maritime lien creditors is inappropriate. Consequently, the Alliance Offshore portion of Alliance's claim is not a secured maritime lien.

OSF asks the Court to reach a similar decision regarding the balance of the claim based on necessaries provided by Rouse Enterprises, LLC. (ECF No. 256 at 6). According to OSF, "Williams requested [Rouse] provide groceries and other supplies to OSF and the Vessels." (ECF No. 256 at 6). However, OSF fails to indicate that individuals at Rouse had the same knowledge of the vessels' inner-workings as Williams and Alliance. Although OSF claims that the liens were extended with Williams's encouragement, the fact remains that Rouse took the same risk as other maritime creditors by providing necessaries while a stranger to the vessel. Thus, the Rouse claim is secured and entitled to its maritime lien.

OSF asks the Court to preclude the maritime lien since the Rouse claim was acquired by Alliance. However, OSF does not cite to any authority (nor could the Court find any) suggesting that the assignment of a valid maritime lien alters its validity. To the contrary, case law

establishes that maritime liens are freely assignable and the assignee assumes the rights of the assignor. *Barcliff, LLC v. MV Deep Blue*, 876 F.3d 1063, 1074 (11th Cir. 2017); *Cotemar S.A. de C.V. v. Beaufort*, 190 F. Supp.3d 577, 583 (E.D. La. 2016). Here, Rouse acquired a valid lien by providing necessaries to OSF's vessels and Alliance subsequently purchased that debt and now seeks to enforce it. (ECF No. 243 at 3). Consequently, the Rouse portion of Alliance's claim is allowed.

**Conclusion**

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **December 28, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE