## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OFFSHORE SPECIALTY FABRICATORS, | § | CASE NO: 17-35623 |
| LLC; fka OFFSHORE SPECIALTY | § | |
| FABRICATORES, INC. | § | |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION

Mickel Hahn filed a proof of claim asserting a maritime lien against Offshore Specialty Fabricators ("OSF") for personal injuries that occurred aboard OSF's vessel the "William Kallop" on September 8, 2015.  For bidding estimation purposes, the Court estimates Hahn's claim at $1,228,665.59.

| | Amount Requested | Adjustment | Final Amount |
|---|---|---|---|
| Medical Expenses Prior to November 16, 2016 | $245,195.91 | Allowed in Full | $ 245,195.91 |
| Medical Expenses Between November 16, 2016 and January 12, 2016 | $15,000.20 | 50% Reduction | $7,500.01 |
| Future Expenses | $1,631,778.83 | 50% Reduction | $815,889.42 |
| Soft Damages | $1,608,025.06 | 90% Reduction | $160,080.25 |
| TOTALS | $3,500,000.00 | | $1,228,665.59 |

## Background

Hahn was employed as a crewmember aboard the William Kallop.  (Proof of Claim No. 72; Ex. A at 2).  On September 8, 2015, Hahn was stocking the vessel's walk-in freezer with food products when he slipped and fell, injuring his head, neck, and back. *Id.*  Hahn alleges his injuries required significant medical attention and resulted in prolonged pain, suffering, and mental anguish, as well as a diminished future earning capacity. *Id.* at 2–4.

Hahn filed a Jones Act claim against OSF in the 333rd Judicial District Court in Harris County, Texas, alleging that, as a seaman employed on a vessel in navigable waters, OSF failed to pay him required maintenance and cure for the William Kallop's unseaworthy condition, and that OSF's negligence caused his injuries. (*See* Case No. 2016-86584). However, before Hahn's trial began, OSF filed for chapter 11 bankruptcy, staying Hahn's state court suit. (*See* ECF No. 1).

Hahn filed a proof of claim in OSF's bankruptcy case asserting a secured maritime tort lien of $3,500,000.00 against the William Kallop. (Proof of Claim No. 72 at 2). OSF and Crosby Tugs both filed timely objections opposing Hahn's claim. (*See* ECF Nos. 192, 203). After several proceedings in OSF's bankruptcy case, the Court ordered OSF's vessels to be auctioned on January 19, 2018. For purposes of credit bidding, the Court must estimate the amount of secured claims eligible to bid at the auction. On December 15, 2017, the Court estimated the majority of the claims against OSF for credit bidding purposes, but reserved the estimation of Hahn's personal injury claim for a separate hearing to be held on January 12, 2018.

Hahn, OSF, and Crosby Tugs presented their arguments on January 12, 2018, and the Court took the matter under advisement.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## Analysis

Under 11 U.S.C. § 502(c)(1), the Court may estimate "contingent or unliquidated claims" for the purpose of promptly administering the case and avoiding undue delays. The parties do

not dispute that Hahn has an unliquidated claim against OSF based on his state court suit. (*See* Case No. 2016-86584). Additionally, the auction of OSF's vessels is scheduled to take place on January 19, 2018, and a meaningful, robust auction is needed to maximize value for the bankruptcy estate. To foster the effectiveness of this process, bidders should have a concrete understanding of any potential priority maritime tort lien claim that may exist on one of OSF's vessels. Thus, the Court's estimation of Hahn's unliquidated claim is appropriate and necessary to provide potential bidders with information vital to the auction and administration of the bankruptcy estate. 11 U.S.C. § 502(c)(1).

At the auction, each bidder will be able to post cash in the amount of Hahn's estimated claim, or to accept the vessel subject to Hahn's unliquidated maritime lien. Hahn is also entitled to bid at the auction, and may bid the amount of his estimated claim.

*Past Medical Expenses*

To establish the amounts owed to him for his past injury, Hahn submitted a significant amount of medical information and billing records relating to the injuries he sustained onboard the William Kallop. (*See* Hahn Exhibit Nos. 20 – 56). The evidence demonstrated that Hahn experienced a significant injury to his C5–6 vertebrae that resulted in radiculopathy and required a discectomy to alleviate his symptoms. In addition to treatment from his primary care physician, Hahn also required therapy from a neurosurgeon that performed the discectomy and a pain management specialist. (*See* Hahn exhibits 20 – 22). Hahn also alleges damages from depression and anxiety resulting from the injury. Hahn's purported medical expenses total $260,196.11. The bills Hahn presented contain significant duplicate billings. It appears that the duplicated billings have been eliminated and no party challenged Hahn's calculation of the correct total. (Hahn Exhibit Nos. 37-51).

OSF challenges some of Hahn's claim for past medical expenses, arguing that Hahn's medical records indicated that some of his depression and anxiety were preexisting conditions Hahn experienced prior to his injury on the William Kallop; as preexisting conditions, OSF argues that it should not be liable for these particular conditions. (January 12, 2018 Hearing at 2:40 P.M.). However, in order to limit liability for a pre-existing condition, a maritime employer must show that an injured seaman has "willfully concealed from his employer a preexisting medical condition." *Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (quoting *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d, 166, 171 (5th Cir. 2005)).

Although OSF claims Hahn's recovery should be limited because his depression and anxiety existed before the accident on the William Kallop, this objection alone does not satisfy the standard established in *Johnson* since OSF failed to identify any attempt by Hahn to conceal his purported preexisting condition. *Id.* Furthermore, OSF's argument fails to consider the fact that a tortfeasor takes the victim as he finds him. *Koch v. U.S.*, 857 F.3d 267, 274 (5th Cir. 2017). Even if Hahn was predisposed to depression and anxiety, OSF remains liable if the injury triggered a relapse in his condition.

*Subsequent Intervening Event*

Crosby Tugs alleges that a portion of Hahn's past medical expenses were attributed to a November 4, 2016 car accident in which Hahn hit a deer while driving his car. Hahn's car ended up in a ditch and Hahn was injured in the November 4, 2016 car crash. (Hahn Exhibit No. 33 at 4).

Crosby points to a deposition of Hahn that took place in April 2017 in which Hahn was asked under oath: "When was your last automobile accident?" (Hahn Exhibit No. 57 at 16–18). Hahn replied that he was only involved in an auto accident that occurred in 2014, prior to his

injury on the William Kallop.  However, this answer was directly contradicted by Hahn's own medical records that state: "[Hahn experienced] new onset left hand pain that started on 11/04/2016 after the patient hit a deer.  [Hahn] states that the deer ended up going through the windshield and [his] vehicle landed in a ditch, almost landing sideways."  (Hahn Exhibit No. 33 at 4).

Subsequent examination revealed that on November 4, 2016, Hahn hit a deer and crashed his vehicle into a ditch, further injuring him.  (January 12, 2018 Hearing at 3:09 P.M.).  Despite the fact that the accident occurred just four months prior to the April deposition, Hahn failed to disclose this important fact during the examination.  Crosby claims this failure to disclose is adequate to preclude all of Hahn's possible future recovery based on the theory that Hahn's deer accident injured him further and was a superseding event, terminating OSF's liability for the accident on the William Kallop.  (January 12, 2018 Hearing at 3:17 P.M.).

Hahn's only answer to this allegation is that recent affidavits by Hahn's physicians do not attribute past or future medical expenses to the car crash.

This is a significant issue.  Hahn's historic medical records unambiguously identify the car crash as an exacerbating cause of his pain.  (*See* Hahn Exhibit No. 33 at 4).  The fact that the physician affidavits omit this fact creates a ripe avenue for impeachment of the physicians.

Although he was specifically asked about whether he was in a subsequent car crash, Hahn denied the existence of the car crash.  Hahn's obfuscation of this subsequent event will also diminish his personal credibility.  As a direct result of Hahn's inaccurate testimony, Crosby was unable to present direct evidence about the effect of the November, 2016 car crash.

For the purposes of this estimation hearing, it is appropriate to apply a significant reduction to Hahn's post-November, 2016 claims.

*Future Medical Expenses and Loss of Earning Capacity*

Hahn seeks recovery to compensate him for his future medical expenses and his alleged diminished work capacity caused by his injury. To support his claim, Hahn provided a detailed Life Care Plan created by Dr. Todd Cowen and an Earning Capacity Appraisal by Dr. Kenneth G. McCoin. (Hahn Exhibits Nos. 15 and 19). The Life Care Plan was created based upon Dr. Cowen's examination of Hahn in July 2016. (Hahn Exhibit No. 18). In total, the two reports estimate that Hahn requires approximately $1,631,778.83 ($1,080,915.00 for loss of future earnings and $550,863.83 for future medical expenses) to properly compensate him for the increased medical expenses and decreased earning potential as a result of the accident. (Hahn Exhibit Nos. 14 at 3; 17 at 3).

OSF challenges the Earning Capacity Appraisal's use of Hahn's most recent earnings in the year prior to his accident, claiming it results in an inflated number for his future diminished earning capacity. (September 12, 2018 Hearing at 3:59 P.M.). However, OSF's view is contradicted by Fifth Circuit case law. In *Martinez v. Offshore Specialty Fabricators*, the Fifth Circuit unequivocally stated that a Jones Act seaman's claim for future earnings is based on his most recent earnings: "Calculation of lost income 'begins with the gross earnings of the injured party at the time of injury[.]'" 481 F. App'x 942, 949 (5th Cir. 2012) (quoting *Culver v. Slater Boat Co*., 722 F.2d 114, 117 (5th Cir. 1983) (en banc)). Accordingly, the Earning Capacity Appraisal's calculation is properly based on Hahn's 2015 earnings.

Crosby's argument concerning the effect of the November 4, 2016 accident carries considerable weight. However, Crosby fails to consider that Dr. Cowen created the Life Care Plan after examining Hahn in July 2016, several months prior to the alleged superseding event. (Hahn Exhibit No. 18). Crosby's argument fails to demonstrate how an after-occurring car

accident could negatively impact Dr. Cowen's calculations that were performed before the November 4, 2016 car crash. Nevertheless, although Hahn's omission at his deposition may not rise to the level of perjury, it is still material to his recovery (and to his credibility). It is a revelation that a jury would likely find highly persuasive. By his own doctor's admission, Hahn's condition had begun to improve before the auto accident dealt his recovery a serious setback. (Hahn Exhibit No. 33 at 4). This improvement would surely have been used to diminish the credibility of the future forecast of lost earnings.

Hahn's failure to disclose his most recent accident hindered OSF and Crosby's preparation for the estimation hearing since they were unable to thoroughly examine the impact this accident may have had on Hahn. Based on this information, the Court estimates a 50% reduction in Hahn's recovery for future medical expenses and diminished earning capacity to $815,889.41.

*Soft Damages*

Hahn also seeks to recover for his pain and suffering, mental anguish, and impairment that occurred from his accident. Hahn did not identify a specific amount he seeks to recover for soft damages; the Court is left to assume the balance of his $3,500,000.00 claim ($1,608,015.06) is for soft damages.

The Court is sympathetic to the difficulties Hahn has faced since his injury. His medical records demonstrate that he has undergone significant pain associated with his radiculopathy and discectomy. His injury left him with a loss of strength, decreased range of motion, and numbness in his extremities—physical manifestations of the injury that encroach on his quality of life. (*See* Hahn Exhibit Nos. 31-33). Hahn also either developed or experienced a recurrence of depression, anxiety, and insomnia pursuant to his injury, which require medication to

alleviate.  (Hahn Exhibit No. 18 at 14).  As his Life Care Plan indicates, it is likely that Hahn's injury will necessitate future medical procedures, resulting in additional pain and discomfort. (Hahn Exhibit No. 18 at 18–30).  Yet, beyond the medical records, Hahn did not present adequate additional evidence regarding his soft damages.

OSF and Crosby allege that Hahn's depositions paint a picture of a man who has essentially the same quality of life after the accident as he did before, spending time with friends, visiting bars, attending weddings, driving, and flying on commercial airlines.  (Hahn Exhibit No. 57 at 202–07).  Even issues such as house and yard work should be discounted because Hahn admittedly didn't attend to those matters prior to his accident.  (Hahn Exhibit No. 57 at 203). Additionally, OSF points to the fact that Hahn has not sought new employment in the eighteen months since his accident to support its notion that at least some of Hahn's difficulties should not result in a recovery against the William Kallop.  (January 12, 2018 Hearing at 2:52 P.M.).

The Court accepts both parties' arguments in part.  Hahn was undoubtedly injured in the accident, experiencing some amount of pain and suffering that will extend into the future.  For reasons unknown to the Court, Hahn failed to give any live or affidavit testimony regarding the extent of his current pain and suffering.  Hahn is not completely disabled.  Although the injury impacted his quality of life, he remains self-sufficient and capable of performing most activities. As a result, the Court reduces Hahn's soft damages estimated claim by 90% to $160,080.25.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **January 16, 2018.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE