**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 17-35623** |
| **OFFSHORE SPECIALTY** | § | |
| **FABRICATORS, LLC.,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |

**FIRST AMENDED PLAN OF LIQUIDATION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC
<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Dated: September 10, 2018

Susan C. Mathews
Texas Bar No. 05060650
smathews@bakerdonelson.com
Daniel J. Ferretti
Texas Bar No. 24096066
dferretti@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, TX 77010
Telephone:  (713) 650-9700
Facsimile:  (713) 650-9701

-AND-

Jan M. Hayden
(Admitted Pro Hac Vice)
Louisiana Bar No. 6672
jhayden@bakerdonelson.com
Edward H. Arnold, III
Louisiana Bar No. 18767
Federal ID No. 17158
harnold@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-8645
Facsimile: (504) 585-6945

*Attorneys for Official Committee of Unsecured
Creditors for Offshore Specialty Fabricators,
LLC*

**TABLE OF CONTENTS**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................. 1
  **A.**    *Defined Terms.* ............................................................................... 1
  **B.**    *Rules of Interpretation.* ................................................................. 10
  **C.**    *Exhibits and Schedules.* ................................................................ 11

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ...................................... 11
  **A.**    *Administrative Claims (Unclassified Class A-1).* ........................... 11
  **B.**    *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve.* ........................................................... 11
  **C.**    *Priority Claims (Unclassified Class A-2).* ..................................... 12
  **D.**    *General.* ........................................................................................ 12

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS** ........................................................................ 12
  **A.**    *Summary.* ...................................................................................... 12
  **B.**    *Classification of Claims and Member Interests for the Debtor.* ....... 12
  **C.**    *Treatment of Claims and Member Interests for the Debtor* ............. 13
  **D.**    *Special Provision Governing Unimpaired Claims.* .......................... 17
  **E.**    *Nonconsensual Confirmation.* ........................................................ 17

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** .............................. 17
  **A.**    *Preservation of Causes of Action; Transfer of Assets; Establishment of Personal Injury Reserve* ........................................................... 17
  **B.**    *Establishment of Liquidating Trust and Authority, Rights and Duties of Liquidating Trustee.* .................................................................. 18
  **C.**    *Selection of the Trust Oversight Committee.* .................................. 21
  **D.**    *Operations of Debtor Between Confirmation Date and Effective Date* ............. 21
  **E.**    *Establishment of the Administrative Claims Bar Date.* .................... 21
  **F.**    *Term of Injunctions or Stays.* ....................................................... 22
  **G.**    *Creditors' Committee.* ................................................................... 22
  **H.**    *Debtor's Professionals.* ................................................................ 22
  **I.**    *Creditors' Committee Professionals* .............................................. 23

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** .................................... 23
  **A.**    *Initial Distributions to Holders of Unsecured Claims* ..................... 23
  **B.**    *Disputed Reserve.* ......................................................................... 23
  **C.**    *Subsequent Distributions.* ............................................................. 24
  **D.**    *Delivery of Distributions.* .............................................................. 24
  **E.**    *Manner of Cash Payments Under the Plan.* .................................... 25
  **F.**    *Time Bar to Cash Payments by Check.* ........................................... 25
  **G.**    *Compliance with Tax Requirements.* ............................................. 25
  **H.**    *No Payments of Fractional Dollars and Minimum Distributions.* ...... 25
  **I.**    *Interest on Claims.* ....................................................................... 25
  **J.**    *No Distribution in Excess of Allowed Amount of Claim.* .................. 26
  **K.**    *Setoff and Recoupment.* ................................................................ 26
  **L.**    *No Distribution Pending Allowance.* .............................................. 26
  **M.**    *Resolution of Disputed Claims; Treatment of Subordinated Claims.* ............ 26

i

| | | |
|---|---|---|
| **N.** | *Objection Deadline.* | 27 |
| **O.** | *Estimation of Claims.* | 27 |

**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....... **27**

| | | |
|---|---|---|
| **A.** | *Assumption and Rejection of Executory Contracts and Unexpired Leases.* | 27 |
| **B.** | *Claims Based on Rejection of Executory Contracts and Unexpired Leases.* | 27 |
| **C.** | *Cure Claims.* | 28 |
| **D.** | *Insurance Policies.* | 28 |

**ARTICLE VII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**.................... **28**

**ARTICLE VIII INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS** ......... **29**

| | | |
|---|---|---|
| **A.** | *Compromise and Settlement.* | 29 |
| **B.** | *Releases.* | 29 |
| **C.** | *Exculpation.* | 31 |
| **D.** | *Injunction.* | 32 |
| **E.** | *Release of Liens.* | 33 |
| **F.** | *Carve-Out* | 33 |

**ARTICLE IX RETENTION OF JURISDICTION** ...................................... **33**

**ARTICLE X MISCELLANEOUS PROVISIONS** .................................... **34**

| | | |
|---|---|---|
| **A.** | *Final Fee Applications.* | 34 |
| **B.** | *Payment of Statutory Fees.* | 34 |
| **C.** | *Modification of the Plan.* | 35 |
| **D.** | *Revocation of Plan.* | 35 |
| **E.** | *Successors and Assigns.* | 35 |
| **F.** | *Governing Law and Construction.* | 35 |
| **G.** | *Reservation of Rights.* | 35 |
| **H.** | *Article 1146 Exemption.* | 36 |
| **I.** | *Section 1125(e) Good Faith Compliance.* | 36 |
| **J.** | *Further Assurances.* | 36 |
| **K.** | *Service of Documents.* | 36 |
| **L.** | *Filing of Additional Documents.* | 37 |
| **M.** | *No Stay of Confirmation Order.* | 37 |
| **N.** | *Bankruptcy Code Section 1141 Discharge.* | 37 |

4853-2630-0525 v4
2942535-000001

**FIRST AMENDED PLAN OF LIQUIDATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, the Official Committee of Unsecured Creditors of Offshore Specialty Fabricators, LLC (the "Committee" or the "Proponent") in the above-captioned Chapter 11 Case hereby respectfully proposes the following First Amended Plan of Liquidation under chapter 11 of the Bankruptcy Code.

**ARTICLE I**
**DEFINED TERMS AND RULES OF INTERPRETATION**

**A.**     *Defined Terms.*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

**1.**     "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with: (i) applications filed pursuant to sections 328, 330 and 331 of the Bankruptcy Code; (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (iii) applications for allowance of Administrative Expenses.  To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

**2.**     "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) (including claims under sections 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Estate under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); provided, however, that such Administrative Claims shall not include claims for Accrued Professional Compensation.

1

3. "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

4. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code; provided, however, the term "Affiliate" as used in this Plan shall not include Steve Williams or any entity owned or controlled by him.

5. "*Affiliate Claims*" means any Claim of an Affiliate of the Debtor, including Administrative Claims (if any), as well as the following Claims filed in this Chapter 11 Case: Offshore Express, LLC (Claim No. 128), Fairways Exploration & Production, LLC (Claim No. 129), Fairways Energy Resources, LLC (Claim No. 130), Offshore Exploration and Production, LLC (Claim No. 131), and Offshore Domestic Group, LLC (Claim No. 132).

6. "*Allowed*" means, with respect to any Claim or Member Interest, except as otherwise provided herein: (i) a Claim or Member Interest that has been scheduled by the Debtor in its Schedule as other than disputed, contingent or unliquidated; (ii) a Claim or Member Interest that has been allowed by a Final Order; (iii) a Claim or Member Interest that is allowed: (a) in any stipulation of amount and nature of such Claim or Member Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Debtor or the Liquidating Trustee, as applicable, of the amount and nature of such Claim or Member Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Member Interest that is allowed pursuant to the terms of this Plan; or (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date. Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or the Liquidating Trustee, as applicable. For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

7. "*Available Cash*" means, with respect to the Debtor or the Liquidating Trustee, such Person's Cash on hand on the date of determination.

8. "*Avoidance Actions*" include all avoidance actions under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

9. "*Bankruptcy Code*" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

2

**10.** "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**11.** "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

**12.** "*Barges*" mean the DB SWING THOMPSON and the DB WILLIAM KALLOP, collectively.

**13.** "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Federal Rules of Bankruptcy Procedure 9006(a).

**14.** "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

**15.** "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by the Debtor, the Debtor in Possession, and/or the Estate that are or may be pending or on or have accrued prior to the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "*Causes of Action*" shall exclude any Causes of Action released in the Plan.

**16.** "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned Case Nos. 17-35623.

**17.** "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

**18.** "*Claims Objection Bar Date*" means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be one hundred eighty (180) days after the Effective Date; provided, however, that the Liquidating Trustee may seek one or more extensions of this date by Filing an appropriate motion with the Bankruptcy Court.

3

**19.** "*Class*" means a category of Claims or Member Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

**20.** "*Class C-2 Reserve*" means a reserve of $350,000 Cash held in trust for the benefit of the holders of the Allowed Class C-2 Claims and established by the Debtor from Available Cash on the Confirmation Date, which shall be used to pay the Class C-4 Claim.

**21.** "*Class C-4 Reserve*" means a reserve of $400,000 Cash held in trust for the benefit of the holders of the Allowed Class C-4 Claims and established by the Debtor from Available Cash on the Confirmation Date, which shall be used to pay the Class C-4 Claim.

**22.** "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in this Chapter 11 Case.

**23.** "*Confirmation Hearing*" means the hearing to consider confirmation of the Plan in accordance with sections 1128(a) and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**24.** "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtor and the Creditors' Committee.

**25.** "*Consummation*" means the occurrence of the Effective Date.

**26.** "*Credit Bidding Estimation Order*" means the order of the Bankruptcy Court, dated January 17, 2018, titled Amended Order (I) Estimating the Secured Claim of Mickel Hahn; and (II) Modifying Bidding Procedures [ECF No. 347].

**27.** "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

**28.** "*Creditors' Committee*" or "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee for the Southern District of Texas, pursuant to section 1102 of the Bankruptcy Code, on October 25, 2017, as such committee may be reconstituted from time to time.

**29.** "*Court*" means either the Bankruptcy Court or court of competent jurisdiction.

**30.** "*DB SWING THOMPSON*" means the DB SWING THOMPSON IMO No. 7706005, her engines, tackle, apparel, equipment and appurtenances.

**31.** "*DB WILLIAM KALLOP*" means the DB WILLIAM KALLOP IMO No. 8639455, her engines, tackle, apparel, equipment and appurtenances.

**32.** "*Debtor*" or "*Debtor in Possession*" means OSF.

**33.** "*Disclosure Statement*" means the *Disclosure Statement in support of Plan of Liquidation*, dated September 10, 2018, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the

4

Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

34.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement entered by the Bankruptcy Court on ___, 2018 [ECF No. [●]].

35.     "*Disputed*" means any Claim or Member Interest or any portion thereof:  (i) that is listed on the Schedule as unliquidated, disputed or contingent; (ii) as to which the Debtor, the Liquidating Trustee, the Creditors' Committee, or any other party in interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; (iii) that are or after applicable proceedings by the Debtor, the Liquidating Trustee, or the Creditors' Committee may be determined to be Subordinated Claims; or (iv) otherwise disputed by the Debtor, the Liquidating Trustee, or the Creditors' Committee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

36.     "*Disputed Reserve*" means the reserve fund created pursuant to Article V herein.

37.     "*Distributions*" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

38.     "*Effective Date*" means the date specified by the Liquidating Trustee in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be following the date by which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtor, the Liquidating Trustee, and the Creditors' Committee elect in their sole discretion, to consummate the Plan on an earlier date if an appeal is timely filed; and (ii) all conditions specified in Article VIII of the Plan have been satisfied or waived in accordance with the Plan.

39.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

40.     "*Estate*" means the estate of Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

41.     "*Estimated*" means, with respect to a Claim, the amount the Bankruptcy Court established as the estimated amount of the Claim for purposes of credit bidding on the Barges in its Credit Bidding Estimation Order.

42.     "*Executory Contract and Unexpired Lease Assumption and Assignment Schedule*" means the schedule designating the Executory Contracts and Unexpired Leases to be assumed and assigned to the Liquidating Trust and setting forth the monetary cure amount the Debtor believes to be owed with respect to each such Executory Contract and Unexpired Lease.

43.     "*Executory Contracts and Unexpired Leases*" means all contracts and leases between the Debtor and any third-parties that are "executory contracts" or unexpired leases as such terms are used in section 365 of the Bankruptcy Code.

5

44.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

45.     "*Final Distribution Date*" means the earlier to occur of (i) the date on which the Liquidating Trust terminates or (ii) thirty days after the date on which the Liquidating Trustee files notice with the Bankruptcy Court that the Liquidating Trustee has determined, in his reasonable discretion and in accordance with the terms of this Plan and the Liquidating Trust Agreement, that the Liquidating Trust has been fully administered.

46.     "*Final Order*" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtor's Chapter 11 Case (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

47.     "*General Bar Date*" means February 5, 2018, at 5:00pm (prevailing Central time) as established in the Notice of Chapter 11 Bankruptcy Case [ECF No. 40].

48.     "*General Unsecured Claims*" means all unsecured Claims asserted against the Debtor, including the deficiency balance of any Maritime Lien Secured Claims after payment of a portion of such claim from the proceeds of the sales of the Barges, but excluding Personal Injury Claims, Affiliate Claims, and the USSIC Claim.

49.     "*Initial Distribution Date*" means the date that is five business days after the Claims Objection Bar Date.

50.     "*Impaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

51.     "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

52.     "*Insider Released Parties*" means each of the following: (a) Offshore Express, LLC; (b) Fairways Exploration & Production, LLC; (c) Fairways Energy Resources, LLC; (d) Offshore Exploration and Production, LLC; (e) Offshore Domestic Group, LLC; (f) Fairways Offshore Exploration, Inc.; (g) Avid Ltd.; (h) Pisco Porton LLC; (i) William Kallop; (j) Brent Kallop; (k) members of the Kallop family; (l) Houma Land Holdings LLC; (m) Offshore Seismic Surveys, LLC; (n) AVID Palm Beach, LLC; (o) Kallop Enterprises, LLC; (p) OSF's Affiliates; (q) with respect to each of the foregoing in clauses (a) through (n), each of their respective current and former predecessors, successors, Affiliates, and professionals and advisors, including

6

Hunton Andrews Kurth LLP and The Claro Group, LLC.  Notwithstanding the foregoing, the Insider Released Parties shall not include Steve Williams or any Entity owned or controlled (directly or indirectly) by him.

53.     "*Insurance Policies*" means any insurance policies issued to or for the benefit of the Debtor or any of its predecessors-in-interest and any agreements, documents or instruments related thereto as well as any P&I Policies.

54.     "*JAB Receivable*" means any amounts to which OSF is entitled based on any claims that OSF has made against JAB Energy Solutions II, LLC in Cause No. 2016-48155 pending in the District Court for the 151st Judicial District of Harris County, Texas.

55.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

56.     "*Linder Oil Judgment*" means the final judgment entered on September 7, 2017 by the United States District Court for the Eastern District of Louisiana in civil action No. 16-15682 against Linder Oil Company, Linder Energy Company, and Louisiana General Oil Company in the principal sum of $2,499,577.35, plus interest in the amount of $1,806,223.80, plus interest for the period May 31, 2017 to August 31, 2017 of $74,987.32, plus attorneys' fees and costs in the amount of $14,163.68 for a total amount of $4,394,952.15, as amended.

57.     "*Liquidating Trust*" means that certain trust that will come into existence on or before the Effective Date into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

58.     "*Liquidating Trust Agreement*" means the agreement governing the Liquidating Trust dated on or before the Effective Date, substantially in the form attached hereto as **Exhibit A**.

59.     "*Liquidating Trust Assets*" means all Property of the Debtor except the assets transferred to holders of Allowed Class C-2 Claims and Allowed Class C-4 Claims.

60.     "*Liquidating Trust Beneficial Interests*" means the beneficial interests in the Liquidating Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Liquidating Trust Beneficial Interests under the Plan.

61.     "*Liquidating Trustee*" means the trustee of the Liquidating Trust.

62.     "*Maritime Lien Secured Claims*" means any Claim secured by a Lien on the Barges, other than the Personal Injury Claims.

63.     "*Member Interest*" means any member interest in the Debtor that existed immediately prior to the Petition Date, including all common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (whether or not arising under or in connection with any employment

4853-2630-0525 v4
2942535-000001

agreement), including any claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**64.** "*Montco Receivable*" means any amounts to which OSF is entitled based on any claims that OSF has made in *In re Montco Offshore, Inc. & Montco Oilfield Contractors, LLC*, Case No. 17-bk-31646 (S.D. Tex.), currently pending the Bankruptcy Court, and/or any Cause of Action that OSF may have against Montco Oilfield Contractors, LLC or any of its Affiliates, subsidiaries, or interrelated companies.

**65.** "*OSF*" means Offshore Specialty Fabricators, LLC, a debtor-in-possession in Case No. 17-35623 currently pending in the Bankruptcy Court.

**66.** "*OSF Causes of Action*" means Causes of Action belonging to OSF or its Estate against any and all third parties.

**67.** "*Other Secured Claims*" means Claims against OSF that are (i) secured by a Lien on property in which the OSF Estate has an interest other than the Barges, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (ii) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the OSF Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**68.** "*P&I Club*" means Steamship Mutual Underwriting Association Ltd. and/or its related companies, as applicable.

**69.** "*The P&I Policies*" means the protection and indemnity agreement between OSF and the P&I Club as well as any other protection and indemnity agreements or Insurance Policies that protect or insure the Debtor against Personal Injury Claims.

**70.** "*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in section 101(15) of the Bankruptcy Code.

**71.** "*Personal Injury Claim*" means a Claim based upon injuries purportedly suffered while employed by OSF or employed on the Barges, or either of them, including any claim for maintenance and cure under maritime law.

**72.** "*Personal Injury Lien Claim*" means a Claim secured by the Barges, or either of them, held by a holder of a Personal Injury Claim.

**73.** "*Personal Injury Reserve*" means the reserve to be established by the Liquidating Trustee for payment of Personal Injury Claims, in accordance with Article IV of this Plan.

**74.** "*Petition Date*" means October 1, 2017, the date on which the Debtor filed the Chapter 11 Case.

4853-2630-0525 v4
2942535-000001

75.     "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which shall be in form and substance acceptable to the Debtor and the Creditors' Committee.

76.     "*Plan Supplement*" means, collectively, (i) the exhibits to any *Notice of Supplement to the Debtor's Plan of Reorganization*, including, among other documents relevant to the implementation of the Plan, and the Liquidating Trust Agreement, and (ii) any additional supplement(s) to the Plan which additional supplement(s) shall in each case be in form and substance acceptable to the Debtor, the Creditors' Committee and the other parties to such documents (to the extent applicable with respect to each document).

77.     "*Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

78.     "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan.

79.     "*Procedures Order*" means that certain order entered by the Bankruptcy Court on November 9, 2017 [ECF No. 101].

80.     "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

81.     "*Professional Fee Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

82.     "*Professional Fee Reserve*" means a reserve funded on the Effective Date from the Liquidating Trust's Available Cash, as of the Effective Date, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation for the Debtor through the Effective Date provided by each Professional before the Effective Date.  The Professional Fee Reserve shall not be encumbered.

83.     "*Releasees*" means the Creditors' Committee, and the Professionals of the Creditors' Committee in this Chapter 11 Case; *provided*, *however*, that each such Person or Entity shall only be released as specifically set forth in Article VIII of the Plan.

84.     "*Representatives*" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other

representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

**85.** "*Schedule*" means the schedule of assets and liabilities, schedule of executory contracts and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code.

**86.** "*Subordinated Claims*" means Unsecured Claims that are subordinated in payment to other Unsecured Claims by either contract or by an order of the Court.

**87.** "*Taxing Authorities*" means any state or local governmental entities who have Claims for unpaid taxes against OSF.

**88.** "*Trust Oversight Committee*" means the three-member board established to oversee, review and guide the activities and performance of the Liquidating Trustee.

**89.** "*U.S. Trustee*" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Southern District of Texas.

**90.** "*Unsecured Claims*" means Claims against OSF, whose repayment is not supported by any property of the Estate under section 541 of the Bankruptcy Code.

**91.** "*Unimpaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, not Impaired.

**92.** "*USSIC Claim*" means all Claims of U.S. Specialty Insurance Company, its affiliates, successors and assigns, against OSF, including Administrative Claims, if any, and Claim No. 118 filed by U.S. Specialty Insurance Company in the Chapter 11 Case.

**B.**    *Rules of Interpretation.*

**1.** For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

4853-2630-0525 v4
2942535-000001

**2.**      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

**3.**      All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**C.**      *Exhibits and Schedules.*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein.   All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan.   Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or is available pursuant to a written request made directly to counsel for the Committee, Daniel J. Ferretti at dferretti@bakerdonelson.com and Jan Hayden at jhayden@bakerdonelson.com.

### ARTICLE II
### ADMINISTRATIVE AND PRIORITY CLAIMS

**A.**      *Administrative Claims (Unclassified Class A-1).*

The Liquidating Trustee shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim, in Cash, (a) on the later of:  (i) five (5) Business Days after the Effective Date (or, if not then due, within five (5) Business Days after the date when such Allowed Administrative Claim is due in the ordinary course of business); (ii) if such Claim is Disputed and is Allowed after the Effective Date, on the date that is five (5) Business Days after such Claim is Allowed by a Final Order; and (iii) at such later date and upon such terms as may be agreed upon by a holder of an Allowed Administrative Claim and the Liquidating Trustee, or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Claims do not include Administrative Claims filed after the Administrative Claims Bar Date.

**B.**      *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve.*

All Professionals employed by the Debtor or the Creditors' Committee in the Chapter 11 Case shall (i) provide to the Debtor and the Creditors' Committee, before the Effective Date, an estimate of their Accrued Professional Compensation through the Effective Date, and (ii) file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in the Chapter 11 Case through the Effective Date by no later than the Professional Fee Claim Bar Date.

On the Effective Date, the Liquidating Trustee shall establish and fund the Professional Fee Reserve in accordance with the estimates provided by the Professionals in accordance with the preceding sentence. In the event of excess amounts remaining in the Professional Fee

Reserve after all Allowed Claims of Professionals have been paid in full, such excess amounts shall be transferred to the Liquidating Trustee and become Liquidating Trust Assets.

**C.**     *Priority Claims (Unclassified Class A-2).*

The Liquidating Trustee shall pay each holder of an Allowed Priority Claim the full unpaid amount of such Allowed Priority Claim in Cash, on the later of: (i) five (5) Business Days after the Effective Date; (ii) five (5) Business Days after the date such Priority Claim becomes Allowed; and (iii) the date such Allowed Priority Claim is payable under applicable non-bankruptcy law.

**D.**     *General.*

Allowed Administrative Claims (Class A-1) and Allowed Priority Claims (Class A-2) shall be paid in full.  Allowed Claims for Accrued Professional Compensation shall be paid in full, immediately upon allowance, from the Professional Fee Reserve to the extent of such reserve and, if insufficient funds remain in the reserve, by the Liquidating Trustee from Liquidating Trust Assets.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS**

**A.**     *Summary.*

**1.**  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Proponents have not classified Administrative Claims or Priority Claims, as described in Article II.

**2.**  The following table classifies Claims against and Member Interests in the Debtor, for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Member Interest to be classified in a particular Class only to the extent that the Claim or Member Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Member Interest or any portion thereof qualifies within the description of such different Class.  A Claim or Member Interest is in a particular Class only to the extent that any such Claim or Member Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

**B.**     *Classification of Claims and Member Interests for the Debtor.*

**1.**  Unclassified Claims

A-1: Administrative Claims

A-2: Priority Claims

**2.**  Secured Claims

B-1 Secured Taxing Authorities

12

B-2 Other Secured Claims

3.   Unsecured Claims

C-1 General Unsecured Claims

C-2 Affiliate Claims

C-3 Unsecured Personal Injury Claims

C-4 USSIC Claim

4.   Member Interests

D-1 Member Interests

**C.**   *Treatment of Claims and Member Interests for the Debtor.*

1.   Secured Claims of Taxing Authorities (Class B-1)

(a)   *Classification*:   Class B-1 consists of the Secured Claims of Taxing Authorities.

(b)   *Allowance*:   The Committee or the Liquidating Trustee shall determine the Allowed Class B-1 Claims by agreement or by an order of the Bankruptcy Court.

(c)   *Treatment*:   Within five business days of the Effective Date, except to the extent that a holder of an Allowed Class B-1 Claim agrees to less favorable treatment, and except as otherwise set forth in Article V hereof, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class B-1 Claim, the Liquidating Trustee shall pay each holder of an Allowed Class B-1 Secured Claim the full amount of its Allowed Class B-1 Secured Claim from the Liquidating Trust Assets.

(d)   *Voting*:   Class B-1 is Unimpaired and, therefore, each holder of an Allowed Class B-1 Secured Claim will not be entitled to vote to accept or reject the Plan.

2.   Other Secured Claims (Class B-2)

(a)   *Classification*:   Class B-2 consists of all Other Secured Claims.

(b)   *Allowance*:   The Committee or the Liquidating Trustee shall determine the Allowed Class B-2 Claims by agreement or by an order of the Bankruptcy Court.

(c)   *Treatment*:   Except to the extent that a holder of an Allowed Class B-2 Claim agrees to a different treatment, holders of Allowed Class B-2 Claims, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class B-2 Claim, each holder of an Allowed Class B-2 Claim shall receive payment of its Allowed Class B-2 Secured Claim within five (5) business days of the Effective Date.

4853-2630-0525 v4
2942535-000001

(d)     *Voting*:   Class B-2 is Unimpaired and, therefore, each holder of an Allowed Class B-6 Claim will not be entitled to vote to accept or reject the Plan.

**3.**     General Unsecured Claims (Class C-1)

(a)     *Classification*:   Class C-1 consists of all General Unsecured Claims.   To the extent an objection is pending against a holder of a Class C-1 Claim on the Effective Date, no Distributions shall be made until the entire Claim has been Allowed.

(b)     *Allowance*:   The Committee or the Liquidating Trustee shall determine Allowed Class C-1 Claims by agreement, by an order of the Bankruptcy Court, or as follows:

(i)     If the Debtor listed a Class C-1 Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim, the Claim will be Allowed in the amount indicated on the Schedule.

(ii)     If the Debtor listed a Class C-1 Claim on its Schedule and the holder of the Claim files a Proof of Claim in an amount less than the amount of the Claim on the Schedule, the Claim will be Allowed in the amount indicated on the Proof of Claim.

(iii)     If the Debtor listed a Class C-1 Claim on its Schedule in an undisputed capacity and the holder of the Claim files a Proof of Claim in an amount higher than the amount of the Claim on the Schedule, the Proponent or the Liquidating Trustee shall file an objection to the allowance of such Claim.   The Claim will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating Trustee has administered claims objections as provided in Article V below.

(iv)     If the Debtor did not list a Class C-1 Claim on its Schedule or listed a Class C-1 Claim as disputed, unliquidated, or contingent, and the holder of the Claim files a Proof of Claim, the Proponent or the Liquidating Trustee shall file an objection to the allowance of such Claim.   The Claim will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating Trustee has administered claims objections as provided in Article V below.

(c)     *Treatment*:   Except to the extent that a holder of an Allowed Class C-1 Claim agrees to a different treatment, each holder of an Allowed Class C-1 Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class C-1 Claim, a Pro Rata share of the Liquidating Trust Beneficial Interests and shall be entitled to receive Distributions from the Liquidating Trust in accordance with Articles IV and V below.

(d)     *Voting*:   Class C-1 is Impaired and, therefore, each holder of an Allowed Class C-1 Claim is entitled to vote to accept or reject the Plan.

**4.**     Affiliate Claims (Class C-2)

(a)     *Classification*:   Class C-2 consists of all Affiliate Claims against OSF.

14

(b)    *Allowance*:  For purposes of voting and distribution, the Affiliate Claims shall be Allowed as filed in the Chapter 11 Case.

(c)    *Treatment*:  The holders of Allowed Affiliate Claims shall nominate an administrative agent to administer the assets received on account of the Allowed Affiliate Claims, and provide notice of the nomination of the administrative agent to the Debtor, the Liquidating Trustee, and counsel for the Creditors' Committee.  The nominated administrative agent for the Allowed Class C-2 Claims shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class C-2 Claim, the following:

(i)    the aggregate amount of $350,000 in Cash, payable within five business days after the Effective Date by the Debtor from the Class C-2 Reserve;

(ii)    the JAB Receivable, pursuant to an assignment substantially in the form attached hereto as **Exhibit B-1**;

(iii)    a 50% interest in the Montco Receivable pursuant to an assignment substantially in the form attached hereto as **Exhibit B-2**; and

(iv)    all of OSF's right, title and interest in any improvements and fixtures affixed to the buildings located at the North Yard, Houma, Louisiana pursuant to an assignment in the form attached hereto as **Exhibit B-3**.  For avoidance of doubt, "improvements" shall not include any personal property assets owned by OSF.

The foregoing assets will be paid or transferred by the Debtor to the nominated administrative agent for the Allowed Class C-2 Claims within five business days after the Effective Date.  In addition to the foregoing, on the Effective Date, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") and the Insider Released Parties mutually release all Claims against one another, as specifically set forth in Article VIII of the Plan.  Upon the Effective Date, the Creditors' Committee's objections [Docket Nos. 660-664] to the Affiliate Claims will be deemed withdrawn.

(d)    *Voting*:  Class C-2 is Impaired and, therefore, each holder of an Allowed Class C-2 Claim is entitled to vote to accept or reject the Plan.

**5.**    Unsecured Personal Injury Claims (Class C-3)

(a)    *Classification*:  Class C-3 consists of all Personal Injury Claims that are not Personal Injury Lien Claims and that have not been previously settled with the Debtor, with such settlement being approved by the Bankruptcy Court and fully implemented by the parties prior to the Effective Date.

(b)    *Allowance*:  Either the Proponent or the Liquidating Trustee shall file objections to all Class C-3 Claims such that these claims are Disputed.  The Claims will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating

Trustee has litigated or settled such Claims as provided in Article IV below.

(c)     *Treatment*:  Except to the extent that a holder of an Allowed Class C-3 Claim agrees to a different treatment, each holder of a Class C-3 Claim will be allowed to pursue the following as he sees fit: (i) a direct action against the applicable insurer; and/or (ii) an action in which the holder of a Class C-3 Claim asserts claims against the Debtor solely for the purpose of liquidating the amount of the Claim against the Debtor and in which recovery is limited as provided in Article IV.B.7(b) below. In either case, each holder of a Class C-3 Claim shall be entitled to receive payment of his Allowed Personal Injury Claim from the proceeds of the applicable P&I Policy in accordance with the terms of such P&I Policy.  To the extent that it is determined that the Debtor is liable to any holder of such a claim, each holder of Allowed Class C-3 Claims shall receive a Pro Rata share of the Personal Injury Reserve, solely to the extent that such claim is not paid out of insurance proceeds, and shall be entitled to receive Distributions from the Personal Injury Reserve in accordance with Articles IV and V below.

(d)     *Estimation for Purposes of Personal Injury Reserve*:  Personal Injury Claims shall be Estimated for purposes of the Personal Injury Reserve in the amounts provided in Article IV.A.3. below, which is the applicable per-claim deductible under the applicable P&I Policy.

(e)     *Voting*:  Class C-3 is Impaired and, therefore, each holder of an Allowed Class C-3 Claim is entitled to vote to accept or reject the Plan.  For purposes of voting, Class C-3 Claims shall be counted

**6.**     USSIC Claim (Class C-4)

(a)     *Classification*:  Class C-4 consists of the USSIC Claim.

(b)     *Allowance*:  For purposes of voting and distribution, the USSIC Claim shall be Allowed as filed in the Chapter 11 Case.

(c)     *Treatment*:  The holder of the Allowed Class C-4 Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Class C-4 Claim, the aggregate amount of $400,000.00, payable no later than five business days after the Effective Date by the Debtor from the Class C-4 Reserve.  USSIC shall apply these funds first to pay the outstanding bond premiums, if any, for the bonds giving rise to the USSIC Claim.  Upon the Effective Date, the Creditors' Committee's objection [Docket No. 529] to the USSIC Claim will be deemed withdrawn.

(d)     *Voting*:  Class C-4 is Impaired and, therefore, the holder of the Allowed Class C-4 Claim is entitled to vote to accept or reject the Plan.

**7.**     Member Interests in OSF (Class D-1)

(a)     *Classification:* Class D-1 consists of Member Interests in OSF.  All of the Member Interests of OSF are believed to be held by Offshore Domestic Group, LLC.

16

(b)     *Treatment:*  All existing Member Interests in OSF shall be cancelled on the Effective Date.  Each holder of Member Interests in OSF shall neither receive nor retain any property or interest in property on account of such Interest and such holder shall have no Claim against the Debtor, the Liquidating Trust or otherwise on account of such cancelled Member Interest.

(c)     *Voting:* Class D-1 is deemed to have rejected the Plan unless the holder of such interests votes in the affirmative to accept the treatment under the Plan.

**D.**     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Proponent's or Liquidating Trustee's rights with respect to any Unimpaired Claim, including, without limitation, any legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.**     *Nonconsensual Confirmation.*

The Proponent reserves the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  To the extent that any Class votes to reject the Plan, the Proponent further reserves the right to modify the Plan in accordance with Article X herein.

# ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.**     *Preservation of Causes of Action; Transfer of Assets; Establishment of Personal Injury Reserve*

**1.**     *Preservation of Causes of Action*.  Unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, settled, assigned, and/or otherwise conveyed in the Plan or by Court order (such as Causes of Action against holders of Allowed Class C-2 Claims as provided above), OSF reserves any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed.  Such OSF Causes of Action include, without limitation (a) all Avoidance Actions, including insider transfers described on Exhibit D of the Disclosure Statement, and other potential Avoidance Actions against non-insiders described on Exhibit E of the Disclosure Statement, (b) the Montco Receivable, (c) the JAB Receivable, (d) the Linder Judgment, (e) any and all Claims or Causes of Action that the Debtor may have or have a right to assert against Orinoco for any alleged breach of the Plan Sponsor Commitment, (f) any and all claims that OSF may have or have a right to assert against Davie Shoring, Inc. relating to its default of its payment obligations as described in Section V.B.7. of the Disclosure Statement, (g) any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed, and related to the Personal Injury Claims or the P&I Policies, specifically including reimbursement claims against any insurers, and (h)  any Causes of Action, in addition to Avoidance Actions, OSF may assert against current or former Insiders of OSF (other than the Insider Released Parties) related to misconduct of current or former officers, directors, members, or managers of OSF, including Steve Williams and any Entity owned or controlled (directly or indirectly) by him.

17

**2.** *Transfer of Assets on Effective Date.* On the Effective Date, the Debtor shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trustee, to hold in trust for the benefit of the holders of the Liquidating Trust Beneficial Interests pursuant to the terms of this Plan and the Liquidating Trust Agreement. Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

**3.** *Establishment of Personal Injury Reserve.* Within five (5) business days after the Effective Date, the Liquidating Trustee will establish the Personal Injury Reserve in the total amount of $425,000.00, comprising the following amounts attributable to each filed Personal Injury Claim:

      (a)    Ronald Havard: $100,000.00.

      (b)    Jamone Jones: $25,000.00.

      (c)    Allen Smith: $25,000.00.

      (d)    John Spradley: $25,000.00.

      (e)    Christopher Garner: $25,000.00.

      (f)    Ronnie LeBouef: $25,000.00.

      (g)    General/Contingency Reserve: $200,000.00.

The Liquidating Trustee shall hold the Personal Injury Reserve for the benefit of the holders of Class C-3 Claims. Upon satisfaction of all Class C-3 Claims, the Liquidating Trustee shall distribute the balance of the Personal Injury Reserve, if any, to the Holders of the Liquidating Trust Beneficial Interests, as provided in this Plan for Liquidating Trust Assets that are not part of the Personal Injury Reserve.

**B.** *Establishment of Liquidating Trust and Authority, Rights and Duties of Liquidating Trustee.*

**1.** *Formation.* On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust. The Liquidating Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and all relevant parties shall treat the Liquidating Trust as a liquidating trust, subject to definitive guidance to the contrary from the U.S. Internal Revenue Service.

**2.** *Purpose of Liquidating Trust.* The Liquidating Trust shall be established for the general purposes of winding up the Debtor's business, pursuing OSF Causes of Action transferred to the Liquidating Trust, prosecuting and resolving objections to Disputed Claims against the Debtor that are payable from Liquidating Trust Assets, and liquidating and distributing the Liquidating Trust Assets, with no objective to continue or engage in the pursuit

18

of a trade or business.

**3.** *Causes of Action to be Transferred to Liquidating Trust*. All Causes of Action (except those Causes of Action transferred to or for the benefit of holders of Allowed Class C-2 Claims) shall be Liquidating Trust Assets transferred to the Liquidating Trustee. The Liquidating Trustee, or its successors and assigns, shall be authorized and empowered as a representative of OSF and the Estate to institute, prosecute, settle, compromise, abandon or release all Causes of Action of the Debtor and the Estate transferred to the Liquidating Trust. Additionally, on the Effective Date, the Liquidating Trustee shall assume the prosecution of any objection, motion, adversary proceeding, or other proceeding in the Bankruptcy Court currently being prosecuted by the Committee (other than those proceedings retained under Article IV.G. below) and shall be substituted for the Committee as the applicable party in interest, without the need to file any motion to substitute or other similar document.

**4.** *Selection of Liquidating Trustee*.  On or before the Effective Date, the Creditors' Committee shall select the Liquidating Trustee.

**5.** *Authority of Liquidating Trustee*.  Subject only to the limitations contained in this Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and empowered to pursue and defend any Causes of Action, including without limitation Causes of Action related to the Personal Injury Claims and the P&I Policies, as a representative of the Estate and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) make Distributions to holders of Allowed Claims against OSF in accordance with this Plan; (iii) object to Disputed Claims filed against OSF and prosecute, settle or otherwise resolve such objections; (iv) object to, or defend against, Disputed Personal Injury Claims filed against OSF, whether in the Bankruptcy Court or in another court of competent jurisdiction, and prosecute, settle or otherwise resolve such objections or other actions; (v) establish and administer any reserves for Disputed Claims or Personal Injury Claims that may be required; (vi) perform administrative services related to implementation of this Plan or the Liquidating Trust Agreement; (vii) file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust; and (viii) perform such other duties as are provided in the Plan and the Liquidating Trust Agreement.

**6.** *Oversight of Liquidating Trust*.  The Trust Oversight Committee shall oversee the administration of the Liquidating Trust in accordance with the Liquidating Trust Agreement and consistent with the Plan.

**7.** *Claims Entitled to Distribution from the Liquidating Trust*.

(a) *Claims Generally*.  Except to the extent another provision of this Plan controls, the Liquidating Trustee, with oversight from the Trust Oversight Committee, shall be responsible for paying the following Claims (in the order of priority shown except as provided in paragraphs (b) and (c) below), from the Liquidating Trust Assets (except to the extent already satisfied): (i) Allowed Administrative Claims and Professional Compensation Claims, in the order of priority provided in the Bankruptcy Code, (ii) Allowed Priority Claims, (iii) Secured Claims of Taxing Authorities, (iv) Allowed Other Secured Claims, (v) Allowed General

19

Unsecured Claims, (vi) Allowed Personal Injury Claims according to subparagraph (b) below, and (vii) Subordinated Claims.

(b)     *Personal Injury Claims*.  The Liquidating Trustee, with oversight from the Trust Oversight Committee, shall be responsible for paying Personal Injury Claims from the Personal Injury Reserve, either (a) upon agreement among the Liquidating Trustee, the holder of an applicable Claim, and the applicable insurer (provided that any payment to be made from the Personal Injury Reserve does not exceed the applicable deductible absent a commitment by the applicable insurer to reimburse the Liquidating Trust), or (b) upon satisfaction of the following conditions: (i) the holder of the applicable Personal Injury Claim has obtained a final judgment liquidating the amount of his Claim; (ii) such holder has exhausted all remedies against the applicable insurer, and the insurer has either (1) paid the amount of such claim, less any applicable deductible, or (2) refused to pay such claim, and the holder has no further recourse against the insurer.  In the case of Paragraph IV.B.7(b)(ii)(1), the amount of the Distribution to such holder shall be the amount of the deductible, and in the case of Paragraph IV.B.7(b)(ii)(2), the amount of the Distribution to such holder shall be the amount of such holder's Pro Rata share of the Personal Injury Reserve, not to exceed such holder's designated amount of the Personal Injury Reserve as provided in Paragraph IV.A.1(c) above.

(c)     Notwithstanding the foregoing, all expenses of the Liquidating Trust shall be taxed against the gross proceeds of the Liquidating Trust and shall be satisfied prior to any Distributions on account of Claims.

**8.**     *Procedure for Distributions from the Liquidating Trust*.  The Liquidating Trustee shall distribute Available Cash in accordance with the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Liquidating Trust Assets in the Liquidating Trustee's possession (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during the administration of the Liquidating Trust, (iii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement (including without limitation any applicable reserves).

**9.**     *Compensation of the Liquidating Trustee*.  The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

**10.**     *Retention of Professionals*.  The Liquidating Trustee, with the consent of the Trust Oversight Committee, may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval.

**11.**     *Dissolution of Liquidating Trust*.  Once all Liquidating Trust Assets have been liquidated and all Distributions required to be made by the Liquidating Trustee under the Plan have been made, the Liquidating Trust shall be dissolved and the Liquidating Trustee shall be discharged.  Notwithstanding the foregoing, in no event shall the term of the Liquidating Trust

4853-2630-0525 v4
2942535-000001

exceed five (5) years absent Bankruptcy Court approval.

**12.** *Dissolution of OSF*.  The Liquidating Trustee shall have the right, in consultation with the Trust Oversight Committee, to dissolve OSF in accordance with applicable state law.

**13.** *Indemnification of Liquidating Trustee*.  The Liquidating Trustee and the Liquidating Trustee's agents and professionals shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary due, or *ultra vires* acts. Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

**C.**   *Selection of the Trust Oversight Committee.*

The Trust Oversight Committee shall have three members selected prior to the Effective Date as follows:  Each ballot shall include a statement soliciting membership in the Trust Oversight Committee and a place for creditors to mark whether or not they are interested in being a member of the Trust Oversight Committee.  After review of the creditors who indicated an interest in being a member of the Trust Oversight Committee, the existing members of the Creditors' Committee will select the members of the Trust Oversight Committee, subject to the review and approval of the Bankruptcy Court as being fair and equitable.  After the Effective Date, if a member of the Trust Oversight Committee has its claim paid in full or sells its entire claim, that member will resign from the Trust Oversight Committee and will be replaced by vote of the remaining members, provided, however, that the new member must be from the same Class as the resigning member, or a representative thereof, if creditors with outstanding claims remain in such Class.  A member of the Trust Oversight Committee shall not participate in decisions in which such member has a direct financial interest distinct from any other creditor of the same Class.  By way of example, if a settlement agreement between the Liquidating Trustee and a member with respect to the Allowance of that member's Claim requires the consent of the Trust Oversight Committee, that member shall not participate in the deliberation and decision of the Trust Oversight Committee with regard to such settlement.

**D.**   *Operations of Debtor Between Confirmation Date and Effective Date*

The Debtor shall continue to operate as debtor-in-possession during the period from the Confirmation Date through the Effective Date.

**E.**   *Establishment of the Administrative Claims Bar Date.*

**1.**   The Confirmation Order shall approve the Administrative Claims Bar Date.

**2.**   Except as otherwise provided in this Article, on or before the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a

request for payment of its Administrative Claim and serve a copy thereof so it is received substantially contemporaneous with the filing on counsel to the Liquidating Trustee and the Office of the United States Trustee for the Southern District of Texas.

      **3.**     The request for payment of an Administrative Claim will be timely filed only if it is ***actually received*** by the Bankruptcy Court, counsel to the Liquidating Trustee, and the Office of the United States Trustee for the Southern District of Texas by the Administrative Claims Bar Date.

      **4.**     Notwithstanding anything in this Article, Professionals shall not be required to file a request for fees and expenses arising under sections 328, 330, 331 or 503(b)(2)–(5) of the Bankruptcy Code, on or before the Administrative Claims Bar Date, as they will instead file final fee applications by the Professional Fee Claim Bar Date.

**F.**    *Term of Injunctions or Stays.*

      Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

**G.**    *Creditors' Committee.*

      Upon the Effective Date, the Creditors' Committee shall dissolve, and its members and Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Creditors' Committee shall be deemed to continue to exist and have authority to act in this Chapter 11 Case, and its Professionals shall be deemed retained, after such date solely with respect to: (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (ii) review and, if appropriate, objections to any request for compensation or expense reimbursement filed by a Professional; (iii) seek reimbursement of expenses sought by a member of the Creditors' Committee; and (iv) defend against appeals of the Confirmation Order, if any. The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses. Except for the foregoing proceedings for which the Creditors' Committee retains authority, on the Effective Date, the Liquidating Trustee shall assume the prosecution of any objection, motion, adversary proceeding, or other proceeding in the Bankruptcy Court currently being prosecuted by the Creditors' Committee and shall be substituted for the Creditors' Committee as the applicable party in interest, without the need to file any motion to substitute or other similar document.

**H.**    *Debtor's Professionals.*

      Upon the Effective Date, the Debtor's Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Debtor's Professionals shall be deemed retained after such date solely with respect to: (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; and (ii) defend against appeals of or motions for reconsideration (or similar) of the Confirmation Order, if any. The Liquidating Trustee shall pay the reasonable

fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

**I.**     *Creditors' Committee Professionals*

Upon the Effective Date, the Professionals retained by the Creditors' Committee shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Professionals retained by the Creditors' Committee shall be deemed retained after such date solely with respect to:  (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; and (ii) (iv) defend against appeals of or motions for reconsideration (or similar) of the Confirmation Order, if any. The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

**ARTICLE V**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**A.**     *Initial Distributions to Holders of Unsecured Claims*

The Liquidating Trustee shall distribute Available Cash to Holders of Class C-1 Claims in accordance with the terms, treatment and priority provided in this Plan and the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Liquidating Trust Assets in the Liquidating Trustee's possession (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during the administration of the Liquidating Trust, (iii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement (including without limitation any applicable reserves).

The Liquidating Trustee shall distribute amounts to Holders of Class C-3 Claims in accordance with the terms, treatment and priority provided in this Plan and the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Personal Injury Reserve, except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iii) to satisfy other liabilities incurred by the Liquidating Trustee in objecting to or defending against the Disputed Personal Injury Claims.

**B.**     *Disputed Reserve.*

Within five (5) business days after the Effective Date, the Liquidating Trustee shall establish and maintain a Disputed Reserve for Disputed Claims, in reasonable amounts as

23

determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and the provisions of this Plan.

**C.**     *Subsequent Distributions.*

Any Distribution that is not made on any date specified herein or in the Liquidating Trust Agreement because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be distributed as soon as practicable, and in accordance with the terms of this Plan and the Liquidating Trust Agreement, as applicable, after such Claim is Allowed by a Final Order of the Bankruptcy Court.  Subsequent Distributions to all Holders of Liquidating Trust Beneficial Interests shall be made in accordance with the terms of the Liquidating Trust Agreement.  On the Final Distribution Date, the Liquidating Trustee shall distribute the remaining assets of the Liquidating Trust to the persons entitled to such assets as provided in Article IV.B.7 above.

**D.**     *Delivery of Distributions.*

    **1.**     *General Provisions; Undeliverable Distributions.*

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (i) the address of each holder as set forth in the Schedule, unless superseded by the address set forth on proofs of Claim filed by such holder or (ii) the last known address of such holder if no proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any holder shall be made unless and until the then-current address of the holder has been determined, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth in Article V.D.2 below.   The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that such discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

    **2.**     *Unclaimed Property.*

Except with respect to property not distributed because it is being held in the Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that one-year period, the right of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require the Plan Agent to attempt to locate any holder of an Allowed Claim.

E.     *Manner of Cash Payments Under the Plan.*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee, as applicable.

F.     *Time Bar to Cash Payments by Check.*

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Article V.F shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

G.     *Compliance with Tax Requirements.*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.D.1 hereof.

H.     *No Payments of Fractional Dollars and Minimum Distributions.*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar. The Liquidating Trustee shall not be obligated to make any Distribution of less than $10.

I.     *Interest on Claims.*

Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim, or portion thereof, that is a Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on

account thereof. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

**J.**     *No Distribution in Excess of Allowed Amount of Claim.*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**K.**     *Setoff and Recoupment.*

The Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any Debtor or Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release on behalf of the Debtor, the Estate, the Liquidating Trust as a successor in interest of any right of setoff or recoupment that any of them may have against the holder of any Claim.

**L.**     *No Distribution Pending Allowance.*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

**M.**     *Resolution of Disputed Claims; Treatment of Subordinated Claims.*

After the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make and file objections to all Claims payable from the Liquidating Trust Assets, with the cost of pursuing the objections to such Claims shall be paid by out of the Liquidating Trust Assets.

Distributions to Holders of Claims in classes that are subject to contractual subordination provisions are subject to Distribution in accordance with such contractual subordination provisions.  Distributions shall be subject to and modified by any Final Order determining that a Claim is a Subordinated Claim or directing distributions other than as provided in the Plan.  The right of the Liquidating Trustee to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Distributions shall be made on account of a Subordinated Claim.

26

**N.**     *Objection Deadline.*

All objections to Disputed Claims shall be filed and served upon the holders of each such Claim not later than one hundred eighty (180) days after the Effective Date, unless otherwise extended by order by the Bankruptcy Court after notice and a hearing.

**O.**     *Estimation of Claims.*

At any time the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Creditors' Committee, or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**ARTICLE VI**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases other than those Executory Contracts and Unexpired Leases designated for assumption either in this Plan or in the Executory Contract and Unexpired Lease Assumption and Assignment Schedule, which schedule shall be filed with the Plan Supplement.   The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.**     *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Claims resulting from the rejection of Executory Contracts and Unexpired Leases pursuant to Article VI.A, or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this Article VI.B. for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust, its successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII herein.  Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, all such Claims that are timely filed as provided in the Plan shall be treated as Class C-1 Claims.

27

**C.**    *Cure Claims.*

The Debtor shall set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule the monetary cure amount the Debtor believes to be owed with respect to each Executory Contract and Unexpired Lease listed thereon.  Unless the counterparty to an Executory Contract or Unexpired Lease agrees to different treatment, the cure amount set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule with respect to such Executory Contract or Unexpired Lease, or any undisputed portion thereof, or a different amount of the cure Claim that is Allowed by a Final Order shall be paid in full, in Cash, by the trustee of the applicable trust to which such contract or lease has been assigned, in each case, as applicable, on the later of: (i) fifteen (15) Business Days after the Effective Date and (ii) fifteen (15) Business Days after the date such Claim is Allowed.

**D.**    *Insurance Policies.*

**1.**    Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, unless specifically rejected by order of the Bankruptcy Court, all Insurance Policies, including all P&I Policies, shall be assumed under the Plan as executory contracts.  Except as provided in Paragraph 2 below, nothing in the Plan or the Confirmation Order shall alter the rights and obligations of the Debtor or the insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions.

**2.**    The Insurance Policies, including all P&I Policies, as assumed under paragraph 1 above, shall be assigned to the Liquidating Trust, effective as of the Effective Date, and shall be Liquidating Trust Assets.

## ARTICLE VII
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

The following are conditions precedent to the occurrence of the Effective Date:

**1.**    The Confirmation Order has been entered and become a Final Order.

**2.**    The Liquidating Trust Agreement has been executed and become effective, and all conditions to closing set forth therein shall have been satisfied.

**3.**    Certain of the Insider Released Parties have entered into a decommissioning contract, in form and substance reasonably acceptable to USSIC, providing for the decommissioning of the wells that are the subject of the bonds giving rise to the USSIC Claim.

**4.**    The Debtor shall have established the Class C-2 Reserve and the Class C-4 Reserve.

**5.**    A resolution, in form and substance reasonably acceptable to the Insider Released Parties and the Proponent, of any material issues regarding the abandonment or removal of the accommodations module referenced in Section V.B.7. of the Disclosure Statement.

4853-2630-0525 v4
2942535-000001

**6.**     The Proponent may waive the occurrence of, or modify, any of the foregoing conditions precedent to the Effective Date.   Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.   Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE VIII**
**INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS**

**A.**     *Compromise and Settlement.*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Member Interests.   The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Member Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Member Interests.

**B.**     *Releases.*

**1.**     *Releases by the Debtor and the Estate.*   Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, the Debtor hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtor) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.1 shall not operate to waive or release the Releasees from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

**2.**     *Mutual Release related to Class C-2.*   Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") hereby provide a full release to the Insider Released Parties (and each such Insider Released Party so released shall be deemed released and discharged by the First Parties) from any and all Causes of Action and any

29

other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the Insider Released Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Insider Released Parties hereby provide a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the Insider Released Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

**3.** Mutual *Release related to Class C-4.* Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the First Parties hereby provide a full release to USSIC from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including

30

those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of Article VIII.B.2 shall not operate to waive or release USSIC from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, USSIC hereby provides a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the USSIC) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

4.      Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article VIII.B pursuant to Bankruptcy Rule 9019 and its finding that they are:  (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtor and all holders of Claims and Member Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

**C.**      *Exculpation.*

Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the Plan; provided, however, that the foregoing provisions of this Article VIII.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; *provided*, *further*, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; *provided*, *further*, that the foregoing provisions of this Article VIII.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

31

D.      *Injunction.*

1.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor or its successors and assigns and its assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, the Estate, the Creditors' Committee, the Liquidating Trust and Liquidating Trustee, their successors and assigns and their assets and properties, any other Claims or Member Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

3.      The rights afforded in the Plan and the treatment of all Claims and Member Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Member Interests of any nature whatsoever, against the Debtor or any of its assets or properties.  On the Effective Date, all such Claims against, and Member Interests in, the Debtor shall be satisfied and released in full.

4.      Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Member Interest satisfied and released hereby, from:

(a)      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, its successors and assigns, and its assets and properties;

(b)      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, its successors and assigns, and its assets and properties;

(c)      creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of the Debtor;

(d)      asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim; or

(e)      commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Member Interest or Cause of Action released or settled hereunder.

32

**E.**   *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate, shall be fully released and discharged, and all of the Debtor' rights, title and interests in such property shall be distributed or transferred in accordance with this Plan.

**F.**   *Carve-Out*

Nothing in this Article VIII or elsewhere in the Plan shall release any Causes of Action retained by the Debtor and transferred to the Liquidating Trust under Article IV hereof.

**ARTICLE IX**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and with respect to all matters related to the Chapter 11 Case, the Debtor, the Estate, all property of the Estate, the settlement with the Insider Released Parties in Class C-2, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

**1.**   allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Member Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, secured status or priority of Claims or Member Interests;

**2.**   grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

**3.**   resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

**4.**   ensure that Distributions to holders of Allowed Claims and Member Interests are accomplished pursuant to the provisions of the Plan;

**5.**   decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, provided, however, the right of the Liquidating Trustee to commence actions in all appropriate jurisdictions shall be fully reserved;

**6.**   enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

33

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce the various provisions of the Plan and the Liquidating Trust Agreement;

10.      enforce the Injunction set forth in Article VIII.D hereof;

11.      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article VIII herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

12.      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

13.      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

14.      enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**A.**      *Final Fee Applications.*

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

**B.**      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From and after the Effective Date, the Liquidating Trustee shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the OSF Estate under 28 U.S.C. § 1930 until entry of a Final Decree closing the case. In addition, the Liquidating Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case. The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative claim against the Debtor and its Estate.

34

**C.**   *Modification of the Plan.*

Subject to the limitations contained in the Plan:  (i) the Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Liquidating Trustee, with the prior written consent of the Trust Oversight Committee, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**D.**   *Revocation of Plan.*

The Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order**,** and to file subsequent chapter 11 plans.  If the Proponent revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Member Interests; (b) prejudice in any manner the rights of the Debtor, the Creditors' Committee, or any other Entity; or (c) constitute an admission of any sort by the Debtor, the Creditors' Committee, or any other Entity.  Notwithstanding the foregoing, the Procedures Order shall remain in full force and effect.

**E.**   *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**F.**   *Governing Law and Construction.*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.  Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the Confirmation Order.  All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

**G.**   *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Creditors' Committee, or any Entity with respect to the Plan shall be or shall be deemed to be an

admission or waiver of any rights of: (i) the Debtor, or the Creditors' Committee with respect to the holders of Claims or Member Interests or other parties in interest; or (ii) any holder of a Claim or Member Interest or other party-in-interest prior to the Effective Date.

**H.**     *Article 1146 Exemption.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**I.**     *Section 1125(e) Good Faith Compliance.*

The Debtor, the Creditors' Committee and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

**J.**     *Further Assurances.*

The Debtor, the Creditors' Committee, all holders of Claims and Member Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**K.**     *Service of Documents.*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor and the Creditors' Committee, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtor:

> David Weinhoffer
> Offshore Specialty Fabricators, LLC
> 20445 State Highway 249, Suite 280
> Houston, TX 77070

*with a copy to*:

> Diamond McCarthy LLP
> Two Houston Center
> 909 Fannin, 37th Floor
> Houston, Texas 77010
> Attn: Michael Fritz

36

To the Creditors' Committee

> Baker Donelson
> 1301 McKinney St., Suite 3700
> Houston, Texas 77010
> Attn: Daniel J. Ferretti

**L.**    *Filing of Additional Documents.*

On or before the Effective Date, the Proponent may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.**    *No Stay of Confirmation Order.*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

**N.**    *Bankruptcy Code Section 1141 Discharge.*

The Debtor shall not receive a discharge under chapter 11 of the Bankruptcy Code.

*[Remainder of page intentionally left blank.]*

4853-2630-0525 v4
2942535-000001

Dated: September 10, 2018
Houston, Texas

**Official Committee of Unsecured Creditor**
**Offshore Specialty Fabricators, LLC**

**By**:   **Retif Oil & Fuel, LLC**
**Its:**   **Chairman**

By:   _/s/ Kenneth J. Retif_
Its:   President

Prepared by:

_/s/ Daniel J. Ferretti_
Susan C. Mathews
Texas Bar No. 05060650
smathews@bakerdonelson.com
Daniel J. Ferretti
Texas Bar No. 24096066
dferretti@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, TX 77010
Telephone:  (713) 650-9700
Facsimile:  (713) 650-9701

-AND-

Jan M. Hayden
(Admitted Pro Hac Vice)
Louisiana Bar No. 6672
jhayden@bakerdonelson.com
Edward H. Arnold, III
Louisiana Bar No. 18767
Federal ID No. 17158
harnold@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-8645
Facsimile: (504) 585-6945

_Attorneys for Official Committee of Unsecured Creditors for Offshore Specialty Fabricators,_
_LLC_