

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/26/2018

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **OFFSHORE SPECIALTY** | § | **Case No. 17-35623** |
| **FABRICATORS, LLC** | § | |
| | § | |
| **Debtor** | § | |

**ORDER CONFIRMING THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC'S FIRST AMENDED**
**PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

This matter came before the Bankruptcy Court at a hearing on October 18, 2018 (the "Confirmation"), upon due and proper notice, to consider the confirmation of the Official Committee of Unsecured Creditors for Offshore Specialty Fabricators, LLC's (the "Committee") First Amended Plan of Liquidation under Chapter 11 of the Bankruptcy Code, filed as Docket No. 703 in the above-captioned case, as supplemented by the Amended Plan Supplement filed as Docket No. 741 (collectively, as amended, the "Plan"). The Plan, as modified as more particularly described herein, is attached hereto as **Exhibit A**, and the Amended Plan Supplement is attached hereto as **Exhibit B**.

The Court, having considered the exhibits, testimony, and arguments at the hearing on confirmation of the Plan, which hearing was held on October 18, 2018, the entire record of the Chapter 11 case of Offshore Specialty Fabricators, LLC (the "Debtor") and the docket maintained by the Clerk of this Court (collectively, the "Record"), and the objections filed by (i) Alliance Special Ventures Fund, LLC and Alliance Heavy Lift, LLC; (ii) Steamship Owners Mutual Protection and Indemnity Association, Inc. and Steamship Mutual Underwriting

Association Ltd.; and (iii) Ronald Havard, makes the following findings of fact and conclusions of law:

1.  **Findings and Conclusions.**  These findings of fact and conclusions of law are being entered under Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such. To the extent any of the following findings of fact or conclusions of law set forth herein constitutes an order of the Bankruptcy Court, it is adopted as such.  Capitalized terms not otherwise defined herein shall have the meaning assigned to such terms in the Plan.

2.  **Jurisdiction, Venue, and Core Proceeding.**  The Debtor commenced this case on October 1, 2017 (the "Petition Date") by filing a voluntary petition under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §101, *et seq*. ("Bankruptcy Code").  This matter arises under the Bankruptcy Code, and subject matter jurisdiction is vested in this Bankruptcy Court to enter a final order by virtue of 28 U.S.C. §1334(a) and (b), and 28 U.S.C. §§151, 157(a) and (b)(1) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue was proper as of the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtor is entitled to be a Debtor under chapter 11 of the Bankruptcy Code pursuant to Section 109(d) of the Bankruptcy Code.  The Committee is entitled to file the Plan under Section 1121 of the Bankruptcy Code.  This Bankruptcy Court has constitutional authority to enter this Confirmation Order as a Final Order.

3.      **Service of Solicitation Materials and Notice.** In accordance with this Court's Order Approving Disclosure Statement entered September 11, 2018 [**Doc. No. 706**] (the "Disclosure Statement Order") and Bankruptcy Rule 3017(d), all appropriate pleadings and the ballots were transmitted, mailed, or published, all as evidenced by the Certificate of Service filed with this Bankruptcy Court on September 18, 2018 [**Doc. No. 708**] and the Certificate of Mailing filed with this Bankruptcy Court on September 14, 2018 [**Doc. No. 707**].

4.      **Adequate Notice of Confirmation Hearing.**  In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007, 9014, and 9019, the Local Rules of this Bankruptcy Court, and the orders referenced in paragraph 3 above, adequate notice of the time for filing objections to the confirmation of the Plan and the transactions contemplated thereby and adequate notice of the Confirmation Hearing was provided to all holders of claims and interests and other parties-in-interest entitled to receive such notice under the Bankruptcy Code and Bankruptcy Rules.

5.      **Good Faith Solicitation.**    Based on the record, the Committee and its professionals (including, but not limited to, their attorneys and financial advisors) have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, this Bankruptcy Court's orders, and applicable non-bankruptcy law in connection with their respective activities related to (a) the solicitation of acceptances or rejections of the Plan; and (b) their participation in the other activities in Section 1125 of the Bankruptcy Code. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code Sections 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement Order, and all other provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations.

Additionally, all procedures used to distribute the solicitation materials to the holders of claims and interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of this Bankruptcy Court, and all other applicable rules and regulations. Therefore, the Committee is entitled to the full protections afforded by Section 1125(e) of the Bankruptcy Code.

6.      **Modifications.**   In accordance with Section 1127 of the Bankruptcy Code, the Committee proposed the below modifications to the Plan at the Confirmation Hearing to address objections filed to the confirmation of the Plan.   The below modifications to the Plan do not adversely change the treatment of any creditor or equity security interest, and all such are approved, and no additional disclosure to holders of claims or equity security interests is required by the Bankruptcy Code or Rules:

(a)      The definition of "Class C-2 Reserve" in Article I, Section A, Paragraph 20, was revised to correct a typographical error as follows:

> "*Class C-2 Reserve*" means a reserve of $350,000 Cash held in trust for the benefit of the holders of the Allowed Class C-2 Claims and established by the Debtor from Available Cash on the Confirmation Date, which shall be used to pay the Class C-2 Claim.

(b)      The definition of "Insider Released Parties" in Article I, Section A, Paragraph 52, was revised as follows:

> "*Insider Released Parties*" means each of the following: (a) Offshore Express, LLC; (b) Fairways Exploration & Production, LLC; (c) Fairways Energy Resources, LLC; (d) Offshore Exploration and Production, LLC; (e) Offshore Domestic Group, LLC; (f) Fairways Offshore Exploration, Inc.; (g) Avid Ltd.; (h) Pisco Porton LLC; (i) William Kallop and his spouse; (j) Brent Kallop and his spouse and children; (k) Brooks Moore Kallop and his spouse and children; (l) Houma Land Holdings LLC; (m) Offshore Seismic Surveys, LLC; (n) AVID Palm Beach, LLC; (o) Kallop Enterprises, LLC; (p) OSF's Affiliates; (q) with respect to each of the foregoing in clauses (a) through (n), each of their respective current and former predecessors, successors, Affiliates, and professionals and advisors, including Hunton Andrews Kurth LLP and The Claro Group, LLC.

4

Notwithstanding the foregoing, the Insider Released Parties shall not include Steve Williams or any Entity owned or controlled (directly or indirectly) by him.

(c)     Article IV, Section A, Paragraph 1 of the Plan was revised as follows:

*Preservation of Causes of Action.*  Unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, settled, assigned, and/or otherwise conveyed in the Plan or by Court order (such as Causes of Action against holders of Allowed Class C-2 Claims as provided above), OSF reserves any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed.  Such OSF Causes of Action include, without limitation (a) all Avoidance Actions, including insider transfers described on Exhibit D of the Disclosure Statement, and other potential Avoidance Actions against non-insiders described on Exhibit E of the Disclosure Statement, (b) the Montco Receivable, (c) the JAB Receivable, (d) the Linder Judgment, (e) any and all Claims or Causes of Action that the Debtor may have or have a right to assert against Orinoco for any alleged breach of the Plan Sponsor Commitment, (f) any and all claims that OSF may have or have a right to assert against Davie Shoring, Inc. relating to its default of its payment obligations as described in Section V.B.7. of the Disclosure Statement, (g) any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed, and related to the Personal Injury Claims or the P&I Policies, specifically including reimbursement claims against any insurers, and (h)  any Causes of Action, in addition to Avoidance Actions, OSF may assert against current or former Insiders of OSF (other than the Insider Released Parties) related to misconduct of current or former officers, directors, members, or managers of OSF, including Steve Williams and any Entity owned or controlled (directly or indirectly) by him.  The Proponent, however, has not investigated the Causes of Action and/or Avoidance Actions, if any, that may be asserted against Steve Williams and any Entity owned or controlled by him, and is relying on the representations of others that such Causes of Action/Avoidance Actions have merit.   Williams and his related Entities vehemently deny the allegations referenced in the Plan and the Disclosure Statement and will vigorously oppose any and all actions brought against them.  Nothing herein, and for the avoidance of doubt, shall prohibit any Entity from asserting any Causes of Action as a defense pursuant to applicable law, but such Entity will have no authority to assert any affirmative action which the Debtor has released.

(d)     Article VIII, Section B, Paragraph 1 was modified as follows:

<u>*Releases by the Debtor and the Estate.*</u>  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, the Debtor hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtor) from any and all Causes of Action and any other debts, obligations, rights, suits,

damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.1 shall not operate to waive or release the Releasees from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable nor does the release include a release for willful misconduct or gross negligence.

(e)       Article IV, Section B, Paragraph 7(b) of the Plan was revised as follows:

*Personal Injury Claims.*  The Liquidating Trustee, with oversight from the Trust Oversight Committee, shall be responsible for paying Personal Injury Claims from the Personal Injury Reserve, either (a) upon agreement among the Liquidating Trustee, the holder of an applicable Claim, and the applicable insurer (provided that, if any Claim is covered by insurance, any payment to be made from the Personal Injury Reserve does not exceed the applicable deductible absent a commitment by the applicable insurer to reimburse the Liquidating Trust), or (b) upon satisfaction of the following conditions: (i) the holder of the applicable Personal Injury Claim has obtained a final judgment liquidating the amount of his Claim; (ii) such holder has exhausted all remedies against the applicable insurer, and the insurer has either (1) paid the amount of such claim, less any applicable deductible, or (2) refused to pay such claim, and the holder has no further recourse against the insurer.  In the case of Paragraph IV.B.7(b)(ii)(1), the amount of the Distribution to such holder shall be the amount of the deductible, and in the case of Paragraph IV.B.7(b)(ii)(2), the amount of the Distribution to such holder shall be the amount of such holder's Pro Rata share of the Personal Injury Reserve, not to exceed such holder's designated amount of the Personal Injury Reserve as provided in Paragraph IV.A.3 above unless the Liquidating Trustee, with oversight from the Trust Oversight Committee, otherwise agrees.

(f)       Article VIII, Section B, Paragraph 2 was modified as follows:

<u>*Mutual Release related to Class C-2.*</u>  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") hereby provide a full release to the Insider Released Parties (and each

such Insider Released Party so released shall be deemed released and discharged by the First Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the Insider Released Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable. Nothing herein is intended to, nor does, it release any independent or direct claims of any creditor or third party.

(g)     Article VIII, Section C was revised as follows:

Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the Plan; provided, however, that the foregoing provisions of this Article VIII.C shall have no effect on the liability of any Entity or Releasee that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; provided, further, that the foregoing provisions of this Article VIII.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

(h)     Article VIII, Section D, Paragraph 1 was revised as follows:

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are enjoined from commencing or continuing in any manner against the Debtor or its successors and assigns and its assets and properties, as the case may be, any suit,

action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order until the completion of the administration of the Liquidating Trusts provided for herein.

(i)    Article VIII, Section D, Paragraph 2 was revised as follows:

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, the Estate, the Creditors' Committee, the Liquidating Trust and Liquidating Trustee, their successors and assigns and their assets and properties, any other Claims or Member Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date or commencing or continuing in any manner any action or other proceeding of any kind in respect of  any Cause of Action released or settled hereunder.

(j)    Article VIII, Section D, Paragraph 4 was revised as follows:

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are enjoined, on and after the Effective Date until the completion of the administration of the Liquidating Trusts provided for herein, on account of any Claim or Member Interest satisfied and released hereby, from:

(a)    commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, its successors and assigns, and its assets and properties;

(b)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, its successors and assigns, and its assets and properties;

(c)    creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of the Debtor; or

(d)    asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim.

(k)    The Plan Supplement was revised by the Amended Plan Supplement, which is attached hereto as **Exhibit B**.

7. **Voting**.   On October 17, 2018, the Committee filed the Amended Ballot Summary with the Court.  The Ballot Summary indicated that impaired Classes C-1, C-2, and C-3 voted to accept the Plan.  No creditor in impaired Class C-4 submitted a ballot to accept or reject the Plan; however, the only creditor classified in Class C-4, U.S. Specialty Insurance Company, filed a statement in support of the Plan and indicated at the Confirmation Hearing that it supported confirmation of the Plan, but reserved its rights with respect to the conditions precedent to the Plan's Effective Date.  *See* Doc. No. 729.

8. **Proper Classification (Sections 1122 and 1123(a)(1))**.   The classification of claims and interests under the Plan is proper under the Bankruptcy Code.  Each claim and interest placed in a particular Class pursuant to the Plan is substantially similar to the other claims or interests, as the case may be, in such class.  Valid business, legal, and factual reasons exist for the separate classification of claims and interests and there is no unfair discrimination or gerrymandering between or among the holders of claims and interests.  Accordingly, the classification of claims and interests under the Plan complies with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

9. **Unimpaired Classes (Section 1123(a)(2) and 1124)**.   Classes B-1 (Secured Taxing Authorities) and B-2 (Other Secured Claims) are designated as unimpaired under the Plan.  In addition, Classes A-1 (Administrative Claims) and A-2 (Priority Claims specified treatment of administrative expense claims and priority claims although these claims are not classified under the Plan.  Accordingly, the Plan satisfies the requirements of sections 1123(a)(2) and 1124 of the Bankruptcy Code.

10. **Impaired Classes (Section 1123(a)(3))**.  Classes C-1 (General Unsecured Claims), C-2 (Affiliate Claims), C-3 (Personal Injury Claims), and C-4 (USSIC Claim) are

impaired under the Plan.  The Plan specifies the treatment of all impaired classes.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

11.    **No Discrimination (Section 1123(a)(4)).** The Plan provides for the same treatment of each claim or interest in a particular Class, unless a holder of a claim or interest therein has agreed to a less favorable treatment.  Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

12.    **Implementation of the Plan and Approval of Liquidating Trust (Section 1123(a)(5)).** The Plan provides adequate means for the Plan's implementation.  Under the Plan, a Liquidating Trust will be established for the benefit of the holders of Class C-1 Claims.  The Plan also provides for adequate reserves for the holders of Class C-3 Claims to be administered by the Liquidating Trustee of the Liquidating Trust.  All assets of the Debtor, other than those assets transferred pursuant to the settlement with the Affiliates and U.S. Specialty Insurance Company, will be transferred to the Liquidating Trust.  The Liquidating Trust will be governed under the Liquidating Trust Agreement, which was attached to the Plan.

13.    **Debtor's Charter Provisions (Section 1123(a)(6)).** The Plan, as modified by this Confirmation Order, satisfies all requirements of section 1123(a)(6) of the Bankruptcy Code. The Debtor is liquidating and its interests will be cancelled.

14.    **Selection of Liquidating Trustee and Trust Oversight Committee Members (Section 1123(a)(7)).** David Weinhoffer is approved as the Liquidating Trustee of the Liquidating Trust.  Mr. Weinhoffer and his staff shall be compensated on an hourly basis as follows:

David Weinhoffer - $ 300/hr.

CPA/Sr. Analyst - $175/hr.

Claims/Case Admin/Analyst - $ 110/hr.

The Plan provides that prior to the Effective Date of the Plan, the Committee will select the members of the Trust Oversight Committee from those creditors who express a willingness to serve in their Ballot.  EMT Electronics, Retif Oil & Fuel, LLC, Abrado, Inc., Argo Partners, and Crosby Tugs LLC have each indicated that they would like to be considered for membership in the Trust Oversight Committee, subject to the approval of this Court.  From these five creditors, the Committee will select the Trust Oversight Committee.  Accordingly, the Plan satisfies all requirements of section 1123(a)(7) of the Bankruptcy Code.

15.     **Executory Contracts and Unexpired Leases (Section 1123(b)(2)).**

(a)      The Amended Plan Supplement properly provides for the assumption and assignment to the Liquidating Trust, or the rejection, of all executory contracts and unexpired leases pursuant to Section 365 of the Bankruptcy Code.  Under the terms of the Plan, the Proponent cures, or provides adequate assurance that the Proponent will cure, any defaults under any assumed contracts or leases.

(b)      The Committee entered into a Stipulation with Gulf Coast Marine, LLC, which is filed as Doc. No. 728, to resolve an informal objection by Gulf Coast Marine, LLC to the assumption and assignment of an insurance policy between Gulf Coast Marine, LLC and the Debtor.  The stipulation will be approved by the Court.

(c)      Steamship Owners Mutual Protection and Indemnity Association, Inc. and Steamship Mutual Underwriting Association Ltd. (collectively, "Steamship") filed an objection to confirmation of the Plan.  The inclusion of the language in Decretal Paragraph G(3) below resolves Steamship's objection.

11

16.     **Settlement with the Affiliates and USSIC (Section 1123(b)(3)(A)).**  The Plan effectuates a settlement among the Committee, the Debtor, the Insider Released Parties (as defined in the Plan), and U.S. Specialty Insurance Company (the "Settlement").  The Settlement is intended to resolve (a) the Committee's objections to the claims filed by Offshore Express, LLC (Claim No. 128), Fairways Exploration & Production, LLC (Claim No. 129), Fairways Energy Resources, LLC (Claim No. 130), Offshore Exploration and Production, LLC (Claim No. 131), and Offshore Domestic Group, LLC (Claim No. 132); (b) the Committee's objection to the claim filed by U.S. Specialty Insurance Company (Claim No. 118); and (c) the Debtor's potential causes of action against the Insider Released Parties.  Based upon a review of the record, the Court finds that the notice provided regarding the Settlement was the best and most practicable notice under the circumstances, contained sufficient disclosure of the terms of the Settlement and circumstances of the Settlement, and provided reasonable, due, and adequate process under the law.  The interests of the Debtor, its estate, and its creditors are best served by the Settlement and not by continued litigation.  Therefore, after giving due consideration to (i) the probability of success, (ii) the complexity and likely duration of and expenses incurred in connection with the litigation of the claims and causes of action, (iii) other factors bearing on the reasonableness of the Settlement, and (iv) all testimony and evidence adduced, representations of counsel and review of the record and pleadings of this matter, the Court finds that the Settlement (1) is fair, equitable, and reasonable, (2) is in the best interest of the Debtor, its estate, and all other parties-in-interest in this matter, including all creditors and interest holders, (3) reflects a sound and reasonable exercise of business judgment by the parties thereto, and (4) satisfies the applicable standards of Sections 105(a) and 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and should be approved.

17.    **Releases.**  Article VIII of the Plan described certain releases granted in favor of non-debtor parties, including the Committee and its professionals, the Insider Released Parties, and U.S. Specialty Insurance Company (the "Releases").  The notice of the Releases provided in the Disclosure Statement was the best and most practicable notice under the circumstances, contained sufficient disclosure of the terms of the Releases, and provided reasonable, due, and adequate process under the law.  With the immaterial modifications described in Paragraph 6 above, the Releases do not contain non-debtor releases prohibited by the Bankruptcy Code or applicable law.  *See In re Pacific Lumber Co.*, 584 F.3d 229 (5th Cir. 2009); *In re Bigler*, 442 B.R. 537, 544 (Bankr. S.D. Tex. 2010).

18.    **Plan Compliance with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(1)).**  As described in Paragraphs 1 through 17 of this Confirmation Order, above, the Plan complies with the applicable provisions of the Bankruptcy Code and, thus, satisfies section 1129(a)(1) of the Bankruptcy Code.

19.    **Proponent Compliance with the Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2)).**  The Committee has complied with the applicable provisions of the Bankruptcy Code. The solicitation of acceptances and rejections from holders of impaired claims and interests has been in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules including, without limitation, Sections 1125 and 1126.  The modifications to the Plan set forth in herein satisfy, and the Proponent has satisfied, Section 1127 of the Bankruptcy Code.  The Plan therefore satisfies section 1129(a)(2) of the Bankruptcy Code.

20.    **Plan Proposed in Good Faith (Section 1129(a)(3)).** The Plan has been proposed in good faith and not by any means forbidden by law. The Plan has been proposed for valid business purposes, to satisfy substantial obligations of the Debtor, and to provide relief under

13

Chapter 11 to the Debtor, its creditors, and equity security holders.  The Plan therefore satisfies section 1129(a)(3) of the Bankruptcy Code.

21.      **Payments of Costs and Expenses (Section 1129(a)(4)).**  Any payment made or to be made pursuant to the Plan for services or costs and expenses incurred in or in connection with the Debtor's Chapter 11 case has been approved by, or will be subject to the approval of, the Bankruptcy Court as reasonable.   The Plan therefore satisfies section 1129(a)(4) of the Bankruptcy Code.

22.      **Directors and Officers (Section 1129(a)(5)).** The Committee has disclosed the identity and compensation of the Liquidating Trustee as required by Bankruptcy Code Section 1129(a)(5).  The appointment and compensation of the Liquidating Trustee is consistent with the interests of creditors and equity security holders and with public policy.   The Plan therefore satisfies section 1129(a)(5) of the Bankruptcy Code.

23.      **No Rate Change (Section 1129(a)(6)).** Section 1129(a)(6) of the Bankruptcy Code is not applicable to this Debtor.

24.      **Best Interests of Creditors (Section 1129(a)(7)).** With respect to each impaired class of claims or interests, each holder of a claim or interest will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.  The Plan therefore satisfies section 1129(a)(7) of the Bankruptcy Code.

25.      **Plan Acceptance (Section 1129(a)(8)).**  Classes B-1 and B-2 are unimpaired under the Plan.  All impaired classes of creditors entitled to vote (Classes C-1 through C-4) have

either voted to accept the Plan or stated on the record their support for confirmation of the Plan. The impaired class of interests (Class D) is deemed to reject the Plan.

26. **Plan Treatment of Administrative Expenses Claims (Section 1129(a)(9)(A)).** Except to the extent that the Holder of a particular Claim has agreed to a different treatment of such claim, Article II, Section A of the Plan provides that each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the later to occur of the Effective Date of the Plan or the date on which the application for such claim is approved by a final, non-appealable order, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Liquidating Trustee. The Plan therefore satisfies section 1129(a)(9)(A) of the Bankruptcy Code.

27. **Plan Treatment of Priority Claims and Secured Tax Claims (Section 1129(a)(9)(B), (C), and (D).** Class A-2 of the Plan provides that each holder of a priority claim will be paid in full, in cash, upon the later of the Effective Date of the Plan, or the date on which such claim is allowed by a final non-appealable order. Class B-1 of the Plan provides that secured tax claims will be paid in full, in cash, upon the later of the Effective Date of the Plan, or the date on which such claim is allowed by a final non-appealable order. The Plan therefore satisfies section 1129(a)(9)(B), (C), and (D) of the Bankruptcy Code.

28. **Acceptance of Impaired Classes (Section 1129(a)(10)).** All impaired classes of creditors entitled to vote (Classes C-1 through C-4) have voted to accept the Plan. The Plan therefore satisfies section 1129(a)(10) of the Bankruptcy Code.

29. **Feasibility (Section 1129(a)(11)).** The cash flow projections in the Disclosure Statement and the evidence adduced at the Confirmation Hearing indicate that the Liquidating Trust will have sufficient cash flow to meet the obligations under the Plan at the Effective Date

15

and to reserve sufficient amounts to administer the Liquidating Trust after the Effective Date. Because the Plan contemplates the final liquidation of the Debtor, it is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.  Accordingly, the Plan is feasible and complies with Section 1129(a)(11).

30.     **United States Trustee Fees (Section 1129(a)(12)).** All fees due and payable under 28 U.S.C. § 1930 will be paid by the Debtor in accordance with Article X, Section B of the Plan.

31.     **Remaining Provisions of 1129(a) Inapplicable (Sections 1129(a)(13), (14), (15) and (16)).** Sections 1129(a)(13) through (16) are not applicable to this Debtor.  The Debtor does not have any obligations with respect to retiree benefits, does not have domestic support obligations, and is not an individual.  Except for those assets transferred to holders of Class C-2 and Class C-4 Claims in accordance with the terms of the Plan, all property of the estate shall be vested in the Liquidating Trustee, as trustee of the Liquidating Trust, under the Plan.

32.     **The Plan Does not Discriminate Unfairly, and is Fair and Equitable, with Respect to Each Impaired Class of Claims or Interests that has not Accepted the Plan (Section 1129(b)).**  To the extent that Section 1129(b) applies, all applicable requirements have been met with respect to the Plan.  The only class that has not accepted the Plan is Class D, the current equity interests in the Debtor, which is deemed to reject the Plan.  The Plan does not discriminate unfairly against Class D interests and is fair and equitable with respect to such interests, as defined in Section 1129(b).  The Plan therefore satisfies Section 1129(b) of the Bankruptcy Code.

33.     **No Other Plans (Section 1129(c)).**  No other chapter 11 plan was submitted to creditors for a vote or satisfied Sections 1129(a) and (b) of the Bankruptcy Code.

34. **Principal Purpose of Plan (Section 1129(d)).**  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 (15 U.S.C. §77e).

35. **Small Business Debtor (Section 1129(e)).**  Section 1129(e) of the Bankruptcy Code is not applicable to this Debtor.

Finding that the Plan is confirmable for all of the foregoing reasons, and based upon the foregoing findings of fact and conclusions of law, which are fully incorporated by reference below, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

A. **Confirmation.**  The Plan, as the same may be modified by this Confirmation Order, is hereby CONFIRMED IN ALL RESPECTS and the record of the Confirmation Hearing is closed.  All objections to the Plan, to the extent not withdrawn, resolved, waived, or settled at or prior to the Confirmation Hearing or incorporated into the Plan or this Confirmation Order, are overruled on the merits.  If there is any conflict or inconsistency between the Plan, the Liquidating Trust Agreement, and this Confirmation Order, the terms of this Confirmation Order shall control over the terms of the Plan and the Liquidating Trust Agreement, and the terms of the Plan shall control over the terms of the Liquidating Trust Agreement.

B. **Binding Plan and Order.**  The provisions of the Plan and this Confirmation Order are hereby made binding upon the Debtor, the Liquidating Trustee, and all holders of claims or interests, whether or not such claims or interests are impaired under the Plan and whether or not such holder of a claim or interest has filed, or is deemed to have filed, a proof of claim or proof of interest or has accepted the Plan.

C. **Approval of Liquidating Trust, Liquidating Trustee, and Trust Oversight Committee.**  The Liquidating Trust Agreement and the appointment of David Weinhoffer as

17

Liquidating Trustee of the Liquidating Trust are hereby approved. The Debtor and the Liquidating Trustee are authorized to enter into the Liquidating Trust Agreement and to take all actions necessary for the implementation of the Liquidating Trust Agreement, including, without limitation, completing any blanks in the Liquidating Trust Agreement, so long as any such changes are not inconsistent with this Confirmation Order or the terms of the Plan. The Committee, after consultation with those creditors who expressed a willingness to serve on the Trust Oversight Committee, shall select the members of the Trust Oversight Committee and file a notice with the Court prior to the Effective Date and, so long as no party objects to such notice within fourteen days of its filing, the members identified in such notice shall become the members of the Trust Oversight Committee. If any party objects to such notice, the Court will select the members of the Trust Oversight Committee after a hearing.

D.   **Approval of Settlement.** The Settlement, as embodied in the Plan, is approved in its entirety pursuant to Bankruptcy Rule 9019. The Debtor and the Liquidating Trustee are authorized to take all actions necessary or appropriate to consummate the Settlement, including, without limitation, consummating the transfers to the holders of Class C-2 Claims and the Class C-4 Claim as more particularly described in the Plan.

E.   **Vesting of Assets.** On the Effective Date, the Debtor shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trustee, to hold in trust for the benefit of the holders of the Liquidating Trust Beneficial Interests pursuant to the terms of the Plan and the Liquidating Trust Agreement. Except as otherwise provided by the Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

18

F.      **Montco Receivable**.  As set forth in Article III.C.4 of the Plan, the nominated administrative agent for the Allowed Class C-2 Claims shall receive in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class C-2 Claim, among other things, a 50% interest in the Montco Receivable[1] pursuant to an assignment substantially in the form attached to the Plan as Exhibit B-2 (the "Montco Claim Assignment"). The remaining 50% interest in the Montco Receivable shall be transferred to the Liquidating Trustee, as trustee for the Liquidating Trust, and become a Liquidating Trust Asset.

In *In re Montco Offshore, Inc. & Montco Oilfield Contractors, LLC*, Case No. 17-31646 (Bankr. S.D. Tex.), currently pending before the Bankruptcy Court, Article IV Section Q of the debtors' Amended Plan of Reorganization [No. 17-31646, ECF No. 740] (the "Montco Plan") addresses beneficiaries of the Montco Liquidating Trust and provides that the "interests of the beneficiaries in the Liquidating Trust shall be uncertificated and nontransferable except upon the death of the interest holder or ***by operation of law***."  *See* Montco Plan, Art. IV.Q (emphasis added).

This Confirmation Order, which approves the Montco Claim Assignment and the transfer of the assets of the Debtor to the Liquidating Trust, is "by operation of law" and therefore a permitted exception set forth in Article IV Section Q of the Montco Plan.  The Montco Claim Assignment shall be binding upon the Montco Liquidating Trust and Montco Liquidating Trustee.  The vesting of the Liquidating Trust Assets in the Liquidating Trust shall also be binding upon the Montco Liquidating Trust and Montco Liquidating Trustee.  Upon entry of this Confirmation Order, counsel for Offshore Domestic Group, LLC shall provide the Montco

---

[1] "Montco Receivable" means any amounts to which OSF is entitled based on any claims that OSF has made in *In re Montco Offshore, Inc. & Montco Oilfield Contractors, LLC*, Case No. 17-bk-31646 (S.D. Tex.), currently pending in the Bankruptcy Court, and/or any Cause of Action that OSF may have against Montco Oilfield Contractors, LLC or any of its Affiliates, subsidiaries, or interrelated companies.  Plan at Art. I.A.64.

Liquidating Trustee and his counsel with a copy of this Confirmation Order and a copy of the Montco Assignment.

       G.     **Executory Contracts and Unexpired Leases.**

       (1)     The executory contracts and unexpired leases of the Debtor set forth in Exhibit 1 to the Amended Plan Supplement are assumed as of the Effective Date and assigned to the Liquidating Trustee, as trustee of the Liquidating Trust, and such assumptions are approved by the Bankruptcy Court. The Liquidating Trustee shall pay any cure amounts listed on Exhibit 1 of the Amended Plan Supplement to the applicable counterparty in accordance with the terms of the Plan.

       (2)     On the Effective Date, except for any executory contracts or unexpired leases that were previously assumed, assumed and assigned, or rejected by an order of the Bankruptcy Court, or that are assumed and assigned to the Liquidating Trust as provided in the Amended Plan Supplement, each executory contract and unexpired lease entered into by the Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms, including without limitation, the executory contracts and unexpired leases listed on Exhibit 2 of the Amended Plan Supplement, shall be rejected, pursuant to Section 365 of the Bankruptcy Code.

       (3)     Notwithstanding any other provision of the Plan or Confirmation Order, the assumption and assignment by the Debtor of the applicable P&I Policies with the P&I Club and listed on Exhibit 1 of the Amended Plan Supplement is hereby approved, provided that, **(A)** from and after the Effective Date, the Liquidating Trust shall be bound by and obligated to fully perform the P&I Policies and all obligations thereunder including, without limitation the payment of any liquidated claim subject to the P&I

Policies and all applicable deductibles prior to seeking indemnification from the P&I Club; **(B)** the P&I Policies may not be assigned by the Liquidating Trustee without the P&I Club's consent; **(C)** nothing in the Plan or Confirmation Order shall prejudice **(i)** the rights of the P&I Club to assert any and all applicable rights, deductibles and defenses with respect to claims covered under the applicable P&I Policies, **(ii)** the Debtor's and/or Liquidating Trustee's rights under the P&I Policies and applicable law, with all such rights and defenses preserved; **(D)** nothing in the Plan or Confirmation Order shall be deemed to make the P&I Club subject to the jurisdiction of this Court; and **(E)** on or before the Effective Date, to cure the prepetition defaults under the applicable P&I Policies, the Debtor shall pay **$128,661.81** to the P&I Club as cure of prepetition defaults under the applicable P&I Policies.

(4)     The Stipulation between the Committee and Gulf Coast Marine, LLC, which is filed as Doc. No. 728, is approved.

H.     **Preservation of Causes of Action.**  As more fully set forth in Article IV, Section A, Paragraph 1 of the Plan, unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, settled, assigned, and/or otherwise conveyed in the Plan or by Court order (such as Causes of Action against holders of Allowed Class C-2 Claims as provided above), all OSF Causes of Action (as defined in the Plan), whether arising before or after the date the Chapter 11 Case was filed, are reserved by the Debtor and are transferred to the Liquidating Trustee, as trustee of the Liquidating Trust, as Liquidating Trust Assets.  Such OSF Causes of Action include, without limitation (a) all Avoidance Actions, including insider transfers described on Exhibit D of the Disclosure Statement, and other potential Avoidance Actions against non-insiders described on Exhibit E of the Disclosure

21

Statement, (b) the Montco Receivable, (c) the JAB Receivable, (d) the Linder Judgment, (e) any and all Claims or Causes of Action that the Debtor may have or have a right to assert against Orinoco for any alleged breach of the Plan Sponsor Commitment, (f) any and all claims that OSF may have or have a right to assert against Davie Shoring, Inc. relating to its default of its payment obligations as described in Section V.B.7. of the Disclosure Statement, (g) any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed, and related to the Personal Injury Claims or the P&I Policies, specifically including reimbursement claims against any insurers, and (h) any Causes of Action, in addition to Avoidance Actions, the Debtor may assert against current or former Insiders of OSF (other than the Insider Released Parties) related to misconduct of current or former officers, directors, members, or managers of OSF, including Steve Williams and any Entity owned or controlled (directly or indirectly) by him.  The Proponent, however, has not investigated the Causes of Action and/or Avoidance Actions, if any, that may be asserted against Steve Williams and any Entity owned or controlled by him, and is relying on the representations of others that such Causes of Action/Avoidance Actions have merit.  Williams and his related Entities vehemently deny the allegations referenced in the Plan and the Disclosure Statement and will vigorously oppose any and all actions brought against them.  Nothing herein, and for the avoidance of doubt, shall prohibit any Entity from asserting any Causes of Action as a defense pursuant to applicable law, but such Entity will have no authority to assert any affirmative action which the Debtor has released.  All Causes of Action (except those Causes of Action transferred to or for the benefit of holders of Allowed Class C-2 Claims) shall be Liquidating Trust Assets transferred to the Liquidating Trustee.  The Liquidating Trustee, or its successors and assigns, shall be authorized and empowered as a representative of the Debtor and the Estate to institute, prosecute,

settle, compromise, abandon or release all Causes of Action of the Debtor and the Estate transferred to the Liquidating Trust.  Additionally, on the Effective Date, the Liquidating Trustee shall assume the prosecution of any objection, motion, adversary proceeding, or other proceeding in the Bankruptcy Court currently being prosecuted by the Committee (other than those proceedings retained under Article IV, Section G. of the Plan) and shall be substituted for the Committee as the applicable party in interest, without the need to file any motion to substitute or other similar document.

I.      **Authority.**  All actions and transactions contemplated under the Plan, including, but not limited to, any documents executed in connection therewith or related thereto, shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices, or meetings of the Debtor or the Committee.

J.      **Enabling Provision.**  All persons who are contemplated by the Plan to render services, execute documents, make payments, file pleadings, resolve controversies, or take any action are hereby ordered and directed to take such action.

K.      **References to Plan Provisions.**  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

L.      **Modifications of the Plan Before Substantial Confirmation.**  Before substantial consummation of the Plan, the Committee may, under Section 1127(b) of the Bankruptcy Code, (i) amend the Plan so long as such amendment shall not materially or adversely affect the treatment of any holder of a claim; (ii) institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or this

Confirmation Order; and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of the holders of the claims or interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Orders of this Court.

M.     **Applicable Non-Bankruptcy Law.**  Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall be enforceable notwithstanding any other applicable non-bankruptcy law.

N.     **Discharge.**  Because the Plan contemplates the final liquidation and dissolution of the Debtor, the Debtor is not entitled to a discharge under Bankruptcy Code Section 1141(d)(3).

O.     **Releases.**

(1)     *Releases by the Debtor and the Estate.*     Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, the Debtor hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtor) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or

24

other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.1 shall not operate to waive or release the Releasees from any obligation under the Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable nor does the release include a release for willful misconduct or gross negligence.

(2)     *Mutual Release related to Class C-2.*  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") hereby provide a full release to the Insider Released Parties (and each such Insider Released Party so released shall be deemed released and discharged by the First Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances,

including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the Insider Released Parties from any obligation under the Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable. Nothing herein is intended to, nor does, it release any  independent or direct claims of any creditor or third party.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Insider Released Parties hereby provide a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the Insider Released Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without

limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties from any obligation under the Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.   The Debtor and the Liquidating Trustee shall continue to work in good faith with the Insider Released Parties regarding removal of the accommodations module referenced in Section V.B.7. of the Disclosure Statement and in Article VII.5 of the Plan.

(3)      *Mutual Release related to Class C-4.*  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the First Parties hereby provide a full release to USSIC from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to

27

assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of Article VIII.B.2 shall not operate to waive or release USSIC from any obligation under the Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, USSIC hereby provides a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the USSIC) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties

28

from any obligation under the Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

P.    **Injunction**.

(1)    **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are enjoined from commencing or continuing in any manner against the Debtor or its successors and assigns and its assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order until the completion of the administration of the Liquidating Trusts provided for herein.**

(2)    **Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, the Estate, the Creditors' Committee, the Liquidating Trust and Liquidating Trustee, their successors and assigns and their assets and properties, any other Claims or Member Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date or commencing or continuing in any manner any action or other proceeding of any kind in respect of any Cause of Action released or settled under the Plan.**

(3)    **The rights afforded in the Plan and the treatment of all Claims and Member Interests in the Plan shall be in exchange for and in complete satisfaction of**

29

**Claims and Member Interests of any nature whatsoever, against the Debtor or any of its assets or properties.  On the Effective Date, all such Claims against, and Member Interests in, the Debtor shall be satisfied and released in full.**

**(4)     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are enjoined, on and after the Effective Date until the completion of the administration of the Liquidating Trust provided for herein, on account of any Claim or Member Interest satisfied and released hereby, from:  (a) commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, its successors and assigns, and its assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, its successors and assigns, and its assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of the Debtor; or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim.**

Q.     **Retention of Jurisdiction.**  From and after the Effective Date, the Court shall retain jurisdiction over the Case for the following purposes:

(1)     To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Member Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of

any and all objections to the allowance, secured status or priority of Claims or Member Interests;

(2)     To grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(3)     To resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(4)     To ensure that Distributions to holders of Allowed Claims and Member Interests are accomplished pursuant to the provisions of the Plan;

(5)     To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, provided, however, the right of the Liquidating Trustee to commence actions in all appropriate jurisdictions shall be fully reserved;

(6)     To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(7)     To resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(8)     To issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(9)     To enforce the various provisions of the Plan and the Liquidating Trust Agreement;

(10)    To enforce the Injunction set forth in Article VIII, Section D of the Plan;

(11)    To resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article VIII herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(12)    To enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(13)    To resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(14)    To enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Case.

R.    **Appeal.**  The reversal or modification on appeal of this Confirmation Order does not affect the validity of the transactions contemplated under the Plan with respect to an entity that has purchased or acquired property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and transactions under the Plan are stayed pending appeal.

Signed: October 26, 2018

Marvin Isgur
United States Bankruptcy Judge

Reviewed and approved by:

|  /s/ Daniel J. Ferretti | /s/  Michael D. Fritz |
|---|---|
| Susan C. Mathews | Michael D. Fritz |
| Texas Bar No. 05060650 | Texas Bar No. 24083029 |
| smathews@bakerdonelson.com | mfritz@diamondmccarthy.com |
| Daniel J. Ferretti | DIAMOND MCCARTHY LLP |
| Texas Bar No. 24096066 | Two Houston Center |
| dferretti@bakerdonelson.com | 909 Fannin,  37th Floor |
| BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC | Houston, Texas  77010 |
| 1301 McKinney St., Suite 3700 | Telephone:  (713) 333-5100 |
| Houston, TX 77010 | Facsimile:  (713) 333-5199 |
| Telephone:  (713) 650-9700 | |
| Facsimile:  (713) 650-9701 | ***Counsel for Offshore Specialty Fabricators, LLC, Debtor and Debtor-in-Possession*** |
| | |
|             -AND- | |
| | |
| Jan M. Hayden | |
| (Admitted Pro Hac Vice) | |
| Louisiana Bar No. 6672 | |
| jhayden@bakerdonelson.com | |
| Edward H. Arnold, III | |
| Louisiana Bar No. 18767 | |
| Federal ID No. 17158 | |
| harnold@bakerdonelson.com | |
| 201 St. Charles Avenue, Suite 3600 | |
| New Orleans, Louisiana 70170 | |
| Telephone: (504) 566-8645 | |

| | |
|---|---|
| Facsimile: (504) 585-6945<br><br>***Attorneys for Official Committee of Unsecured Creditors for Offshore Specialty Fabricators, LLC*** | |
| _/s/ Timothy A. Davidson II_____<br>Timothy A. ("Tad") Davidson II<br>Texas Bar No. 24012503<br>TadDavidson@HuntonAK.com<br>Joseph W. Buoni<br>Texas Bar No. 24072009<br>JosephBuoni@HuntonAK.com<br>Ashley L. Harper<br>Texas Bar No. 24065272<br>AshleyHarper@HuntonAK.com<br>HUNTON ANDREWS KURTH LLP<br>600 Travis Street, Suite 4200<br>Houston, Texas  77002<br>Telephone:  (713) 220-4200<br>Facsimile:  (713) 220-4285<br><br>***Attorneys for Offshore Domestic Group, LLC, Offshore Express, LLC, and Fairways Offshore Exploration, Inc.*** | _/s/ Elizabeth M. Guffy_____<br>Philip G. Eisenberg<br>Texas Bar No. 24033923<br>peisenberg@lockelord.com<br>Elizabeth M. Guffy<br>Texas Bar No. 08592525<br>eguffy@lockelord.com<br>LOCKE LORD LLP<br>600 Travis Street, Suite 2800<br>Houston, Texas  77002<br>Telephone:  (713) 226-1200<br>Facsimile:  (713) 226-3717<br><br>***Attorneys for U.S. Specialty Insurance Company*** |
| _/s/  Jeremy A. Herschaft_____<br>Jeremy A. Herschaft, Esq.<br>Texas Bar No. 2440990<br>jherschaft@blankrome.com<br>James T. Grogan, Esq.<br>jgrogan@blankrome.com<br>Texas Bar No. 24027354<br>BLANK ROME LLP<br>717 Texas Avenue<br>Houston, Texas  77002<br>Telephone:  (713) 228-6601<br>Facsimile:  (713) 228-6605<br><br>***Attorneys for Steamship Mutual Underwriting Association Ltd. and Steamship Owners Mutual Protection and Indemnity Association, Inc.*** | _/s/  Ryan E. Chapple_____<br>Ryan E. Chapple<br>Texas Bar No. 24036354<br>rchapple@cstrial.com<br>CAIN & SKARNULIS PLLC<br>400 W. 15th Street, Suite 900<br>Austin, Texas  78701<br>Telephone:  (512) 477-5000<br>Facsimile:  (512) 477-5011<br><br>***Attorneys for Ronald Havard*** |
| _/s/ Greta M. Brouphy_____<br>Greta M. Brouphy, Esq.<br>gbrouphy@hellerdraper.com<br>Tristan Manthey | |

tmanthey@hellerdraper.com
HELLER, DRAPER, PATRICK, HORN & MANTHEY,
L.L.C.
650 Poydras Street, Suite 2500
New Orleans, Louisiana  70130
Telephone:  (504) 299-3351
Facsimile:  (504) 299-3399

**_Attorneys for Gulf Coast Marine, LLC, as_**
**_representatives of the GCM 2016 P&I_**
**_Underwriting Pool, lead underwriter_**

Reviewed and consented to as to form only by:

 _/s/  Brandon T. Darden_____
David F. Waguespack
La. Bar Roll No. 21121
_Admitted Pro Hac Vice_
waguespack@carverdarden.com
Brandon T. Darden
Texas Bar No. 24075614
bdarden@carverdarden.com
CARVER, DARDEN, KORETZKY, TESSIER, FINN,
BLOSSMAN & AREAUX, L.L.C.
1100 Poydras Street, Suite 3100
New Orleans, Louisiana  70163
Telephone:  (504) 585-3814
Facsimile:  (504) 585-3801

**_Attorneys for Alliance Special Ventures Fund,_**
**_LLC and Alliance Heavy Lift, LLC_**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 17-35623** |
| **OFFSHORE SPECIALTY** | § | |
| **FABRICATORS, LLC.,** | § | **CHAPTER 11** |
| | § | |
| **DEBTOR.** | § | |

### FIRST AMENDED PLAN OF LIQUIDATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated: September 10, 2018

Susan C. Mathews
Texas Bar No. 05060650
smathews@bakerdonelson.com
Daniel J. Ferretti
Texas Bar No. 24096066
dferretti@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, TX 77010
Telephone:  (713) 650-9700
Facsimile:  (713) 650-9701

-AND-

Jan M. Hayden
(Admitted Pro Hac Vice)
Louisiana Bar No. 6672
jhayden@bakerdonelson.com
Edward H. Arnold, III
Louisiana Bar No. 18767
Federal ID No. 17158
harnold@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-8645
Facsimile: (504) 585-6945

*Attorneys for Official Committee of Unsecured Creditors for Offshore Specialty Fabricators, LLC*



EXHIBIT

A

**TABLE OF CONTENTS**

**ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION** ............................ 1
    **A.**    *Defined Terms.* ....................................................................................... 1
    **B.**    *Rules of Interpretation.* ....................................................................... 10
    **C.**    *Exhibits and Schedules.* ...................................................................... 11

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ..................................... 11
    **A.**    *Administrative Claims (Unclassified Class A-1).* ................................ 11
    **B.**    *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve.* ............................................................................................. 11
    **C.**    *Priority Claims (Unclassified Class A-2).* .......................................... 12
    **D.**    *General.* .............................................................................................. 12

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS** ........................................................................... 12
    **A.**    *Summary.* ............................................................................................ 12
    **B.**    *Classification of Claims and Member Interests for the Debtor.* ......... 12
    **C.**    *Treatment of Claims and Member Interests for the Debtor* ............... 13
    **D.**    *Special Provision Governing Unimpaired Claims.* ............................. 17
    **E.**    *Nonconsensual Confirmation.* ............................................................ 17

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN** ............................ 17
    **A.**    *Preservation of Causes of Action; Transfer of Assets; Establishment of Personal Injury Reserve* ....................................................................................... 17
    **B.**    *Establishment of Liquidating Trust and Authority, Rights and Duties of Liquidating Trustee.* ........................................................................... 18
    **C.**    *Selection of the Trust Oversight Committee.* ...................................... 21
    **D.**    *Operations of Debtor Between Confirmation Date and Effective Date* ............. 21
    **E.**    *Establishment of the Administrative Claims Bar Date.* ...................... 22
    **F.**    *Term of Injunctions or Stays.* ............................................................ 22
    **G.**    *Creditors' Committee.* ........................................................................ 22
    **H.**    *Debtor's Professionals.* ...................................................................... 23
    **I.**    *Creditors' Committee Professionals* ................................................. 23

**ARTICLE V PROVISIONS GOVERNING DISTRIBUTIONS** .................................... 23
    **A.**    *Initial Distributions to Holders of Unsecured Claims* ....................... 23
    **B.**    *Disputed Reserve.* ............................................................................... 24
    **C.**    *Subsequent Distributions.* ................................................................... 24
    **D.**    *Delivery of Distributions.* .................................................................... 24
    **E.**    *Manner of Cash Payments Under the Plan.* ....................................... 25
    **F.**    *Time Bar to Cash Payments by Check.* ................................................ 25
    **G.**    *Compliance with Tax Requirements.* ................................................... 25
    **H.**    *No Payments of Fractional Dollars and Minimum Distributions.* ...... 25
    **I.**    *Interest on Claims.* ............................................................................. 26
    **J.**    *No Distribution in Excess of Allowed Amount of Claim.* .................... 26
    **K.**    *Setoff and Recoupment.* ...................................................................... 26
    **L.**    *No Distribution Pending Allowance.* ................................................... 26
    **M.**    *Resolution of Disputed Claims; Treatment of Subordinated Claims* ................. 26

**N.**  *Objection Deadline.* ....................................................................... 27
**O.**  *Estimation of Claims.* ................................................................... 27
**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED**
 **LEASES** ...................................................................................... **27**
**A.**  *Assumption and Rejection of Executory Contracts and Unexpired Leases.* ........ 27
**B.**  *Claims Based on Rejection of Executory Contracts and Unexpired Leases.* ...... 27
**C.**  *Cure Claims.* ................................................................................ 28
**D.**  *Insurance Policies.* ....................................................................... 28

**ARTICLE VII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .................. **28**
**ARTICLE VIII INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED**
 **PROVISIONS** ............................................................................... **29**
**A.**  *Compromise and Settlement.* ...................................................... 29
**B.**  *Releases.* ..................................................................................... 29
**C.**  *Exculpation.* ............................................................................... 31
**D.**  *Injunction.* .................................................................................. 32
**E.**  *Release of Liens.* ........................................................................ 33
**F.**  *Carve-Out* .................................................................................. 33

**ARTICLE IX RETENTION OF JURISDICTION** ............................................ **33**
**ARTICLE X MISCELLANEOUS PROVISIONS** .............................................. **34**
**A.**  *Final Fee Applications.* .............................................................. 34
**B.**  *Payment of Statutory Fees.* ........................................................ 34
**C.**  *Modification of the Plan.* ............................................................ 35
**D.**  *Revocation of Plan.* .................................................................... 35
**E.**  *Successors and Assigns.* .............................................................. 35
**F.**  *Governing Law and Construction.* ................................................ 35
**G.**  *Reservation of Rights.* ................................................................ 36
**H.**  *Article 1146 Exemption.* .............................................................. 36
**I.**  *Section 1125(e) Good Faith Compliance.* ....................................... 36
**J.**  *Further Assurances.* .................................................................... 36
**K.**  *Service of Documents.* ................................................................ 36
**L.**  *Filing of Additional Documents.* .................................................. 37
**M.**  *No Stay of Confirmation Order.* ................................................... 37
**N.**  *Bankruptcy Code Section 1141 Discharge.* ................................... 37

**FIRST AMENDED PLAN OF LIQUIDATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, the Official Committee of Unsecured Creditors of Offshore Specialty Fabricators, LLC (the "Committee" or the "Proponent") in the above-captioned Chapter 11 Case hereby respectfully proposes the following First Amended Plan of Liquidation under chapter 11 of the Bankruptcy Code.

**ARTICLE I**
**DEFINED TERMS AND RULES OF INTERPRETATION**

A.    *Defined Terms.*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.    "*Accrued Professional Compensation*" means, at any given moment, all accrued and/or unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction) for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code, arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code or otherwise rendered prior to the Effective Date, or thereafter in connection with: (i) applications filed pursuant to sections 328, 330 and 331 of the Bankruptcy Code; (ii) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not previously been paid regardless of whether a fee application has been filed for any such amount; and (iii) applications for allowance of Administrative Expenses.  To the extent that the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

2.    "*Administrative Claims*" means Claims that have been timely filed before the Administrative Claims Bar Date, pursuant to the deadline and procedure set forth in the Plan or Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b) (including claims under sections 503(b)(3)(F) and 503(b)(9)), 507(b) or 1114(e)(2) of the Bankruptcy Code), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises) and (ii) all fees and charges assessed against the Estate under chapter 123 of title 28 of the U.S. Code, 28 U.S.C. §§ 1911–1930); provided, however, that such Administrative Claims shall not include claims for Accrued Professional Compensation.

1

3. "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the entry of the Confirmation Order and is the deadline for a holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of such Administrative Claim.

4. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code; provided, however, the term "Affiliate" as used in this Plan shall not include Steve Williams or any entity owned or controlled by him.

5. "*Affiliate Claims*" means any Claim of an Affiliate of the Debtor, including Administrative Claims (if any), as well as the following Claims filed in this Chapter 11 Case: Offshore Express, LLC (Claim No. 128), Fairways Exploration & Production, LLC (Claim No. 129), Fairways Energy Resources, LLC (Claim No. 130), Offshore Exploration and Production, LLC (Claim No. 131), and Offshore Domestic Group, LLC (Claim No. 132).

6. "*Allowed*" means, with respect to any Claim or Member Interest, except as otherwise provided herein: (i) a Claim or Member Interest that has been scheduled by the Debtor in its Schedule as other than disputed, contingent or unliquidated; (ii) a Claim or Member Interest that has been allowed by a Final Order; (iii) a Claim or Member Interest that is allowed: (a) in any stipulation of amount and nature of such Claim or Member Interest executed prior to the entry of the Confirmation Order and approved by the Bankruptcy Court; (b) in any stipulation with the Debtor or the Liquidating Trustee, as applicable, of the amount and nature of such Claim or Member Interest executed on or after the entry of the Confirmation Order; or (c) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (iv) a Claim or Member Interest that is allowed pursuant to the terms of this Plan; or (v) a Claim as to which a proof of claim has been timely filed and as to which no objection has been filed by the Claims Objection Bar Date.  Any claim that has been or is hereafter listed in the Schedule as contingent, unliquidated, or disputed, and for which no proof of claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the Debtor or the Liquidating Trustee, as applicable.  For the avoidance of doubt, a proof of claim filed after the General Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

7. "*Available Cash*" means, with respect to the Debtor or the Liquidating Trustee, such Person's Cash on hand on the date of determination.

8. "*Avoidance Actions*" include all avoidance actions under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

9. "*Bankruptcy Code*" means sections 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as amended from time to time and as applicable to the Chapter 11 Cases.

**10.**     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

**11.**     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Texas, the Local Rules of the Bankruptcy Court, and general orders and chamber procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

**12.**     "*Barges*" mean the DB SWING THOMPSON and the DB WILLIAM KALLOP, collectively.

**13.**     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" as that term is defined in Federal Rules of Bankruptcy Procedure 9006(a).

**14.**     "*Cash*" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and readily marketable securities or instruments issued by an Entity, including, without limitation, readily marketable direct obligations of, or obligations guaranteed by, the United States of America, commercial paper of domestic corporations carrying a Moody's rating of "A" or better, or equivalent rating of any other nationally recognized rating service, or interest bearing certificates of deposit or other similar obligations of domestic banks or other financial institutions having a shareholders' equity or capital of not less than one hundred million dollars ($100,000,000) having maturities of not more than one (1) year, at the then best generally available rates of interest for like amounts and like periods.

**15.**     "*Causes of Action*" means any and all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, defenses, counterclaims and cross claims, now owned or hereafter acquired by the Debtor, the Debtor in Possession, and/or the Estate that are or may be pending or on or have accrued prior to the Effective Date against any person or entity other than any Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Confirmation Date; provided, however, that "*Causes of Action*" shall exclude any Causes of Action released in the Plan.

**16.**     "*Chapter 11 Case*" means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date and assigned Case Nos. 17-35623.

**17.**     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

**18.**     "*Claims Objection Bar Date*" means the deadline for objecting to scheduled Claims or proofs of Claim, which shall be one hundred eighty (180) days after the Effective Date; provided, however, that the Liquidating Trustee may seek one or more extensions of this date by Filing an appropriate motion with the Bankruptcy Court.

3

**19.** "*Class*" means a category of Claims or Member Interests as set forth in Article III herein pursuant to section 1122(a) of the Bankruptcy Code.

**20.** "*Class C-2 Reserve*" means a reserve of $350,000 Cash held in trust for the benefit of the holders of the Allowed Class C-2 Claims and established by the Debtor from Available Cash on the Confirmation Date, which shall be used to pay the Class C-2 Claim.

**21.** "*Class C-4 Reserve*" means a reserve of $400,000 Cash held in trust for the benefit of the holders of the Allowed Class C-4 Claims and established by the Debtor from Available Cash on the Confirmation Date, which shall be used to pay the Class C-4 Claim.

**22.** "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket in this Chapter 11 Case.

**23.** "*Confirmation Hearing*" means the hearing to consider confirmation of the Plan in accordance with sections 1128(a) and 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

**24.** "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, including all exhibits, appendices, supplements and related documents, which order shall be in form and substance satisfactory to the Debtor and the Creditors' Committee.

**25.** "*Consummation*" means the occurrence of the Effective Date.

**26.** "*Credit Bidding Estimation Order*" means the order of the Bankruptcy Court, dated January 17, 2018, titled Amended Order (I) Estimating the Secured Claim of Mickel Hahn; and (II) Modifying Bidding Procedures [ECF No. 347].

**27.** "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

**28.** "*Creditors' Committee*" or "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Case by the U.S. Trustee for the Southern District of Texas, pursuant to section 1102 of the Bankruptcy Code, on October 25, 2017, as such committee may be reconstituted from time to time.

**29.** "*Court*" means either the Bankruptcy Court or court of competent jurisdiction.

**30.** "*DB SWING THOMPSON*" means the DB SWING THOMPSON IMO No. 7706005, her engines, tackle, apparel, equipment and appurtenances.

**31.** "*DB WILLIAM KALLOP*" means the DB WILLIAM KALLOP IMO No. 8639455, her engines, tackle, apparel, equipment and appurtenances.

**32.** "*Debtor*" or "*Debtor in Possession*" means OSF.

**33.** "*Disclosure Statement*" means the *Disclosure Statement in support of Plan of Liquidation*, dated September 10, 2018, prepared and distributed in accordance with the Bankruptcy Code, Bankruptcy Rules and any other applicable law, and approved by the

4

Bankruptcy Court in the Disclosure Statement Order, as it is amended, supplemented or modified from time to time in compliance with the Disclosure Statement Order, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

34.     "*Disclosure Statement Order*" means the order approving the Disclosure Statement entered by the Bankruptcy Court on September 11, 2018 [ECF No. 706].

35.     "*Disputed*" means any Claim or Member Interest or any portion thereof:  (i) that is listed on the Schedule as unliquidated, disputed or contingent; (ii) as to which the Debtor, the Liquidating Trustee, the Creditors' Committee, or any other party in interest with standing has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; (iii) that are or after applicable proceedings by the Debtor, the Liquidating Trustee, or the Creditors' Committee may be determined to be Subordinated Claims; or (iv) otherwise disputed by the Debtor, the Liquidating Trustee, or the Creditors' Committee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

36.     "*Disputed Reserve*" means the reserve fund created pursuant to Article V herein.

37.     "*Distributions*" means the distributions of Cash or other consideration on account of Allowed Claims to be made under and in accordance with the Plan.

38.     "*Effective Date*" means the date specified by the Liquidating Trustee in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be following the date by which (i) the Confirmation Order becomes a Final Order and no stay of the Confirmation Order is in effect, unless the Debtor, the Liquidating Trustee, and the Creditors' Committee elect in their sole discretion, to consummate the Plan on an earlier date if an appeal is timely filed; and (ii) all conditions specified in Article VIII of the Plan have been satisfied or waived in accordance with the Plan.

39.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

40.     "*Estate*" means the estate of Debtor created on the Petition Date by section 541 of the Bankruptcy Code.

41.     "*Estimated*" means, with respect to a Claim, the amount the Bankruptcy Court established as the estimated amount of the Claim for purposes of credit bidding on the Barges in its Credit Bidding Estimation Order.

42.     "*Executory Contract and Unexpired Lease Assumption and Assignment Schedule*" means the schedule designating the Executory Contracts and Unexpired Leases to be assumed and assigned to the Liquidating Trust and setting forth the monetary cure amount the Debtor believes to be owed with respect to each such Executory Contract and Unexpired Lease.

43.     "*Executory Contracts and Unexpired Leases*" means all contracts and leases between the Debtor and any third-parties that are "executory contracts" or unexpired leases as such terms are used in section 365 of the Bankruptcy Code.

5

44.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

45.    "*Final Distribution Date*" means the earlier to occur of (i) the date on which the Liquidating Trust terminates or (ii) thirty days after the date on which the Liquidating Trustee files notice with the Bankruptcy Court that the Liquidating Trustee has determined, in his reasonable discretion and in accordance with the terms of this Plan and the Liquidating Trust Agreement, that the Liquidating Trust has been fully administered.

46.    "*Final Order*" means an order, determination or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket in the Debtor's Chapter 11 Case (or on the docket of such other court of competent jurisdiction) which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no appeal or petition for certiorari or appropriate motion has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order, determination or judgment was appealed or from which certiorari was sought or has otherwise been dismissed with prejudice and as to which the time for any subsequent appeal, petition for certiorari or move for re-argument or rehearing or reconsideration has expired and no such subsequent appeal or petition for certiorari or appropriate motion has been timely taken, or has been resolved by the court to which the order, determination or judgment was so subsequently appealed.

47.    "*General Bar Date*" means February 5, 2018, at 5:00pm (prevailing Central time) as established in the Notice of Chapter 11 Bankruptcy Case [ECF No. 40].

48.    "*General Unsecured Claims*" means all unsecured Claims asserted against the Debtor, including the deficiency balance of any Maritime Lien Secured Claims after payment of a portion of such claim from the proceeds of the sales of the Barges, but excluding Personal Injury Claims, Affiliate Claims, and the USSIC Claim.

49.    "*Initial Distribution Date*" means the date that is five business days after the Claims Objection Bar Date.

50.    "*Impaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, "impaired" within the meaning of section 1124 of the Bankruptcy Code.

51.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

52.    "*Insider Released Parties*" means each of the following: (a) Offshore Express, LLC; (b) Fairways Exploration & Production, LLC; (c) Fairways Energy Resources, LLC; (d) Offshore Exploration and Production, LLC; (e) Offshore Domestic Group, LLC; (f) Fairways Offshore Exploration, Inc.; (g) Avid Ltd.; (h) Pisco Porton LLC; (i) William Kallop and his spouse; (j) Brent Kallop and his spouse and children; (k) Brooks Moore Kallop and his spouse and children; (l) Houma Land Holdings LLC; (m) Offshore Seismic Surveys, LLC; (n) AVID Palm Beach, LLC; (o) Kallop Enterprises, LLC; (p) OSF's Affiliates; (q) with respect to each of the foregoing in clauses (a) through (n), each of their respective current and former predecessors, successors, Affiliates, and professionals and advisors, including Hunton Andrews Kurth LLP and

6

The Claro Group, LLC. Notwithstanding the foregoing, the Insider Released Parties shall not include Steve Williams or any Entity owned or controlled (directly or indirectly) by him.

**53.** "*Insurance Policies*" means any insurance policies issued to or for the benefit of the Debtor or any of its predecessors-in-interest and any agreements, documents or instruments related thereto as well as any P&I Policies.

**54.** "*JAB Receivable*" means any amounts to which OSF is entitled based on any claims that OSF has made against JAB Energy Solutions II, LLC in Cause No. 2016-48155 pending in the District Court for the 151st Judicial District of Harris County, Texas.

**55.** "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

**56.** "*Linder Oil Judgment*" means the final judgment entered on September 7, 2017 by the United States District Court for the Eastern District of Louisiana in civil action No. 16-15682 against Linder Oil Company, Linder Energy Company, and Louisiana General Oil Company in the principal sum of $2,499,577.35, plus interest in the amount of $1,806,223.80, plus interest for the period May 31, 2017 to August 31, 2017 of $74,987.32, plus attorneys' fees and costs in the amount of $14,163.68 for a total amount of $4,394,952.15, as amended.

**57.** "*Liquidating Trust*" means that certain trust that will come into existence on or before the Effective Date into which all of the Liquidating Trust Assets will vest pursuant to the Plan, which trust shall be formed pursuant to and governed by the Liquidating Trust Agreement.

**58.** "*Liquidating Trust Agreement*" means the agreement governing the Liquidating Trust dated on or before the Effective Date, substantially in the form attached hereto as **Exhibit A**.

**59.** "*Liquidating Trust Assets*" means all Property of the Debtor except the assets transferred to holders of Allowed Class C-2 Claims and Allowed Class C-4 Claims.

**60.** "*Liquidating Trust Beneficial Interests*" means the beneficial interests in the Liquidating Trust, which shall be distributed Pro Rata to the Holders of Claims entitled to the Liquidating Trust Beneficial Interests under the Plan.

**61.** "*Liquidating Trustee*" means the trustee of the Liquidating Trust.

**62.** "*Maritime Lien Secured Claims*" means any Claim secured by a Lien on the Barges, other than the Personal Injury Claims.

**63.** "*Member Interest*" means any member interest in the Debtor that existed immediately prior to the Petition Date, including all common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (whether or not arising under or in connection with any employment agreement), including any claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**64.** "*Montco Receivable*" means any amounts to which OSF is entitled based on any claims that OSF has made in *In re Montco Offshore, Inc. & Montco Oilfield Contractors, LLC*, Case No. 17-bk-31646 (S.D. Tex.), currently pending the Bankruptcy Court, and/or any Cause of Action that OSF may have against Montco Oilfield Contractors, LLC or any of its Affiliates, subsidiaries, or interrelated companies.

**65.** "*OSF*" means Offshore Specialty Fabricators, LLC, a debtor-in-possession in Case No. 17-35623 currently pending in the Bankruptcy Court.

**66.** "*OSF Causes of Action*" means Causes of Action belonging to OSF or its Estate against any and all third parties.

**67.** "*Other Secured Claims*" means Claims against OSF that are (i) secured by a Lien on property in which the OSF Estate has an interest other than the Barges, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or (ii) subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the OSF Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

**68.** "*P&I Club*" means Steamship Mutual Underwriting Association Ltd. and/or its related companies, as applicable.

**69.** "*The P&I Policies*" means the protection and indemnity agreement between OSF and the P&I Club as well as any other protection and indemnity agreements or Insurance Policies that protect or insure the Debtor against Personal Injury Claims.

**70.** "*Person*" means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof or any other entity as such term is defined in section 101(15) of the Bankruptcy Code.

**71.** "*Personal Injury Claim*" means a Claim based upon injuries purportedly suffered while employed by OSF or employed on the Barges, or either of them, including any claim for maintenance and cure under maritime law.

**72.** "*Personal Injury Lien Claim*" means a Claim secured by the Barges, or either of them, held by a holder of a Personal Injury Claim.

**73.** "*Personal Injury Reserve*" means the reserve to be established by the Liquidating Trustee for payment of Personal Injury Claims, in accordance with Article IV of this Plan.

**74.** "*Petition Date*" means October 1, 2017, the date on which the Debtor filed the Chapter 11 Case.

**75.** "*Plan*" means this plan of liquidation under chapter 11 of the Bankruptcy Code, including, without limitation, all applicable exhibits, supplements, appendices and

8

schedules hereto, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules or herewith, as the case may be, which shall be in form and substance acceptable to the Debtor and the Creditors' Committee.

76.     "*Plan Supplement*" means, collectively, (i) the exhibits to any *Notice of Supplement to the Debtor's Plan of Reorganization*, including, among other documents relevant to the implementation of the Plan, and the Liquidating Trust Agreement, and (ii) any additional supplement(s) to the Plan which additional supplement(s) shall in each case be in form and substance acceptable to the Debtor, the Creditors' Committee and the other parties to such documents (to the extent applicable with respect to each document).

77.     "*Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code.

78.     "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed Interests under the Plan.

79.     "*Procedures Order*" means that certain order entered by the Bankruptcy Court on November 9, 2017 [ECF No. 101].

80.     "*Professional*" means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328 or 1103 of the Bankruptcy Code, and to be compensated for services rendered and awarded reimbursement of expenses incurred prior to and including the Effective Date pursuant to sections 327, 328, 329, 330 or 331 of the Bankruptcy Code.

81.     "*Professional Fee Claim Bar Date*" means the date that is forty-five (45) days after the Effective Date.

82.     "*Professional Fee Reserve*" means a reserve funded on the Effective Date from the Liquidating Trust's Available Cash, as of the Effective Date, which shall initially be funded in an amount equal to the estimated Accrued Professional Compensation for the Debtor through the Effective Date provided by each Professional before the Effective Date.  The Professional Fee Reserve shall not be encumbered.

83.     "*Releasees*" means the Creditors' Committee, and the Professionals of the Creditors' Committee in this Chapter 11 Case; *provided*, *however*, that each such Person or Entity shall only be released as specifically set forth in Article VIII of the Plan.

84.     "*Representatives*" means, with regard to an Entity, its direct and indirect shareholders, managers, officers, directors, employees, advisors, members, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals) and each of their predecessors, successors and assigns.

85.     "*Schedule*" means the schedule of assets and liabilities, schedule of executory contracts and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code.

86.     "*Subordinated Claims*" means Unsecured Claims that are subordinated in payment to other Unsecured Claims by either contract or by an order of the Court.

87.     "*Taxing Authorities*" means any state or local governmental entities who have Claims for unpaid taxes against OSF.

88.     "*Trust Oversight Committee*" means the three-member board established to oversee, review and guide the activities and performance of the Liquidating Trustee.

89.     "*U.S. Trustee*" means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the Southern District of Texas.

90.     "*Unsecured Claims*" means Claims against OSF, whose repayment is not supported by any property of the Estate under section 541 of the Bankruptcy Code.

91.     "*Unimpaired*" means, with respect to a Claim, Member Interest, or Class of Claims or Member Interests, not Impaired.

92.     "*USSIC Claim*" means all Claims of U.S. Specialty Insurance Company, its affiliates, successors and assigns, against OSF, including Administrative Claims, if any, and Claim No. 118 filed by U.S. Specialty Insurance Company in the Chapter 11 Case.

**B.**     *Rules of Interpretation.*

1.     For purposes herein:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (ii) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) any reference herein to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (iv) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (v) the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.     The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

**3.** All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**C.** *Exhibits and Schedules.*

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into, and are a part of the Plan, as if set forth herein. All exhibits and schedules to the Plan, including the Plan Supplement, shall be filed with the Clerk of the Bankruptcy Court not later than the earlier of (i) ten (10) days prior to the commencement of the Confirmation Hearing and (ii) five (5) days prior to the deadline for filing objections to confirmation of the Plan. Such exhibits may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court or is available pursuant to a written request made directly to counsel for the Committee, Daniel J. Ferretti at dferretti@bakerdonelson.com and Jan Hayden at jhayden@bakerdonelson.com.

## ARTICLE II
## ADMINISTRATIVE AND PRIORITY CLAIMS

**A.** *Administrative Claims (Unclassified Class A-1).*

The Liquidating Trustee shall pay each holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim, in Cash, (a) on the later of: (i) five (5) Business Days after the Effective Date (or, if not then due, within five (5) Business Days after the date when such Allowed Administrative Claim is due in the ordinary course of business); (ii) if such Claim is Disputed and is Allowed after the Effective Date, on the date that is five (5) Business Days after such Claim is Allowed by a Final Order; and (iii) at such later date and upon such terms as may be agreed upon by a holder of an Allowed Administrative Claim and the Liquidating Trustee, or (b) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that Administrative Claims do not include Administrative Claims filed after the Administrative Claims Bar Date.

**B.** *Professional Compensation and Reimbursement Claims and the Professional Fee Reserve.*

All Professionals employed by the Debtor or the Creditors' Committee in the Chapter 11 Case shall (i) provide to the Debtor and the Creditors' Committee, before the Effective Date, an estimate of their Accrued Professional Compensation through the Effective Date, and (ii) file all requests for allowance of compensation and reimbursement of expenses pursuant to sections 328, 330 or 503(b) of the Bankruptcy Code for services performed and expenses incurred in the Chapter 11 Case through the Effective Date by no later than the Professional Fee Claim Bar Date.

On the Effective Date, the Liquidating Trustee shall establish and fund the Professional Fee Reserve in accordance with the estimates provided by the Professionals in accordance with the preceding sentence. In the event of excess amounts remaining in the Professional Fee Reserve after all Allowed Claims of Professionals have been paid in full, such excess amounts shall be transferred to the Liquidating Trustee and become Liquidating Trust Assets.

11

**C.**     *Priority Claims (Unclassified Class A-2).*

The Liquidating Trustee shall pay each holder of an Allowed Priority Claim the full unpaid amount of such Allowed Priority Claim in Cash, on the later of: (i) five (5) Business Days after the Effective Date; (ii) five (5) Business Days after the date such Priority Claim becomes Allowed; and (iii) the date such Allowed Priority Claim is payable under applicable non-bankruptcy law.

**D.**     *General.*

Allowed Administrative Claims (Class A-1) and Allowed Priority Claims (Class A-2) shall be paid in full.  Allowed Claims for Accrued Professional Compensation shall be paid in full, immediately upon allowance, from the Professional Fee Reserve to the extent of such reserve and, if insufficient funds remain in the reserve, by the Liquidating Trustee from Liquidating Trust Assets.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND MEMBER INTERESTS

**A.**     *Summary.*

**1.**   In accordance with section 1123(a)(1) of the Bankruptcy Code, the Proponents have not classified Administrative Claims or Priority Claims, as described in Article II.

**2.**   The following table classifies Claims against and Member Interests in the Debtor, for all purposes, including voting, confirmation and distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Member Interest to be classified in a particular Class only to the extent that the Claim or Member Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that such Claim or Member Interest or any portion thereof qualifies within the description of such different Class.  A Claim or Member Interest is in a particular Class only to the extent that any such Claim or Member Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and distribution purposes.

**B.**     *Classification of Claims and Member Interests for the Debtor.*

**1.**   Unclassified Claims

A-1: Administrative Claims

A-2: Priority Claims

**2.**   Secured Claims

B-1 Secured Taxing Authorities

B-2 Other Secured Claims

**3.**   Unsecured Claims

        C-1 General Unsecured Claims

        C-2 Affiliate Claims

        C-3 Unsecured Personal Injury Claims

        C-4 USSIC Claim

**4.**   Member Interests

        D-1 Member Interests

**C.**   *Treatment of Claims and Member Interests for the Debtor.*

**1.**     Secured Claims of Taxing Authorities (Class B-1)

(a)    *Classification*: Class B-1 consists of the Secured Claims of Taxing Authorities.

(b)    *Allowance*: The Committee or the Liquidating Trustee shall determine the Allowed Class B-1 Claims by agreement or by an order of the Bankruptcy Court.

(c)    *Treatment*: Within five business days of the Effective Date, except to the extent that a holder of an Allowed Class B-1 Claim agrees to less favorable treatment, and except as otherwise set forth in Article V hereof, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class B-1 Claim, the Liquidating Trustee shall pay each holder of an Allowed Class B-1 Secured Claim the full amount of its Allowed Class B-1 Secured Claim from the Liquidating Trust Assets.

(d)    *Voting*: Class B-1 is Unimpaired and, therefore, each holder of an Allowed Class B-1 Secured Claim will not be entitled to vote to accept or reject the Plan.

**2.**     Other Secured Claims (Class B-2)

(a)    *Classification*: Class B-2 consists of all Other Secured Claims.

(b)    *Allowance*: The Committee or the Liquidating Trustee shall determine the Allowed Class B-2 Claims by agreement or by an order of the Bankruptcy Court.

(c)    *Treatment*: Except to the extent that a holder of an Allowed Class B-2 Claim agrees to a different treatment, holders of Allowed Class B-2 Claims, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class B-2 Claim, each holder of an Allowed Class B-2 Claim shall receive payment of its Allowed Class B-2 Secured Claim within five (5) business days of the Effective Date.

(d)    *Voting*: Class B-2 is Unimpaired and, therefore, each holder of an Allowed Class B-6 Claim will not be entitled to vote to accept or reject the Plan.

**3.**     General Unsecured Claims (Class C-1)

13

(a)      *Classification*:  Class C-1 consists of all General Unsecured Claims.  To the extent an objection is pending against a holder of a Class C-1 Claim on the Effective Date, no Distributions shall be made until the entire Claim has been Allowed.

(b)      *Allowance*:  The Committee or the Liquidating Trustee shall determine Allowed Class C-1 Claims by agreement, by an order of the Bankruptcy Court, or as follows:

(i)      If the Debtor listed a Class C-1 Claim on its Schedule in an undisputed capacity, the holder of the Claim does not file a Proof of Claim and no party files an objection to the Claim, the Claim will be Allowed in the amount indicated on the Schedule.

(ii)      If the Debtor listed a Class C-1 Claim on its Schedule and the holder of the Claim files a Proof of Claim in an amount less than the amount of the Claim on the Schedule, the Claim will be Allowed in the amount indicated on the Proof of Claim.

(iii)      If the Debtor listed a Class C-1 Claim on its Schedule in an undisputed capacity and the holder of the Claim files a Proof of Claim in an amount higher than the amount of the Claim on the Schedule, the Proponent or the Liquidating Trustee shall file an objection to the allowance of such Claim.  The Claim will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating Trustee has administered claims objections as provided in Article V below.

(iv)      If the Debtor did not list a Class C-1 Claim on its Schedule or listed a Class C-1 Claim as disputed, unliquidated, or contingent, and the holder of the Claim files a Proof of Claim, the Proponent or the Liquidating Trustee shall file an objection to the allowance of such Claim.  The Claim will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating Trustee has administered claims objections as provided in Article V below.

(c)      *Treatment*:  Except to the extent that a holder of an Allowed Class C-1 Claim agrees to a different treatment, each holder of an Allowed Class C-1 Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class C-1 Claim, a Pro Rata share of the Liquidating Trust Beneficial Interests and shall be entitled to receive Distributions from the Liquidating Trust in accordance with Articles IV and V below.

(d)      *Voting*:  Class C-1 is Impaired and, therefore, each holder of an Allowed Class C-1 Claim is entitled to vote to accept or reject the Plan.

**4.**      Affiliate Claims (Class C-2)

(a)      *Classification*:  Class C-2 consists of all Affiliate Claims against OSF.

(b)      *Allowance*:  For purposes of voting and distribution, the Affiliate Claims shall be Allowed as filed in the Chapter 11 Case.

(c)      *Treatment*:  The holders of Allowed Affiliate Claims shall nominate an administrative agent to administer the assets received on account of the Allowed Affiliate

14

Claims, and provide notice of the nomination of the administrative agent to the Debtor, the Liquidating Trustee, and counsel for the Creditors' Committee. The nominated administrative agent for the Allowed Class C-2 Claims shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Class C-2 Claim, the following:

> (i)      the aggregate amount of $350,000 in Cash, payable within five business days after the Effective Date by the Debtor from the Class C-2 Reserve;

> (ii)     the JAB Receivable, pursuant to an assignment substantially in the form attached hereto as **Exhibit B-1**;

> (iii)    a 50% interest in the Montco Receivable pursuant to an assignment substantially in the form attached hereto as **Exhibit B-2**; and

> (iv)     all of OSF's right, title and interest in any improvements and fixtures affixed to the buildings located at the North Yard, Houma, Louisiana pursuant to an assignment in the form attached hereto as **Exhibit B-3**. For avoidance of doubt, "improvements" shall not include any personal property assets owned by OSF.

The foregoing assets will be paid or transferred by the Debtor to the nominated administrative agent for the Allowed Class C-2 Claims within five business days after the Effective Date. In addition to the foregoing, on the Effective Date, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") and the Insider Released Parties mutually release all Claims against one another, as specifically set forth in Article VIII of the Plan. Upon the Effective Date, the Creditors' Committee's objections [Docket Nos. 660-664] to the Affiliate Claims will be deemed withdrawn.

> (d)      *Voting*:  Class C-2 is Impaired and, therefore, each holder of an Allowed Class C-2 Claim is entitled to vote to accept or reject the Plan.

> **5.**      Unsecured Personal Injury Claims (Class C-3)

> (a)      *Classification*:  Class C-3 consists of all Personal Injury Claims that are not Personal Injury Lien Claims and that have not been previously settled with the Debtor, with such settlement being approved by the Bankruptcy Court and fully implemented by the parties prior to the Effective Date.

> (b)      *Allowance*:  Either the Proponent or the Liquidating Trustee shall file objections to all Class C-3 Claims such that these claims are Disputed. The Claims will be finally Allowed in an amount to be determined by the Bankruptcy Court after the Liquidating Trustee has litigated or settled such Claims as provided in Article IV below.

> (c)      *Treatment*:  Except to the extent that a holder of an Allowed Class C-3 Claim agrees to a different treatment, each holder of a Class C-3 Claim will be allowed to pursue the following as he sees fit: (i) a direct action against the applicable insurer; and/or (ii) an action

15

in which the holder of a Class C-3 Claim asserts claims against the Debtor solely for the purpose of liquidating the amount of the Claim against the Debtor and in which recovery is limited as provided in Article IV.B.7(b) below. In either case, each holder of a Class C-3 Claim shall be entitled to receive payment of his Allowed Personal Injury Claim from the proceeds of the applicable P&I Policy in accordance with the terms of such P&I Policy.  To the extent that it is determined that the Debtor is liable to any holder of such a claim, each holder of Allowed Class C-3 Claims shall receive a Pro Rata share of the Personal Injury Reserve, solely to the extent that such claim is not paid out of insurance proceeds, and shall be entitled to receive Distributions from the Personal Injury Reserve in accordance with Articles IV and V below.

(d)     *Estimation for Purposes of Personal Injury Reserve*:  Personal Injury Claims shall be Estimated for purposes of the Personal Injury Reserve in the amounts provided in Article IV.A.3. below, which is the applicable per-claim deductible under the applicable P&I Policy.

(e)     *Voting*:  Class C-3 is Impaired and, therefore, each holder of an Allowed Class C-3 Claim is entitled to vote to accept or reject the Plan.

**6.**     USSIC Claim (Class C-4)

(a)     *Classification*:  Class C-4 consists of the USSIC Claim.

(b)     *Allowance*:  For purposes of voting and distribution, the USSIC Claim shall be Allowed as filed in the Chapter 11 Case.

(c)     *Treatment*:  The holder of the Allowed Class C-4 Claim shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for the Allowed Class C-4 Claim, the aggregate amount of $400,000.00, payable no later than five business days after the Effective Date by the Debtor from the Class C-4 Reserve.  USSIC shall apply these funds first to pay the outstanding bond premiums, if any, for the bonds giving rise to the USSIC Claim.  Upon the Effective Date, the Creditors' Committee's objection [Docket No. 529] to the USSIC Claim will be deemed withdrawn.

(d)     *Voting*:  Class C-4 is Impaired and, therefore, the holder of the Allowed Class C-4 Claim is entitled to vote to accept or reject the Plan.

**7.**     Member Interests in OSF (Class D-1)

(a)     *Classification:* Class D-1 consists of Member Interests in OSF.  All of the Member Interests of OSF are believed to be held by Offshore Domestic Group, LLC.

(b)     *Treatment:*  All existing Member Interests in OSF shall be cancelled on the Effective Date.  Each holder of Member Interests in OSF shall neither receive nor retain any property or interest in property on account of such Interest and such holder shall have no Claim against the Debtor, the Liquidating Trust or otherwise on account of such cancelled Member Interest.

16

(c)    *Voting:* Class D-1 is deemed to have rejected the Plan unless the holder of such interests votes in the affirmative to accept the treatment under the Plan.

**D.**    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Proponent's or Liquidating Trustee's rights with respect to any Unimpaired Claim, including, without limitation, any legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**E.**    *Nonconsensual Confirmation.*

The Proponent reserves the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.  To the extent that any Class votes to reject the Plan, the Proponent further reserves the right to modify the Plan in accordance with Article X herein.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**    *Preservation of Causes of Action; Transfer of Assets; Establishment of Personal Injury Reserve*

**1.**    *Preservation of Causes of Action.*  Unless any Causes of Action against a person or entity are expressly waived, relinquished, exculpated, released, compromised, settled, assigned, and/or otherwise conveyed in the Plan or by Court order (such as Causes of Action against holders of Allowed Class C-2 Claims as provided above), OSF reserves any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed.  Such OSF Causes of Action include, without limitation (a) all Avoidance Actions, including insider transfers described on Exhibit D of the Disclosure Statement, and other potential Avoidance Actions against non-insiders described on Exhibit E of the Disclosure Statement, (b) the Montco Receivable, (c) the JAB Receivable, (d) the Linder Judgment, (e) any and all Claims or Causes of Action that the Debtor may have or have a right to assert against Orinoco for any alleged breach of the Plan Sponsor Commitment, (f) any and all claims that OSF may have or have a right to assert against Davie Shoring, Inc. relating to its default of its payment obligations as described in Section V.B.7. of the Disclosure Statement, (g) any and all OSF Causes of Action, whether arising before or after the date the Chapter 11 Case was filed, and related to the Personal Injury Claims or the P&I Policies, specifically including reimbursement claims against any insurers, and (h)  any Causes of Action, in addition to Avoidance Actions, OSF may assert against current or former Insiders of OSF (other than the Insider Released Parties) related to misconduct of current or former officers, directors, members, or managers of OSF, including Steve Williams and any Entity owned or controlled (directly or indirectly) by him.   The Proponent, however, has not investigated the Causes of Action and/or Avoidance Actions, if any, that may be asserted against Steve Williams and any Entity owned or controlled by him, and is relying on the representations of others that such Causes of Action/Avoidance Actions have merit.  Williams and his related Entities vehemently deny the allegations referenced in the Plan and the Disclosure Statement and will vigorously oppose any and all actions brought against them.  Nothing herein, and for the avoidance of doubt, shall prohibit any Entity from asserting any Causes of Action as a defense pursuant to applicable law, but such Entity will have no

17

authority to assert any affirmative action which the Debtor has released.

**2.**        *Transfer of Assets on Effective Date.* On the Effective Date, the Debtor shall be deemed to have irrevocably transferred and assigned the Liquidating Trust Assets to the Liquidating Trust, to hold in trust for the benefit of the holders of the Liquidating Trust Beneficial Interests pursuant to the terms of this Plan and the Liquidating Trust Agreement. Except as otherwise provided by this Plan or the Liquidating Trust Agreement, upon the Effective Date, title to the Liquidating Trust Assets shall pass to the Liquidating Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

**3.**        *Establishment of Personal Injury Reserve.*  Within five (5) business days after the Effective Date, the Liquidating Trustee will establish the Personal Injury Reserve in the total amount of $425,000.00, comprising the following amounts attributable to each filed Personal Injury Claim:

(a)        Ronald Havard: $100,000.00.

(b)        Jamone Jones: $25,000.00.

(c)        Allen Smith: $25,000.00.

(d)        John Spradley: $25,000.00.

(e)        Christopher Garner: $25,000.00.

(f)        Ronnie LeBouef: $25,000.00.

(g)        General/Contingency Reserve: $200,000.00.

The Liquidating Trustee shall hold the Personal Injury Reserve for the benefit of the holders of Class C-3 Claims.  Upon satisfaction of all Class C-3 Claims, the Liquidating Trustee shall distribute the balance of the Personal Injury Reserve, if any, to the Holders of the Liquidating Trust Beneficial Interests, as provided in this Plan for Liquidating Trust Assets that are not part of the Personal Injury Reserve.

**B.**        *Establishment of Liquidating Trust and Authority, Rights and Duties of Liquidating Trustee.*

**1.**        *Formation.* On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee, and all other necessary steps shall be taken to establish the Liquidating Trust.  The Liquidating Trust is intended to be classified for U.S. federal income tax purposes as a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d) and all relevant parties shall treat the Liquidating Trust as a liquidating trust, subject to definitive guidance to the contrary from the U.S. Internal Revenue Service.

**2.**        *Purpose of Liquidating Trust.*  The Liquidating Trust shall be established for the general purposes of winding up the Debtor's business, pursuing OSF Causes of Action transferred to the Liquidating Trust, prosecuting and resolving objections to Disputed Claims

18

against the Debtor that are payable from Liquidating Trust Assets, and liquidating and distributing the Liquidating Trust Assets, with no objective to continue or engage in the pursuit of a trade or business.

**3.**    *Causes of Action to be Transferred to Liquidating Trust*. All Causes of Action (except those Causes of Action transferred to or for the benefit of holders of Allowed Class C-2 Claims) shall be Liquidating Trust Assets transferred to the Liquidating Trustee.   The Liquidating Trustee, or its successors and assigns, shall be authorized and empowered as a representative of OSF and the Estate to institute, prosecute, settle, compromise, abandon or release all Causes of Action of the Debtor and the Estate transferred to the Liquidating Trust. Additionally, on the Effective Date, the Liquidating Trustee shall assume the prosecution of any objection, motion, adversary proceeding, or other proceeding in the Bankruptcy Court currently being prosecuted by the Committee (other than those proceedings retained under Article IV.G. below) and shall be substituted for the Committee as the applicable party in interest, without the need to file any motion to substitute or other similar document.

**4.**    *Selection of Liquidating Trustee*.  On or before the Effective Date, the Creditors' Committee shall select the Liquidating Trustee.

**5.**    *Authority of Liquidating Trustee*.   Subject only to the limitations contained in this Plan or in the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and empowered to pursue and defend any Causes of Action, including without limitation Causes of Action related to the Personal Injury Claims and the P&I Policies, as a representative of the Estate and shall have the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Bankruptcy Rule 2004, including, without limitation, the right to: (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) make Distributions to holders of Allowed Claims against OSF in accordance with this Plan; (iii) object to Disputed Claims filed against OSF and prosecute, settle or otherwise resolve such objections; (iv) object to, or defend against, Disputed Personal Injury Claims filed against OSF, whether in the Bankruptcy Court or in another court of competent jurisdiction, and prosecute, settle or otherwise resolve such objections or other actions; (v) establish and administer any reserves for Disputed Claims or Personal Injury Claims that may be required; (vi) perform administrative services related to implementation of this Plan or the Liquidating Trust Agreement; (vii) file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust; and (viii) perform such other duties as are provided in the Plan and the Liquidating Trust Agreement.

**6.**    *Oversight of Liquidating Trust*.  The Trust Oversight Committee shall oversee the administration of the Liquidating Trust in accordance with the Liquidating Trust Agreement and consistent with the Plan.

**7.**    *Claims Entitled to Distribution from the Liquidating Trust*.

(a)    *Claims Generally.*   Except to the extent another provision of this Plan controls, the Liquidating Trustee, with oversight from the Trust Oversight Committee, shall be responsible for paying the following Claims (in the order of priority shown except as provided in paragraphs (b) and (c) below), from the Liquidating Trust Assets (except to the extent already satisfied): (i) Allowed Administrative Claims and Professional Compensation Claims, in the

19

order of priority provided in the Bankruptcy Code, (ii) Allowed Priority Claims, (iii) Secured Claims of Taxing Authorities, (iv) Allowed Other Secured Claims, (v) Allowed General Unsecured Claims, (vi) Allowed Personal Injury Claims according to subparagraph (b) below, and (vii) Subordinated Claims.

        (b)   *Personal Injury Claims.*  The Liquidating Trustee, with oversight from the Trust Oversight Committee, shall be responsible for paying Personal Injury Claims from the Personal Injury Reserve, either (a) upon agreement among the Liquidating Trustee, the holder of an applicable Claim, and the applicable insurer (provided that, if any Claim is covered by insurance, any payment to be made from the Personal Injury Reserve does not exceed the applicable deductible absent a commitment by the applicable insurer to reimburse the Liquidating Trust), or (b) upon satisfaction of the following conditions: (i) the holder of the applicable Personal Injury Claim has obtained a final judgment liquidating the amount of his Claim; (ii) such holder has exhausted all remedies against the applicable insurer, and the insurer has either (1) paid the amount of such claim, less any applicable deductible, or (2) refused to pay such claim, and the holder has no further recourse against the insurer.  In the case of Paragraph IV.B.7(b)(ii)(1), the amount of the Distribution to such holder shall be the amount of the deductible, and in the case of Paragraph IV.B.7(b)(ii)(2), the amount of the Distribution to such holder shall be the amount of such holder's Pro Rata share of the Personal Injury Reserve, not to exceed such holder's designated amount of the Personal Injury Reserve as provided in Paragraph IV.A.3 above unless the Liquidating Trustee, with oversight from the Trust Oversight Committee, otherwise agrees.

        (c)   Notwithstanding the foregoing, all expenses of the Liquidating Trust shall be taxed against the gross proceeds of the Liquidating Trust and shall be satisfied prior to any Distributions on account of Claims.

    **8.**   *Procedure for Distributions from the Liquidating Trust*.  The Liquidating Trustee shall distribute Available Cash in accordance with the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Liquidating Trust Assets in the Liquidating Trustee's possession (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during the administration of the Liquidating Trust, (iii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement (including without limitation any applicable reserves).

    **9.**   *Compensation of the Liquidating Trustee*.  The Liquidating Trustee shall be entitled to reasonable compensation as set forth in the Liquidating Trust Agreement.

    **10.**   *Retention of Professionals*.  The Liquidating Trustee, with the consent of the Trust Oversight Committee, may retain and reasonably compensate counsel and other professionals to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval.

11.     *Dissolution of Liquidating Trust*.  Once all Liquidating Trust Assets have been liquidated and all Distributions required to be made by the Liquidating Trustee under the Plan have been made, the Liquidating Trust shall be dissolved and the Liquidating Trustee shall be discharged.  Notwithstanding the foregoing, in no event shall the term of the Liquidating Trust exceed five (5) years absent Bankruptcy Court approval.

12.     *Dissolution of OSF*.  The Liquidating Trustee shall have the right, in consultation with the Trust Oversight Committee, to dissolve OSF in accordance with applicable state law.

13.     *Indemnification of Liquidating Trustee*.  The Liquidating Trustee and the Liquidating Trustee's agents and professionals shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Liquidating Trustee, except those acts arising out of its or their own willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, except for any actions or inactions involving willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary due, or *ultra vires* acts. Any indemnification claim of the Liquidating Trustee, its agents or professionals, shall be satisfied from the Liquidating Trust Assets. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of its retained professionals.

C.     *Selection of the Trust Oversight Committee.*

The Trust Oversight Committee shall have three members selected prior to the Effective Date as follows:  Each ballot shall include a statement soliciting membership in the Trust Oversight Committee and a place for creditors to mark whether or not they are interested in being a member of the Trust Oversight Committee.  After review of the creditors who indicated an interest in being a member of the Trust Oversight Committee, the existing members of the Creditors' Committee will select the members of the Trust Oversight Committee, subject to the review and approval of the Bankruptcy Court as being fair and equitable.  After the Effective Date, if a member of the Trust Oversight Committee has its claim paid in full or sells its entire claim, that member will resign from the Trust Oversight Committee and will be replaced by vote of the remaining members, provided, however, that the new member must be from the same Class as the resigning member, or a representative thereof, if creditors with outstanding claims remain in such Class.  A member of the Trust Oversight Committee shall not participate in decisions in which such member has a direct financial interest distinct from any other creditor of the same Class.  By way of example, if a settlement agreement between the Liquidating Trustee and a member with respect to the Allowance of that member's Claim requires the consent of the Trust Oversight Committee, that member shall not participate in the deliberation and decision of the Trust Oversight Committee with regard to such settlement.

D.     *Operations of Debtor Between Confirmation Date and Effective Date*

The Debtor shall continue to operate as debtor-in-possession during the period from the Confirmation Date through the Effective Date.

E.    *Establishment of the Administrative Claims Bar Date.*

**1.**    The Confirmation Order shall approve the Administrative Claims Bar Date.

**2.**    Except as otherwise provided in this Article, on or before the Administrative Claims Bar Date, each holder of an Administrative Claim shall file with the Bankruptcy Court a request for payment of its Administrative Claim and serve a copy thereof so it is received substantially contemporaneous with the filing on counsel to the Liquidating Trustee and the Office of the United States Trustee for the Southern District of Texas.

**3.**    The request for payment of an Administrative Claim will be timely filed only if it is ***actually received*** by the Bankruptcy Court, counsel to the Liquidating Trustee, and the Office of the United States Trustee for the Southern District of Texas by the Administrative Claims Bar Date.

**4.**    Notwithstanding anything in this Article, Professionals shall not be required to file a request for fees and expenses arising under sections 328, 330, 331 or 503(b)(2)–(5) of the Bankruptcy Code, on or before the Administrative Claims Bar Date, as they will instead file final fee applications by the Professional Fee Claim Bar Date.

F.    *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

G.    *Creditors' Committee.*

Upon the Effective Date, the Creditors' Committee shall dissolve, and its members and Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Creditors' Committee shall be deemed to continue to exist and have authority to act in this Chapter 11 Case, and its Professionals shall be deemed retained, after such date solely with respect to: (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; (ii) review and, if appropriate, objections to any request for compensation or expense reimbursement filed by a Professional; (iii) seek reimbursement of expenses sought by a member of the Creditors' Committee; and (iv) defend against appeals of the Confirmation Order, if any.  The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.  Except for the foregoing proceedings for which the Creditors' Committee retains authority, on the Effective Date, the Liquidating Trustee shall assume the prosecution of any objection, motion, adversary proceeding, or other proceeding in the Bankruptcy Court currently being prosecuted by the Creditors' Committee and shall be substituted for the Creditors' Committee as the applicable party in interest, without the need to file any motion to substitute or other similar document.

**H.**     *Debtor's Professionals.*

Upon the Effective Date, the Debtor's Professionals shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Debtor's Professionals shall be deemed retained after such date solely with respect to:  (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; and (ii) defend against appeals of or motions for reconsideration (or similar) of the Confirmation Order, if any.  The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

**I.**     *Creditors' Committee Professionals*

Upon the Effective Date, the Professionals retained by the Creditors' Committee shall be released and discharged from all further authority, duties, responsibilities and obligations relating to and arising from the Chapter 11 Case; provided, however, that the Professionals retained by the Creditors' Committee shall be deemed retained after such date solely with respect to:  (i) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code; and (ii) (iv) defend against appeals of or motions for reconsideration (or similar) of the Confirmation Order, if any. The Liquidating Trustee shall pay the reasonable fees, costs and expenses of such Professionals incurred after the Effective Date, if the Bankruptcy Court approves such fees, costs and expenses.

## ARTICLE V
## PROVISIONS GOVERNING DISTRIBUTIONS

**A.**     *Initial Distributions to Holders of Unsecured Claims*

The Liquidating Trustee shall distribute Available Cash to Holders of Class C-1 Claims in accordance with the terms, treatment and priority provided in this Plan and the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Liquidating Trust Assets in the Liquidating Trustee's possession (including any Cash received from the Debtor on the Effective Date), except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during the administration of the Liquidating Trust, (iii) to pay reasonable expenses of the Liquidating Trust (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iv) to satisfy other liabilities incurred by the Liquidating Trust in accordance with this Plan or the Liquidating Trust Agreement (including without limitation any applicable reserves).

The Liquidating Trustee shall distribute amounts to Holders of Class C-3 Claims in accordance with the terms, treatment and priority provided in this Plan and the Liquidating Trust Agreement, beginning on the Initial Distribution Date or as soon as practicable thereafter, from the Personal Injury Reserve, except such amounts (i) as would be distributable to a holder of a Disputed Claim if such Disputed Claim had been Allowed, prior to the time of such Distribution (but only until such Claim is resolved), (ii) to pay reasonable expenses of the Liquidating Trust

(including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of the Liquidating Trust Assets), and (iii) to satisfy other liabilities incurred by the Liquidating Trustee in objecting to or defending against the Disputed Personal Injury Claims.

**B.**     *Disputed Reserve.*

Within five (5) business days after the Effective Date, the Liquidating Trustee shall establish and maintain a Disputed Reserve for Disputed Claims, in reasonable amounts as determined by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and the provisions of this Plan.

**C.**     *Subsequent Distributions.*

Any Distribution that is not made on any date specified herein or in the Liquidating Trust Agreement because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim on such date, shall be distributed as soon as practicable, and in accordance with the terms of this Plan and the Liquidating Trust Agreement, as applicable, after such Claim is Allowed by a Final Order of the Bankruptcy Court. Subsequent Distributions to all Holders of Liquidating Trust Beneficial Interests shall be made in accordance with the terms of the Liquidating Trust Agreement. On the Final Distribution Date, the Liquidating Trustee shall distribute the remaining assets of the Liquidating Trust to the persons entitled to such assets as provided in Article IV.B.7 above.

**D.**     *Delivery of Distributions.*

    **1.**     *General Provisions; Undeliverable Distributions.*

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made at (i) the address of each holder as set forth in the Schedule, unless superseded by the address set forth on proofs of Claim filed by such holder or (ii) the last known address of such holder if no proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make such efforts to determine the current address of the holder of the Claim with respect to which the Distribution was made, but no Distribution to any holder shall be made unless and until the then-current address of the holder has been determined, at which time the Distribution to such holder shall be made to the holder without interest from and after the Effective Date through the date of Distribution. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trust until the Distributions are claimed or are deemed to be unclaimed property under section 347(b) of the Bankruptcy Code as set forth in Article V.D.2 below. The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; provided, however, that such discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or the Liquidating Trust Agreement.

    **2.**     *Unclaimed Property.*

Except with respect to property not distributed because it is being held in the Disputed Reserve, Distributions that are not claimed by the expiration of one year from the Effective Date

shall be deemed to be unclaimed property under section 347(b) of the Bankruptcy Code, and the Claims with respect to which those Distributions are made shall be automatically cancelled. After the expiration of that one-year period, the right of any Entity to those Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require the Plan Agent to attempt to locate any holder of an Allowed Claim.

**E.**     *Manner of Cash Payments Under the Plan.*

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Liquidating Trustee, as applicable.

**F.**     *Time Bar to Cash Payments by Check.*

Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article V.F shall be made directly to the Liquidating Trustee by the holder of the Allowed Claim to whom the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Effective Date or the first anniversary of the date on which the Claim at issue became an Allowed Claim. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall become unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

**G.**     *Compliance with Tax Requirements.*

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable Distribution in accordance with Article V.D.1 hereof.

**H.**     *No Payments of Fractional Dollars and Minimum Distributions.*

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar. The Liquidating Trustee shall not be obligated to make any Distribution of less than $10.

**I.**   *Interest on Claims.*

Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Claim, or portion thereof, that is a Disputed Claim in respect of the period from the Effective Date to the date such Disputed Claim, or portion thereof, becomes an Allowed Claim and Distributions are made on account thereof.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or other similar charges.

**J.**   *No Distribution in Excess of Allowed Amount of Claim.*

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**K.**   *Setoff and Recoupment.*

The Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that any Debtor or Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release on behalf of the Debtor, the Estate, the Liquidating Trust as a successor in interest of any right of setoff or recoupment that any of them may have against the holder of any Claim.

**L.**   *No Distribution Pending Allowance.*

Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not distribute any Cash or other property on account of any Claim that is Disputed unless and until such Claim or portion thereof becomes Allowed.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

**M.**   *Resolution of Disputed Claims; Treatment of Subordinated Claims.*

After the Effective Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make and file objections to all Claims payable from the Liquidating Trust Assets, with the cost of pursuing the objections to such Claims shall be paid by out of the Liquidating Trust Assets.

Distributions to Holders of Claims in classes that are subject to contractual subordination provisions are subject to Distribution in accordance with such contractual subordination provisions.  Distributions shall be subject to and modified by any Final Order determining that a

Claim is a Subordinated Claim or directing distributions other than as provided in the Plan.  The right of the Liquidating Trustee to seek subordination of any Claim pursuant to section 510 of the Bankruptcy Code is fully reserved, and the treatment afforded any Claim that becomes a Subordinated Claim at any time shall be modified to reflect such subordination.  Unless the Confirmation Order provides otherwise, no Distributions shall be made on account of a Subordinated Claim.

**N.**     *Objection Deadline.*

All objections to Disputed Claims shall be filed and served upon the holders of each such Claim not later than one hundred eighty (180) days after the Effective Date, unless otherwise extended by order by the Bankruptcy Court after notice and a hearing.

**O.**     *Estimation of Claims.*

At any time the Liquidating Trustee may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Creditors' Committee, or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the estimated amount constitutes a maximum limitation on the Claim, the Liquidating Trustee may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

The Plan shall constitute a motion to reject all Executory Contracts and Unexpired Leases other than those Executory Contracts and Unexpired Leases designated for assumption either in this Plan or in the Executory Contract and Unexpired Lease Assumption and Assignment Schedule, which schedule shall be filed with the Plan Supplement.  The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all such rejections and assumptions and assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

**B.**     *Claims Based on Rejection of Executory Contracts and Unexpired Leases.*

Claims resulting from the rejection of Executory Contracts and Unexpired Leases pursuant to Article VI.A, or the expiration or termination of any Executory Contract or Unexpired Lease after the entry of the Confirmation Order, but prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) days after the Effective Date.  Any Claims arising from the rejection of an Executory Contract or Unexpired Lease pursuant to this Article VI.B. for which proofs of Claim are not timely filed

within that time period will be forever barred from assertion against the Debtor, the Estate, the Liquidating Trust, its successors and assigns, and its assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article VIII herein.  Unless otherwise ordered by the Bankruptcy Court or provided in this Plan, all such Claims that are timely filed as provided in the Plan shall be treated as Class C-1 Claims.

**C.**     *Cure Claims.*

The Debtor shall set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule the monetary cure amount the Debtor believes to be owed with respect to each Executory Contract and Unexpired Lease listed thereon.  Unless the counterparty to an Executory Contract or Unexpired Lease agrees to different treatment, the cure amount set forth on the Executory Contract and Unexpired Lease Assumption and Assignment Schedule with respect to such Executory Contract or Unexpired Lease, or any undisputed portion thereof, or a different amount of the cure Claim that is Allowed by a Final Order shall be paid in full, in Cash, by the trustee of the applicable trust to which such contract or lease has been assigned, in each case, as applicable, on the later of: (i) fifteen (15) Business Days after the Effective Date and (ii) fifteen (15) Business Days after the date such Claim is Allowed.

**D.**     *Insurance Policies.*

**1.**     Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, unless specifically rejected by order of the Bankruptcy Court, all Insurance Policies, including all P&I Policies, shall be assumed under the Plan as executory contracts.  Except as provided in Paragraph 2 below, nothing in the Plan or the Confirmation Order shall alter the rights and obligations of the Debtor or the insurers under the Insurance Policies (which rights and obligations shall be determined under the applicable Insurance Policies and applicable non-bankruptcy law relating thereto) or modify the coverage thereunder, and all of the Insurance Policies shall continue in full force and effect according to their terms and conditions.

**2.**     The Insurance Policies, including all P&I Policies, as assumed under paragraph 1 above, shall be assigned to the Liquidating Trust, effective as of the Effective Date, and shall be Liquidating Trust Assets.

**ARTICLE VII**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

The following are conditions precedent to the occurrence of the Effective Date:

**1.**     The Confirmation Order has been entered and become a Final Order.

**2.**     The Liquidating Trust Agreement has been executed and become effective, and all conditions to closing set forth therein shall have been satisfied.

**3.**     Certain of the Insider Released Parties have entered into a decommissioning contract, in form and substance reasonably acceptable to USSIC, providing for the decommissioning of the wells that are the subject of the bonds giving rise to the USSIC Claim.

28

**4.**   The Debtor shall have established the Class C-2 Reserve and the Class C-4 Reserve.

**5.**   A resolution, in form and substance reasonably acceptable to the Insider Released Parties and the Proponent, of any material issues regarding the abandonment or removal of the accommodations module referenced in Section V.B.7. of the Disclosure Statement.

**6.**   The Proponent may waive the occurrence of, or modify, any of the foregoing conditions precedent to the Effective Date.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE VIII
## INDEMNIFICATION, RELEASE, INJUNCTIVE AND RELATED PROVISIONS

**A.**   *Compromise and Settlement.*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Member Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Member Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Member Interests.

**B.**   *Releases.*

**1.**   *Releases by the Debtor and the Estate.*  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by each of the Releasees, including, without limitation, the services of the Releasees in facilitating the expeditious implementation of the Plan, the Debtor hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released and discharged by the Debtor) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.1 shall not operate to waive or release the Releasees from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable nor does the release include a release

29

for willful misconduct or gross negligence.

**2.** _Mutual Release related to Class C-2._  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Creditors' Committee and the Debtor, on behalf of itself, the Estate, and their successors and assigns, including the Liquidating Trustee (collectively, the "First Parties") hereby provide a full release to the Insider Released Parties (and each such Insider Released Party so released shall be deemed released and discharged by the First Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the Insider Released Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable. Nothing herein is intended to, nor does, it release any independent or direct claims of any creditor or third party.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the Insider Released Parties hereby provide a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the Insider Released Parties) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

**3.** _Mutual Release related to Class C-4._  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the First Parties hereby provide a full release to USSIC from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether

liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of Article VIII.B.2 shall not operate to waive or release USSIC from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

And notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, USSIC hereby provides a full release to the First Parties (and each such First Party so released shall be deemed released and discharged by the USSIC) from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence or circumstances, including actions in connection with indebtedness for money borrowed by the Debtor, existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Member Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or its Estate and further including those in any way related to the Estate, the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of this Article VIII.B.2 shall not operate to waive or release the First Parties from any obligation under this Plan, the Liquidating Trust Agreement, or the Confirmation Order, as applicable.

**4.** Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article VIII.B pursuant to Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action thereby released; (b) in the best interests of the Debtor and all holders of Claims and Member Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to any of the Releasees asserting any Claim or Cause of Action thereby released.

**C.** *Exculpation.*

Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in

connection with the Plan or Disclosure Statement or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the Plan; provided, however, that the foregoing provisions of this Article VIII.C shall have no effect on the liability of any Entity or Releasee that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Releasee shall be entitled to rely upon the advice of counsel concerning its duties; provided, further, that the foregoing provisions of this Article VIII.C shall not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or any defenses thereto.

**D.**     *Injunction.*

    **1.**     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities are enjoined from commencing or continuing in any manner against the Debtor or its successors and assigns and its assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order until the completion of the administration of the Liquidating Trusts provided for herein.

    **2.**     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Debtor in Possession, the Estate, the Creditors' Committee, the Liquidating Trust and Liquidating Trustee, their successors and assigns and their assets and properties, any other Claims or Member Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date or commencing or continuing in any manner any action or other proceeding of any kind in respect of  any Cause of Action released or settled hereunder.

    **3.**     The rights afforded in the Plan and the treatment of all Claims and Member Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Member Interests of any nature whatsoever, against the Debtor or any of its assets or properties.  On the Effective Date, all such Claims against, and Member Interests in, the Debtor shall be satisfied and released in full.

    **4.**     Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Parties and Entities are enjoined, on and after the Effective Date until the completion of the administration of the Liquidating Trusts provided for herein, on account of any Claim or Member Interest satisfied and released hereby, from:

        (a)     commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, its successors and assigns, and its assets and properties;

        (b)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, its successors and assigns, and its assets and properties;

(c)      creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of the Debtor; or

(d)      asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any Debtor or against the property or estate of any Debtor, except to the extent a right to setoff, recoupment or subrogation is asserted with respect to a timely filed proof of claim.

**E.**     *Release of Liens.*

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate, shall be fully released and discharged, and all of the Debtor' rights, title and interests in such property shall be distributed or transferred in accordance with this Plan.

**F.**     *Carve-Out*

Nothing in this Article VIII or elsewhere in the Plan shall release any Causes of Action retained by the Debtor and transferred to the Liquidating Trust under Article IV hereof.

## ARTICLE IX
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and with respect to all matters related to the Chapter 11 Case, the Debtor, the Estate, all property of the Estate, the settlement with the Insider Released Parties in Class C-2, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

**1.**      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Member Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance, secured status or priority of Claims or Member Interests;

**2.**      grant, deny or otherwise resolve any and all applications of Professionals for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

**3.**      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which a Debtor was party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

**4.**      ensure that Distributions to holders of Allowed Claims and Member Interests are accomplished pursuant to the provisions of the Plan;

**5.**      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may

be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date, provided, however, the right of the Liquidating Trustee to commence actions in all appropriate jurisdictions shall be fully reserved;

      **6.**      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

      **7.**      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

      **8.**      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

      **9.**      enforce the various provisions of the Plan and the Liquidating Trust Agreement;

      **10.**      enforce the Injunction set forth in Article VIII.D hereof;

      **11.**      resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article VIII herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

      **12.**      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

      **13.**      resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

      **14.**      enter an order and/or the decree contemplated in Bankruptcy Rule 3022 concluding the Chapter 11 Cases.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

**A.**    *Final Fee Applications.*

The deadline for submission by Professionals of final applications for Bankruptcy Court approval of Accrued Professional Compensation shall be the Professional Fee Claim Bar Date.

**B.**    *Payment of Statutory Fees.*

All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable. From

and after the Effective Date, the Liquidating Trustee shall be liable for and shall pay the fees under 28 U.S.C. § 1930 assessed against the OSF Estate under 28 U.S.C. § 1930 until entry of a Final Decree closing the case.  In addition, the Liquidating Trustee shall file post-confirmation quarterly reports or any pre-confirmation monthly operating reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines, until entry of an order closing or converting the case.  The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an administrative claim against the Debtor and its Estate.

**C.**    *Modification of the Plan.*

Subject to the limitations contained in the Plan:  (i) the Proponent reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan, prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; and (ii) after the entry of the Confirmation Order, the Liquidating Trustee, with the prior written consent of the Trust Oversight Committee, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**D.**    *Revocation of Plan.*

The Proponent reserves the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order**,** and to file subsequent chapter 11 plans.  If the Proponent revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Member Interests; (b) prejudice in any manner the rights of the Debtor, the Creditors' Committee, or any other Entity; or (c) constitute an admission of any sort by the Debtor, the Creditors' Committee, or any other Entity.  Notwithstanding the foregoing, the Procedures Order shall remain in full force and effect.

**E.**    *Successors and Assigns.*

The rights, benefits and obligations of any Entity named or referred to herein and the Plan Supplement shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**F.**    *Governing Law and Construction.*

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Texas, without giving effect to the principles of conflict of laws thereof.  Any inconsistency between the Plan and the Confirmation Order shall be construed in favor of and so as to give effect to the

Confirmation Order. All exhibits and schedules to the Plan and the Plan Supplement shall be incorporated in the Plan by this reference, as though set forth at length herein.

**G.** *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor, the Creditors' Committee, or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (i) the Debtor, or the Creditors' Committee with respect to the holders of Claims or Member Interests or other parties in interest; or (ii) any holder of a Claim or Member Interest or other party-in-interest prior to the Effective Date.

**H.** *Article 1146 Exemption.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

**I.** *Section 1125(e) Good Faith Compliance.*

The Debtor, the Creditors' Committee and each of their respective Representatives, shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code, and the Confirmation Order shall including a finding of fact to that effect.

**J.** *Further Assurances.*

The Debtor, the Creditors' Committee, all holders of Claims and Member Interests receiving Distributions hereunder and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**K.** *Service of Documents.*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor and the Creditors' Committee, in addition to any direction of service of notice by any order, shall be sent by first class U.S. mail, postage prepaid as follows:

To the Debtor:

David Weinhoffer
Offshore Specialty Fabricators, LLC
20445 State Highway 249, Suite 280
Houston, TX 77070

36

*with a copy to*:

> Diamond McCarthy LLP
> Two Houston Center
> 909 Fannin, 37th Floor
> Houston, Texas 77010
> Attn: Michael Fritz

To the Creditors' Committee

> Baker Donelson
> 1301 McKinney St., Suite 3700
> Houston, Texas 77010
> Attn: Daniel J. Ferretti

**L.**    *Filing of Additional Documents.*

On or before the Effective Date, the Proponent may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**M.**    *No Stay of Confirmation Order.*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

**N.**    *Bankruptcy Code Section 1141 Discharge.*

The Debtor shall not receive a discharge under chapter 11 of the Bankruptcy Code.

[*Remainder of page intentionally left blank.*]

37

Dated: September 10, 2018
Houston, Texas

**Official Committee of Unsecured Creditor**
**Offshore Specialty Fabricators, LLC**

**By**:   **Retif Oil & Fuel, LLC**
**Its:**   **Chairman**

By:    /s/ *Kenneth J. Retif*
Its:    President

Prepared by:

/s/ *Daniel J. Ferretti*
Susan C. Mathews
Texas Bar No. 05060650
smathews@bakerdonelson.com
Daniel J. Ferretti
Texas Bar No. 24096066
dferretti@bakerdonelson.com
1301 McKinney St., Suite 3700
Houston, TX 77010
Telephone:  (713) 650-9700
Facsimile:  (713) 650-9701

              -AND-

Jan M. Hayden
(Admitted Pro Hac Vice)
Louisiana Bar No. 6672
jhayden@bakerdonelson.com
Edward H. Arnold, III
Louisiana Bar No. 18767
Federal ID No. 17158
harnold@bakerdonelson.com
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana 70170
Telephone: (504) 566-8645
Facsimile: (504) 585-6945

*Attorneys for Official Committee of Unsecured Creditors for Offshore Specialty Fabricators,*
*LLC*

## LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement ("Agreement") is made effective as of _____, 2018, by and among OFFSHORE SPECIALTY FABRICATORS, LLC ("Debtor"), debtor and debtor-in-possession in the Chapter 11 case pending in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court") with a caption of In re Offshore Specialty Fabricators, LLC, Case No. 17-35623, and _____ as the Liquidating Trustee ("Liquidating Trustee"), and the Trust Oversight Committee.

### RECITALS:

This Liquidating Trust Agreement is made and entered into pursuant to the terms and provisions of the First Amended Plan of Liquidation of the Official Committee of Unsecured Creditors, dated August 24, 2018 (as modified and amended, the "Plan") and the order of the Bankruptcy Court, entered in the Debtor's case under Chapter 11 of Title 11 U.S.C. confirming the Plan, approving this Agreement and authorizing the appointment of the Liquidating Trustee. All terms defined in the Plan shall have the same meaning when used herein unless otherwise defined herein or unless the context hereof clearly requires otherwise. Terms which are defined in the Bankruptcy Code and are not otherwise defined in the Plan or herein shall have the definition ascribed to them by the Bankruptcy Code. All applicable terms and provisions of the Plan are incorporated herein by this reference and the parties to this Agreement shall be bound by such terms and provisions.

The primary purpose of this Liquidating Trust is to hold, administer and liquidate the Liquidating Trust Assets for the benefit of the Holders of the Beneficial Interests in the Liquidating Trust under the Plan (collectively, the "Holders"), consistent with Treas. Reg. § 301.7701-4(a) and (d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or in the Plan or such as is otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Liquidating Trust Assets.

### DECLARATION OF TRUST

**NOW, THEREFORE**, in order to declare the terms and conditions hereof, and in consideration of the premises, of the due acceptance and confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto have executed this Agreement and the Holders hereby vest in the Liquidating Trustee and its successors in trust successors and assigns, all right, title and interest in the Liquidating Trust Assets defined in the Plan, including, without limitation, the right to receive, hold, pursue, liquidate and distribute all or any portion of the Liquidating Trust Assets as set forth herein and in the Plan.

**TO HAVE AND TO HOLD** the Liquidating Trust Assets unto the Liquidating Trustee and its successors in trust and successors and assigns forever; in trust under and subject to the terms and conditions set forth herein and in the Plan and for the benefit of the Holders, each of which shall be treated as the grantors and deemed owners of this Liquidating Trust; provided, however, upon the final liquidation of all of the assets of the Liquidating Trust in accordance



with the terms and conditions of this Agreement and the Plan, this Agreement shall cease, terminate and be of no further force and effect.  Further provided, however, that the Liquidating Trust shall not remain in existence more than five (5) years from the date of this Agreement except as otherwise provided in the Plan.

It is hereby further covenanted and declared that the assets of the Liquidating Trust are to be held, administered and applied by the Liquidating Trustee subject to the further covenants, conditions and terms hereinafter set forth and set forth in the Plan, and if any inconsistency exists between the terms of this Agreement and the Plan, the terms of the Plan shall control.

The foregoing grants, assignments, transfers and conveyances are in trust for the benefit of the Holders and are subject to the terms of this Agreement and the provisions of the Plan applicable to the Liquidating Trust.  For tax purposes, this transfer will be treated as a deemed transfer to the Holders followed by a deemed transfer by the Holders to the Liquidating Trust, in accordance with the provisions of Revenue Procedure 94-45, 1994-2 C.B. ¶ 684.  For federal tax purposes, this transaction should be treated as the Debtor satisfying its debt to the particular creditor for an amount equal to the Allowed Claim of such Holder.  With respect to the Debtor, this transaction may create income from the cancellation of indebtedness (COD) pursuant to Internal Revenue Code (IRC) Section 108 or gain or loss from the sale or exchange of property.  The tax characterization of the transaction will depend on the fair market of the property transferred, the Debtor's adjusted tax basis in the property, and whether the creditor's claim was a recourse or non-recourse liability.   The creditor's adjusted basis in the property deemed transferred should be equal to the Allowed Claim of the Holder on the date of the deemed transfer.

The Liquidating Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Section 301.7701-4(d) of the United States Treasury Regulations and as a grantor trust in favor of the Holders pursuant to Section 1.671-4(a) thereof, and (ii) to comply with the requirements of a liquidating trust, which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

## ARTICLE II

### TRUSTEE'S ACCEPTANCE OF ASSETS; AGREEMENT TO PERFORM OBLIGATIONS AS TRUSTEE AND TRUST OVERSIGHT COMMITTEE

**2.1** **Acceptance.**   The Liquidating Trustee accepts the trust imposed upon the Liquidating Trustee by this Agreement, and agrees to observe and perform that Trust, upon and subject to the terms and conditions set forth herein and in the Plan.

**2.2** **Agreement to Perform Obligations.**  The Liquidating Trustee and the Members of the Trust Oversight Committee hereby promise and agree to undertake and perform the obligations created hereunder and the obligations to be performed by the Liquidating Trustee and the Trust Oversight Committee under the Plan.

## ARTICLE III

## POWERS OF THE TRUSTEE AND TRUST OVERSIGHT COMMITTEE

**3.1     Title.**  Legal title to all of the Liquidating Trust Assets shall be vested in the Liquidating Trustee, except that the Liquidating Trustee shall have the power to cause legal title (or evidence of title) to any of the Liquidating Trust Assets to be held by any nominee or person, on such terms, in such manner, and with such power consistent with this Agreement and the Plan as the Liquidating Trustee may determine.

**3.2     General Powers of Liquidating Trustee.**  Except as may be otherwise provided in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court, and the advice and consent of the Trust Oversight Committee as provided in the Plan, the Liquidating Trustee shall have, without prior or further authorization, control and authority over the Liquidating Trust Assets, over the administration and disposition thereof, and over the supervision and conduct of the Liquidating Trust to the same extent as if the Liquidating Trustee were the sole owner thereof in its own right; but at all times the Liquidating Trust Assets shall be held for the benefit of the Holders consistent with the terms of the Plan.  No person dealing with this Liquidating Trust shall be obligated to inquire as to the authority of the Liquidating Trustee in connection with the acquisition, administration or disposition of assets which comprise the Liquidating Trust.  In connection with the administration and use of the Liquidating Trust Assets, the Liquidating Trustee's powers, except as otherwise expressly limited by the Plan or in this Agreement, shall include, but shall not be limited to, the following: (i) to effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) to make Distributions to holders of Allowed Claims against the Debtor in accordance with the Plan; (iii) to object to Disputed Claims filed against the Debtor and prosecute, settle or otherwise resolve such objections; (iv) to object to, or defend against, Disputed Personal Injury Claims filed against the Debtor, whether in the Bankruptcy Court or in another court of competent jurisdiction, and prosecute, settle or otherwise resolve such objections or other actions; (v) to establish and administer any reserves for Disputed Claims or Personal Injury Claims that may be required; (vi) to perform administrative services related to implementation of the Plan or this Agreement; (vii) file all necessary tax returns and other filings with governmental authorities on behalf of the Liquidating Trust; and (viii) perform such other duties as are provided in the Plan and this Agreement.  In addition, the Liquidating Trustee shall have the power to engage in any additional acts not specifically enumerated or excluded herein, provided that such proposed acts are in the furtherance of the purposes for which this Liquidating Trust has been created.

**3.3     General Powers of Trust Oversight Committee.**  The Trust Oversight Committee shall provide advice and consent to the Liquidating Trustee as set forth in the Plan. The Trust Oversight Committee shall consist of the following Members: _____     (the     "Members"). Further, the following actions are subject to the advice and consent of the Trust Oversight Committee in accordance with the following procedures.  The Liquidating Trustee shall provide written notice by e-mail of each of the following proposed actions to each Member (a "Proposed Action"):

(a)     any sale(s), disposition(s) or distribution(s) of any Liquidating Trust Assets or funds in the Personal Injury Reserve greater than or equal to $25,000;

(b)     any distributions to be made under the Plan greater than or equal to $25,000 in the aggregate;

(c)     Approval of budgets and amount of reserves to be held by the Liquidating Trustee;

(d)     the Liquidating Trustee's employment of any professionals;

(e)     any tax payments, withholdings, filings and elections;

(f)     any objections to and/or settlements of Claims or Interests greater than or equal to $25,000;

(g)     any prosecution and/or non-prosecution and/or settlement of any adversary proceeding, contested matter or other litigation proposed or undertaken by the Liquidating Trustee, including but not limited to the Personal Injury Claims and the Cause of Actions, with a value (as reasonably determined by the Liquidating Trustee) greater than or equal to $25,000;

(h)     any proposed post confirmation modifications of the Plan;

(i)     any designation of a successor to serve as Liquidating Trustee;

(j)     any payment of professional compensation and expenses; and,

(k)     any extension of the term of existence for the Liquidating Trust.

Thereafter, each Member shall have seven (7) days (the "Objection Deadline") after service of the Proposed Action to review the Proposed Action.  In the event that a Member has an objection to the Proposed Action, the Member shall object in writing by e-mail to the Liquidating Trustee so that the objection is received prior to the expiration of the Objection Deadline (an "Objection"), with a copy of the Objection sent to the remaining Members and the Liquidating Trustee.

In the event that there is no timely Objection, the Liquidating Trustee shall advise the Trust Oversight Committee that no timely Objection was received and the Liquidating Trustee may proceed with the Proposed Action without further notice to or consultation with the Trust Oversight Committee.

In the event that there is a timely Objection, the Liquidating Trustee and the objecting Member shall promptly consult with each other to attempt to resolve the Objection.  In the event that an Objection relates to any professional fee invoice, the uncontested portion of that invoice shall be paid, notwithstanding the pending Objection.

If the Liquidating Trustee is unable to resolve the Objection, the Trust Oversight Committee shall meet telephonically within five (5) business days and consider the Proposed Action and the Objection.  At that meeting, each Member shall be entitled to one vote and any action of the Trust Oversight Committee shall require a 2/3 majority vote.  The outcome of such vote shall be binding on the Liquidating Trustee with respect to the Objection.

In addition to the Proposed Action procedures set forth above, the Liquidating Trustee shall furnish to the Trust Oversight Committee, as soon as practical after the end of each calendar quarter, a cash reconciliation statement and a report on all Disputed Claims resolved and all Liquidating Trust Assets disposed of during the preceding calendar quarter.

The Bankruptcy Court shall retain exclusive jurisdiction to resolve any disputes between the Liquidating Trustee and the Trust Oversight Committee or between any Members of the Trust Oversight Committee.

**3.4    Operation of Trust.**  The Liquidating Trustee shall, in accordance with the terms of the Plan, distribute to the Holders the Liquidating Trust's net income plus all net proceeds from the Disposition of assets at such times as the Liquidating Trustee may determine in the Liquidating Trustee's discretion, but in no event less often than annually, except that the Liquidating Trust shall retain an amount of net proceeds or net income reasonably necessary, in the Liquidating Trustee's reasonable discretion, to maintain the value of its assets or to meet claims and contingent liabilities (including Disputed Claims and Personal Injury Claims), and that the Liquidating Trustee shall distribute the Liquidating Trust Assets, including any income or proceeds from Disposition, on the Final Distribution Date in the Plan.  In addition, the Liquidating Trustee will make continuing efforts to dispose of the Liquidating Trust Assets, make timely distributions pursuant to the Plan, and not unduly prolong the duration of the Liquidating Trust.

**3.5    Limitation of Trustee.**  Without limiting the generality of the foregoing Sections 3.2 and 3.5, the Liquidating Trustee shall not permit the Liquidating Trust to hold any operating assets of a going business, a partnership interest in a partnership that holds operating assets, or 50% or more of the stock of a corporation with operating assets.  In addition, the Liquidating Trustee shall not permit the Liquidating Trust to receive transfers of listed stocks or securities or other readily marketable assets, and the Trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.  The investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

**3.6    Retention of Attorney and Accountants.**  Without limiting them Liquidating Trustee's or the Trust Oversight Committee's powers under the Plan, the Liquidating Trustee and the Trust Oversight Committee may retain counsel and qualified accountants of the Liquidating Trust's choosing, to perform such services as are necessary or appropriate in connection with the administration of this Liquidating Trust.

## ARTICLE IV

## THE TRUSTEE AND THE TRUST OVERSIGHT COMMITTEE – RESIGNATION, REMOVAL, TRUST CONTINUANCE, COMPENSATION, STANDARD OF CARE, RELIANCE BY TRUSTEE

**4.1**    **Resignation.**   The Liquidating Trustee may resign by an instrument in writing signed by it and filed with the Bankruptcy Court provided that the Liquidating Trustee shall continue to serve as Liquidating Trustee after its resignation until the appointment of a successor Liquidating Trustee shall become effective in accordance with Section 4.3 or the Bankruptcy Court shall otherwise order.

A Member of the Trust Oversight Committee may resign by an instrument in writing signed by the Member and filed with the Bankruptcy Court.  In the event of a resignation, the remaining Members of the Trust Oversight Committee shall designate a successor.  Until such vacancy is filled, the Trust Oversight Committee shall function with such reduced number.

**4.2**    **Removal.**   The Bankruptcy Court may, for cause shown, remove the Liquidating Trustee and/or any Member of the Trust Oversight Committee and appoint a successor.

**4.3**    **Appointment of Successor Trustee.**   In the event of the resignation of the Liquidating Trustee, the Liquidating Trustee, subject to the advice and consent of the Trust Oversight Committee as set forth in the Plan, may designate a successor Liquidating Trustee.  In the event of the death, resignation, incompetency, total disability or removal of the Liquidating Trustee, the Bankruptcy Court shall have the authority, to appoint a successor Liquidating Trustee.  Such appointment may specify the date on which such successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and to the departing Liquidating Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the departing Liquidating Trustee shall become effective and such successor Liquidating Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the departing Liquidating Trustee.

**4.4**    **Trust Continuance.**   The resignation or removal of the Liquidating Trustee or any Member of the Trust Oversight Committee shall not operate to terminate the Liquidating Trust created by this Agreement or to revoke any existing agency relationship created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Liquidating Trustee, such Liquidating Trustee shall promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Agreement and the vesting of the Liquidating Trust Assets then held by the Liquidating Trustee to his successor; deliver to the successor Liquidating Trustee all documents, instruments, records and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

**4.5**    **Compensation.**   The Liquidating Trustee and the Members and any successors shall be entitled to compensation as follows: [***to be determined***].

**4.6    Reliance by Trustee**.  The  Liquidating Trustee may rely, and shall be fully protected in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document which it, in good faith, believes to be genuine and has been signed or presented by the proper party or parties or, in the case of cables, telecopies and telexes, to have been sent by the proper party or parties.  In the absence of bad faith, willful misfeasance, gross negligence or willful disregard of its duties, the Liquidating Trustee may conclusively rely as to the truth of statements and correctness of the opinions expressed therein.  The Liquidating Trustee may consult with counsel and any opinion of counsel shall be full and complete authorization and protection in respect of any action taken or suffered by him in accordance therewith.  The Liquidating Trustee shall have the right at any time to seek instructions concerning the administration, management or disposition of the Liquidating Trust Assets from the Bankruptcy Court.

**4.7    Standard of Care**.  The Liquidating Trustee and the Members of the Trust Oversight Committee, and their respective professionals, shall not be personally liable to the Liquidating Trust or the Holders except for such of its own acts as shall constitute fraud, bad faith, gross negligence, willful misconduct or willful disregard of its/his duties.  Except as aforesaid, the Liquidating Trustee and the Members of the Trust Oversight Committee, and their respective employees, professionals, agents and representatives shall be entitled to be exonerated and indemnified from time to time from the Liquidating Trust Assets against any and all losses, claims, costs, expenses and liabilities arising out of or in connection with the Liquidating Trust Assets or the affairs of this Liquidating Trust, including, but not limited to, liability for taxes and expenses (including legal fees) incurred due to the defense of any such claim.  In addition, none of the above parties shall have any liability whatsoever for performance of their duties hereunder to any non-Holder.

**4.8    Liquidating Trustee and Members of Trust Oversight Committee Not Personally Liable Except to Trust and Holders.**  Any person dealing with the Liquidating Trustee and/or the Trust Oversight Committee shall look only to the assets in the Liquidating Trust to satisfy any liability incurred by the Liquidating Trustee and/or Trust Oversight Committee to such person in carrying out the terms of this Liquidating Trust, and the Liquidating Trustee and/or Trust Oversight Committee shall have no personal or individual obligation to satisfy any such liability.  Subject to the terms of this Agreement as set forth above, this provision does not diminish the liability or responsibility of the Liquidating Trustee and/or Trust Oversight Committee to the Holders in connection with the performance of the Liquidating Trustee's and Trust Oversight Committee's duties hereunder.  No Holder shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon or under or with respect to the trust estate.

**ARTICLE V**

**RETENTION OF JURISDICTION**

**5.1    Jurisdiction.**  The  Bankruptcy Court shall retain jurisdiction over the Liquidating Trust, the Liquidating Trustee, the Trust Oversight Committee and the Liquidating Trust Assets as provided in the Plan.

# ARTICLE VI

## TAX ISSUES

**6.1** **Required Filing**.  The Liquidating Trustee shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns) as the Liquidating Trustee shall, with the advice and assistance of professionals engaged by the Liquidating Trustee, including but not limited to legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Liquidating Trust.  The Liquidating Trustee shall file returns for the Liquidating Trust as a grantor trust pursuant to Sections 1.671-4(a) and 1.671 4(b)(3)(ii) of the United States Treasury Regulations.

**6.2** **Federal Income Tax Information.**  As soon as practicable after the close of each calendar year, but in no event later than March 15th, the Liquidating Trustee shall mail to each Holder of record during such year, a statement showing information sufficient for each Holder to determine its share of income, deductions and credits for federal income tax purposes in accordance with §§1.671.4(a) and 1.67104(b)(3) of the United States Treasury Regulations.

**6.3** **Tax Attributes and Characteristics of the Trust.**  The Holders of the Liquidating Trust shall be treated as its grantors and deemed owners.  The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to § 1.671-4(a), or (b) as appropriate, of the United States Treasury Regulations.  Accordingly, all earnings of the Liquidating Trust, including earnings retained in reserve accounts (including, without limitation, the Personal Injury Reserve and the Disputed Claim Reserve), if any, will be allocated to the Holders on an annual basis and each Holder shall be responsible to report and pay the taxes due on his/its respective proportionate share of the Liquidating Trust's income whether or not amounts are actually distributed by the Liquidating Trustee to the Holders to pay the taxes.  The value of the Liquidating Trust Assets transferred into the Liquidating Trust shall be the fair market value of such Liquidating Trust Assets at the time of such transfer.  The Liquidating Trust Assets transferred to the Liquidating Trust shall be valued consistently by all parties including, but not limited to, the Debtor and the Holders, and these valuations will be used for federal income tax purposes.

**6.4** **Revenue Ruling Requests.**  The Liquidating Trustee on behalf of Holders may, but shall not be required to, file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Liquidating Trust classified as a liquidating trust as described in Treas. Reg. § 301.7701-4(d).

# ARTICLE VII

## MISCELLANEOUS

**7.1** **Notices**.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be delivered personally or by certified United States mail, return receipt requested, postage prepaid:

If to the Liquidating Trustee, at:

If to Members of the Trust Oversight Committee:

Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice pursuant to the provisions of this Section 7.1 to the entity to be charged with knowledge of such change.

**7.2** **Effectiveness.** This Agreement shall become effective upon the Effective Date of the Plan. In the event of any conflict between the terms of this Agreement and the Plan, the terms of this Agreement shall control.

**7.3** **Counterparts.** This Agreement may be executed in one or more counterparts, all of which shall be taken together to constitute one and the same instrument.

**7.4** **Governing Law**. This Agreement shall be governed by, construed under and interpreted in accordance with, the laws of the State of Texasand the applicable provisions of the Internal Revenue Code and the Treasury Regulations promulgated thereunder, specifically Treas. Reg. 301.7701-4(d).

**7.5** **Headings**. Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

**7.6** **Severability**. Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

**7.7** **Amendments.** Upon the request of the Liquidating Trustee, with the advice and consent of the Trust Oversight Committee in accordance with the Plan, this Agreement may be amended from time to time with the approval of the Bankruptcy Court, and, upon request, after a hearing thereon.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK -**

**SIGNATURES FOLLOW ON NEXT PAGES]**

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement or caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

<u>**DEBTOR:**</u>

**OFFSHORE SPECIALTY FABRICATORS, LLC**

By: _____

Name: David R. Weinhoffer

Title: Chief Restructuring Officer

<u>**LIQUIDATING TRUSTEE:**</u>

**[TBD]**

By: _____

Name: _____

Title: _____

**<u>TRUST OVERSIGHT COMMITTEE</u>:**

**[TBD]**

By: _____

Name: _____

Title: _____


**[TBD]**

By: _____

Name: _____

Title: _____


**[TBD]**

By: _____

Name: _____

Title: _____

## ASSIGNMENT AND TRANSFER OF CLAIM

**Offshore Specialty Fabricators, LLC** ("OSF"), having an address of c/o Diamond McCarthy LLP, Two Houston Center, 909 Fannin, 37th Floor, Houston, Texas 77010, Attn: Michael Fritz, for good and valuable consideration, does hereby unconditionally and irrevocably  transfer and assign to **Offshore Domestic Group, LLC** ("ODG"), having an address of c/o Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002, Attn: Tad Davidson, all of OSF's right, title and interest in, to and under the following:

(a)     the Master Service Agreement dated as of [_____], between OSF and JAB Energy Solutions II, LLC ("JAB") (the "Agreement Rights");

(b)     the claims, rights and remedies of OSF and/or its affiliates (the "Litigation Claims") in the action styled *JAB Energy Solutions II, LLC and Allison Offshore Services II, LLC v. Offshore Specialty Fabricators, Inc. and Fairway Offshore Exploration, Inc.*, Cause No. 2016-48155, pending in the District Court for the 151st Judicial District of Harris County, Texas (the "Proceedings") (together, the Agreement Rights and the Litigation Claims shall be referred to as the "Purchased Assets");

(c)     all rights, benefits and remedies relating to the Purchased Assets, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed by any party with respect to the Purchased Assets or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Assets, whether under a plan of reorganization or liquidation, pursuant to the Proceedings or any other reorganization, liquidation or litigation proceeding, or otherwise; (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that OSF may have, whether against JAB, its affiliates, or any other party, arising out of or in connection with the Purchased Assets; (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Assets; and (iv) the agreements, if any, under which OSF or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Assets;

(d)     all guaranties and all collateral and security of any kind for or in respect of the foregoing;

(e)     any and all proceeds of any of the foregoing.

(collectively, as described in clauses (a), (b), (c), (d), and (e), the "Transferred Rights").  This Assignment and Transfer of Claim (this "Assignment") shall be deemed an absolute and unconditional transfer and assignment of the Transferred Rights, shall not be deemed to create a security interest except as may be otherwise provided herein, and shall not effect an assignment or transfer to or assumption by ODG of any obligation or liability of OSF or its affiliates under or in connection with the Transferred Rights, any and all of which obligations and liabilities are and shall remain the obligations and liabilities of OSF or its affiliates.

EXHIBIT
**B-1**

OSF hereby represents and warrants to ODG and to ODG's successors and assigns that (a) OSF owns and has good and marketable title to the Transferred Rights and has not previously assigned, sold or pledged any of its right, title or interest in or to any of the Transferred Rights, or the underlying Master Agreement or Litigation Claims, to any third party, in whole or in part; (b) subject to Bankruptcy Court approval, OSF is duly authorized and empowered to execute and perform its obligations under this Assignment and Transfer of Claim (this "Agreement"); and (c) OSF has not received a distribution or any proceeds, purchase price or other payment in or on account of the Transferred Rights, except as previously disclosed to ODG.

All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein.  ODG shall be entitled to transfer its rights hereunder and in the Transferred Rights without any notice to or the consent of OSF.

Except as expressly stated herein, the Transferred Rights are transferred and assigned to ODG on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, without recourse and without representation or warranty of any kind.  Without limiting the foregoing, ODG acknowledges and agrees that OSF makes no representation or warranty with respect to any of the following: (a) the validity, enforceability or collectability of the Transferred Rights, (b) the financial condition or creditworthiness of JAB or any other obligor with respect to the Transferred Rights, or (c) the existence of any claims, offsets, or other defenses to payment of any amounts with respect to the Transferred Rights.  ODG acknowledges that the ultimate recovery on the Transferred Rights may be significantly less than the face or asserted amount of the Transferred Rights, that there may indeed be no recovery at all, and that ODG shall have no recourse to OSF for any loss or deficiency.  Aside from breach of any of the express warranties and representations made by OSF herein, no event or condition shall entitle ODG to have the Transferred Rights repurchased by OSF.

OSF agrees that ODG, as full owner of the Transferred Rights, may prosecute, collect, settle, compromise and grant release on the Transferred Rights without the consent of OSF.  OSF recognizes ODG's right to vote, credit bid, release, assign, or otherwise dispose of the Transferred Rights sold hereunder.  OSF hereby waives any objection to the transfer of the Transferred Rights to ODG, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of an application, motion or hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or other applicable law or rules, and consents to the substitution of ODG for OSF for all purposes in all bankruptcy and litigation proceedings relating to the Transferred Rights, including, without limitation, the Proceedings.  OSF acknowledges and understands, and hereby stipulates, that orders may be entered without further notice to OSF transferring to ODG the Transferred Rights, recognizing ODG as the sole owner and holder of the Transferred Rights, and directing that all payments or distributions of money or property in respect of the Transferred Rights be delivered or made to ODG.  Without limiting the foregoing, upon OSF's delivery to ODG of its executed signature page to this Agreement, OSF hereby authorizes ODG to file, at ODG's expense, any substitution motion or other pleadings in the Proceedings necessary to provide adequate notice of the transfer of the Transferred Rights and to substitute ODG for OSF as the true party in interest with respect to the Transferred Rights.

All payments and distributions made on account of the Transferred Rights are for the benefit of ODG.  OSF hereby expressly directs, or agrees to direct, any party, including without limitation JAB, to pay to ODG any payments or distributions made on account of the Transferred Rights.  Unless otherwise instructed by ODG, OSF shall promptly (but in any event no later than five (5) business days) remit any payments, distributions or proceeds received by OSF after the date of this Agreement in respect of the Transferred Rights to ODG.  OSF agrees to forward to ODG, as soon as reasonably practicable, all notices received by OSF with respect to the Transferred Rights.

Each of OSF and ODG agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement.  This Agreement shall be binding upon, and inure to the benefit of, the parties and each of their successors and assigns.

OSF's and ODG's rights and obligations under this Agreement shall be governed by and interpreted and determined in accordance with the laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).  OSF and ODG each submit to the jurisdiction of the courts located in the County of Harris in the State of Texas.  OSF and ODG each consent to service of process by certified mail at its address listed above.

IN WITNESS WHEREOF, the undersigned hereto set their hands this _____ day of _____, 2018.

**Offshore Specialty Fabricators, LLC**

By: _____

      Signature

David Weinhoffer, Chief Restructuring Officer
_____
Print Name/Title

_____        _____
Telephone #                Email Address


**Offshore Domestic Group, LLC**

By: _____        _____
      Signature                              Print Name/Title

_____        _____
Telephone #                Email Address

## PARTIAL ASSIGNMENT AND TRANSFER OF CLAIM

**Offshore Specialty Fabricators, LLC** ("OSF"), having an address of c/o Diamond McCarthy LLP, Two Houston Center, 909 Fannin, 37th Floor, Houston, Texas 77010, Attn: Michael Fritz, for good and valuable consideration, does hereby unconditionally and irrevocably transfer and assign to **Offshore Domestic Group, LLC** ("ODG"), having an address of c/o Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, Texas 77002, Attn: Tad Davidson, an undivided 50% interest in OSF's right, title and interest in, to and under the following:

(a)     Claim Nos. 213 and 214 of OSF, as more specifically set forth below (collectively, the "Claim"), against Montco Offshore, Inc. and Montco Oilfield Contractors, LLC, Debtors (collectively the "Debtor") in the jointly administered bankruptcy case pending in the United States Bankruptcy Court for the Southern District of Texas (the "Court"), Case No. 17-31646 (the "Proceedings");

(b)     all rights and benefits of OSF relating to the Claim, including without limitation the Proof of Claim identified below if any; and

(c)     all rights, benefits and remedies relating to the Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed by any party with respect to the Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Claim, whether under a plan of reorganization or liquidation, pursuant to the Proceedings or any other reorganization, liquidation or litigation proceeding, or otherwise; (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that OSF may have, whether against the Debtor, its affiliates, or any other party, arising out of or in connection with the Claim; (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Claim; and (iv) the agreements, if any, under which OSF or any prior seller acquired the rights and obligations underlying or constituting a part of the Claim;

(d)     all guaranties and all collateral and security of any kind for or in respect of the foregoing;

(e)     any and all proceeds of any of the foregoing.

(collectively, as described in clauses (a), (b), (c), (d), and (e), the "Transferred Rights").  This Partial Assignment and Transfer of Claim (this "Assignment") shall be deemed an absolute and unconditional assignment of the Transferred Rights and shall not be deemed to create a security interest except as may be otherwise provided herein.

OSF hereby represents and warrants to ODG and to ODG's successors and assigns that (a) OSF has duly and timely filed Proof(s) of Claim in the Proceedings, and a true copy of such Proof(s) of Claim are attached to this Assignment; (b) OSF owns and has good and marketable title to the

**EXHIBIT**

**B-2**

Transferred Rights and has not previously assigned, sold or pledged any of its right, title or interest in or to any of the Transferred Rights, or the underlying Master Agreement or Litigation Claims, to any third party, in whole or in part; (c) subject to Bankruptcy Court approval, OSF is duly authorized and empowered to execute and perform its obligations under this Partial Assignment and Transfer of Claim (this "Agreement"); and (d) OSF has not received a distribution or any proceeds, purchase price or other payment in or on account of the Transferred Rights, except as previously disclosed to ODG.

All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein.  ODG shall be entitled to transfer its rights hereunder and in the Transferred Rights without any notice to or the consent of OSF.

Except as expressly stated herein, the Transferred Rights are transferred and assigned to ODG on an "AS IS, WHERE IS, WITH ALL FAULTS" basis, without recourse and without representation or warranty of any kind.  Without limiting the foregoing, ODG acknowledges and agrees that OSF makes no representation or warranty with respect to any of the following: (a) the validity, enforceability or collectability of the Transferred Rights, (b) the financial condition or creditworthiness of the Debtor or any other obligor with respect to the Transferred Rights, or (c) the existence of any claims, offsets, or other defenses to payment of any amounts with respect to the Transferred Rights.  ODG acknowledges that the ultimate recovery on the Transferred Rights may be significantly less than the face or asserted amount of the Transferred Rights, that there may indeed be no recovery at all, and that ODG shall have no recourse to OSF for any loss or deficiency.  Aside from breach of any of the express warranties and representations made by OSF herein, no event or condition shall entitle ODG to have the Transferred Rights repurchased by OSF.

OSF agrees that, except to the extent any action of ODG would impair OSF's rights with respect to its retained 50% interest in the Claim and other rights incidental thereto, ODG, as full owner of the Transferred Rights, may prosecute, collect, settle, compromise and grant release on the Transferred Rights without the consent of OSF.  OSF recognizes ODG's right to vote, credit bid, release, assign, or otherwise dispose of the Transferred Rights sold hereunder.  OSF hereby waives any objection to the transfer of the Transferred Rights to ODG, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of an application, motion or hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or other applicable law or rules, and consents to the substitution of ODG for OSF for all purposes in all bankruptcy and litigation proceedings relating to the Transferred Rights, including, without limitation, the Proceedings.  OSF acknowledges and understands, and hereby stipulates, that orders may be entered without further notice to OSF transferring to ODG the Transferred Rights, recognizing ODG as the sole owner and holder of the Transferred Rights, and directing that all payments or distributions of money or property in respect of the Transferred Rights be delivered or made to ODG.  Without limiting the foregoing, upon OSF's delivery to ODG of its executed signature page to this Agreement, OSF hereby authorizes ODG to file, at ODG's expense, any substitution motion or other pleadings in the Proceedings necessary to provide adequate notice of the transfer of the Transferred Rights and to substitute ODG for OSF as the true party in interest with respect to the Transferred Rights.

All payments and distributions made on account of the Transferred Rights are for the benefit of ODG.  OSF hereby expressly directs, or agrees to direct, any party, including without limitation the Debtor or its successor in interest, to pay to ODG any payments or distributions made on account of the Transferred Rights.  Unless otherwise instructed by ODG, OSF shall promptly (but in any event no later than five (5) business days) remit any payments, distributions or proceeds received by OSF after the date of this Agreement in respect of the Transferred Rights to ODG.  OSF agrees to forward to ODG, as soon as reasonably practicable, all notices received by OSF with respect to the Transferred Rights.

Each of OSF and ODG agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement.  This Agreement shall be binding upon, and inure to the benefit of, the parties and each of their successors and assigns.

OSF's and ODG's rights and obligations under this Agreement shall be governed by and interpreted and determined in accordance with the laws of the State of Texas (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction).  OSF and ODG each submit to the jurisdiction of the courts located in the County of Harris in the State of Texas.  OSF and ODG each consent to service of process by certified mail at its address listed above.

IN WITNESS WHEREOF, the undersigned hereto set their hands this _____ day of _____, 2018.

**Offshore Specialty Fabricators, LLC**

By: _____     David Weinhoffer, Chief Restructuring
          Signature                                                   Officer
                                                           _____
                                                           Print Name/Title

_____                 _____
Telephone #                                      Email Address


**Offshore Domestic Group, LLC**

By: _____     _____
          Signature                                             Print Name/Title

_____                 _____
Telephone #                                      Email Address

## TRANSFER

**BE IT KNOWN** that on the dates set forth below, but effective as of [date] (the "***Effective Date***") before the undersigned witnesses and Notaries Public, duly commissioned and qualified as such, personally came and appeared:

Offshore Specialty Fabricators, LLC, a Louisiana limited liability company, whose address is 13430 Northwest Freeway, Suite 900, Houston, Texas 77040, represented herein by [] its [] pursuant to the attached ]

(hereinafter referred to as "***Seller***"), and

Offshore Express, LLC, a Louisiana limited liability company, whose address is 13430 Northwest Freeway, Suite 900, Houston, Texas 77040, represented herein by [], its [], pursuant to the attached [certified resolutions],

(hereinafter referred to as "***Buyer***"),

Who, being duly sworn, declared and said:

## RECITALS

**WHEREAS**, Seller is a debtor in the Chapter 11 bankruptcy case, *In re Offshore Specialty Fabricators*, LLC, Case No. 17-35623, in the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Case***");

**WHEREAS**, Buyer and certain of its affiliates have filed Proofs of Claim Nos. 128, 129, 130, 131, 132 against Seller in the Bankruptcy Case (collectively, the "***Proofs of Claim***");

**WHEREAS**, as part of the consideration for the satisfaction of the Proofs of Claim under the chapter 11 plan confirmed in the Bankruptcy Case, Seller has agreed to convey any right, title, and interest it may have in the Property (defined below) to Buyer;

**NOW, THEREFORE**, for the price and consideration, and on the terms and conditions hereinafter expressed, Seller does by this Transfer grant, bargain, sell, convey, transfer, assign, set over and deliver, without any warranty of title or recourse whatsoever, the sole peril and risk of eviction being assumed by Buyer, but with full substitution and subrogation in and to all the rights and actions of warranty which Seller has or may have against all preceding owners or vendors other than any predecessor in title that has been acquired by or that has merged or consolidated with Seller, unto Buyer, all buildings, structures, equipment, and other constructions owned by Seller (the "***Property***"), whether or not such ownership of the Property is reflected in the public records of Terrebonne Parish Louisiana, that is located on the immovable property described on Exhibit A hereto.

TO HAVE AND TO HOLD, as of the Effective Date, unto Buyer, its successors and assigns forever.

**EXHIBIT**

**B-3**

[Signature Pages Follow]

HOU:3907176.3

THUS DONE AND SIGNED on the _____ day of _____, 20___, but effective as of the Effective Date, by Offshore Specialty Fabricators, LLC, in the presence of the undersigned Notary Public and competent witnesses, who hereunto sign their names with Seller after due reading of the whole.

**WITNESSES**:                          **SELLER**:

                                        OFFSHORE SPECIALTY FABRICATORS,
                                        LLC, a [] limited liability company


_____       By:_____
Print Name:_____          Name:
                                        Its:


_____
Print Name:_____


                    _____
                              NOTARY PUBLIC
                          Notary ID#_____

HOU:3907176.3

THUS DONE AND SIGNED on the _____ day of _____, 20___, but effective as of the Effective Date, by OFFSHORE EXPRESS, LLC, Buyer, in the presence of the undersigned Notary Public and competent witnesses, who hereunto sign their names with Buyer after due reading of the whole.

**WITNESSES:**                                        **BUYER**:

OFFSHORE EXPRESS, LLC,
a [] limited liability company

_____        By: _____
Print Name:_____        Name:
                                        Title:

_____
Print Name:_____


_____
NOTARY PUBLIC
Notary ID#_____

HOU:3907176.3

# **EXHIBIT A**

**Immovable Property Description**

[Attached]

HOU:3907176.3

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 17-35623** |
| **OFFSHORE SPECIALTY** | § | |
| **FABRICATORS, LLC,** | § | **Chapter 11** |
| | § | |
| **Debtor** | § | |

**NOTICE OF FILING AMENDED PLAN SUPPLEMENT TO THE FIRST AMENDED
CHAPTER 11 PLAN OF LIQUIDATION FILED BY THE OFFICIAL COMMITTEE OF
<u>UNSECURED CREDITORS OF OFFSHORE SPECIALTY FABRICATORS, LLC</u>**

**PLEASE TAKE NOTICE** that pursuant to Article I.C. of the *First Amended Plan of
Liquidation of the Official Committee of Unsecured Creditors of Offshore Specialty Fabricators,
LLC under Chapter 11 of the Bankruptcy Code* [Docket No. 703] (the "<u>Plan</u>"), the Official
Committee of Unsecured Creditors for Offshore Specialty Fabricators, LLC (the "<u>Committee</u>")
hereby file this Amended Plan Supplement with the Clerk of Court for the United States
Bankruptcy Court, Southern District of Texas, Houston Division, to amend the Plan Supplement
filed as Doc. No. 713 (the "Original Plan Supplement"), as required by the Court at the
confirmation hearing held on October 18, 2018.

The Original Plan Supplement is hereby amended to substitute the following attached
exhibits for the exhibits included in the Original Plan Supplement:

| Exhibit | Description |
|---|---|
| 1 | Executory Contract and Unexpired Lease Assumption and Assignment Schedule (with Proposed Cure Amounts) |
| 2 | Schedule of Rejected Contracts and Leases |

The remainder of the provisions of the Original Plan Supplement remain in full force and
effect, except to the extent amended as provided herein.



Dated: October 23, 2018                    Respectfully submitted,

**BAKER, DONELSON, BEARMAN,**
**CALDWELL & BERKOWITZ, P.C.**

By:      */s/  Daniel J. Ferretti*
         Susan C. Mathews
         Texas Bar No. 05060650
         smathews@bakerdonelson.com
         Daniel J. Ferretti
         Texas Bar No. 24096066
         dferretti@bakerdonelson.com
         1301 McKinney St., Suite 3700
         Houston, TX 77010
         Telephone:  (713) 650-9700
         Facsimile:  (713) 650-9701

                    -AND-

         Jan M. Hayden
         jhayden@bakerdonelson.com
         Edward H. Arnold, III
         harnold@bakerdonelson.com
         201 St. Charles Avenue, Suite 3600
         New Orleans, Louisiana 70170
         Telephone: (504) 566-8645
         Facsimile: (504) 585-6945

         *Attorneys for Official Committee of*
         *Unsecured Creditors for Offshore*
         *Specialty Fabricators, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2018, the foregoing document was electronically filed with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record registered to receive such notice.  I further certify that the foregoing document was served via U.S. mail on each of the parties listed on Exhibit 1 and Exhibit 2 hereto, at the addresses listed on such exhibit.


*/s/ Daniel J. Ferretti*
Daniel J. Ferretti

## Exhibit 1

## Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases and Estimated Cure Payments

|   | Contract | Counterparty | Counterparty's Address | Date of Assumption and Assignment to Liquidating Trust | Cure Amount |
|---|----------|--------------|------------------------|--------------------------------------------------------|-------------|
| 1 | American Steamship Owners Mutual Protection and Indemnity Association, Inc., for the period July 1, 2017 to February 20, 2018, represented by certificates of entry nos. 01173000 & 01174000 | American Steamship Owners Mutual Protection and Indemnity Association, Inc. | SHIPOWNERS CLAIMS BUREAU, INC. 2100 West Loop South, Suite 1525 Houston, TX 77027 USA | Effective Date of Plan | $0 |
| 3 | Steamship Mutual Underwriting Association Limited for the period Noon G.M.T. 20/02/2011 to Noon G.M.T. 20/02/2012, represented by Certificate of Entry and Acceptance Number 32905/1 | Steamship Mutual Underwriting Association Limited | Aquatical House 39 Bell Lane London, E1 7LU | Effective Date of Plan | $0 |
| 4 | Steamship Mutual Underwriting Association Limited for the period Noon G.M.T. 20/02/2012 to Noon G.M.T. 20/02/2013, represented by Certificate of Entry and Acceptance Number 36765/1 | Steamship Mutual Underwriting Association Limited | Aquatical House 39 Bell Lane London, E1 7LU | Effective Date of Plan | $0 |
| 5 | Steamship Mutual Underwriting Association Limited for the period Noon G.M.T. 20/02/2013 to Noon G.M.T. 20/02/2014, represented by Certificate of Entry and Acceptance Number 42662/1 | Steamship Mutual Underwriting Association Limited | Aquatical House 39 Bell Lane London, E1 7LU | Effective Date of Plan | $117,732.65 |

| 6 | Steamship Mutual Underwriting Association Limited for the period Noon G.M.T. 20/02/2014 to Noon G.M.T. 20/02/2015, represented by Certificate of Entry and Acceptance Number 49801/1 | Steamship Mutual Underwriting Association Limited | Aquatical House 39 Bell Lane London, E1 7LU | Effective Date of Plan | $0 |
| 7 | Steamship Mutual Underwriting Association Limited for the period Noon G.M.T. 20/02/2015 to Noon G.M.T. 20/02/2016, represented by Certificate of Entry and Acceptance Number 58013/1 | Steamship Mutual Underwriting Association Limited | Aquatical House 39 Bell Lane London, E1 7LU | Effective Date of Plan | $10,929.16 |

**Exhibit 2**

**Schedule of Rejected Contracts and Leases**

| | Contract | Counterparty | Counterparty's Address | Date of Rejection |
|---|---|---|---|---|
| 1 | Bathroom Sanitation and Floor mats | Cintas | P O Box 650838 Dallas, TX 75265-0838 | Effective Date of Plan |
| 2 | Apartment Lease | Bluewater Corporate Housing, LLC | 435 Corporate Dr. Suite 103 Houma, LA 70360 | Effective Date of Plan |
| 3 | Offshore Wells & Lease Database | LEXCO Data Systems, LP | PO Box 692372 Houston, TX 77269 | Effective Date of Plan |
| 4 | Postage Meter | Pitney Bowes Global Financial Services | PO Box 371887 Pittsburg, PA 15250-7887 | Effective Date of Plan |
| 5 | Website Agreement | Bizzuka | 105 Chapel Dr. Lafayette, LA 70506 | Effective Date of Plan |
| 6 | Houston Office Lease | Fairways Exploration & Production LLC | 20445 State Highway 249 Suite 280 Houston TX 77070 | Effective Date of Plan |
| 7 | North Yard Lease | Offshore Express, LLC | 20445 State Highway 249 Suite 280 Houston TX 77070 | Effective Date of Plan |